THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



---

John Walden,

                          Petitioner

 - against -

Suprintendent Walcott
Orleans Correctional Facility


                          Respondent

---

**PETITION FOR A
WRIT OF HABEAS CORPUS**

28 U.S.C.A. § 2254(d),

# 19 CV 11409

## PRELIMINARY STATEMENT

1. The Petitioner is being Illegally detained and Illegally Imprisoned by
Suprintendent Walcott. At Orleans Correctional Facility 3531 Gaines Road
Albion, N.Y. 14411. Without A "True Bill of Indictment that was never Authorized
by a Grand Jury Proceeding, and that does not "Exist. On August 20, 2015.
The Petitioner was Arrested Illegally without Probale cause and without Due
Process of the Law. For Multiple duplicious counts of Burglaries that occurred
on or about July 7, 2015, July July 14, 2015, July 28, August 8, 2015, August
14, 2015, August 14, 2015, August 17, 2015, August 17, 2015, and August 18, -
2015. On September 29, 2015. The Petitioner was Arraigned on a Fabricated Man-
ufactured Arraignment Sheet, with falsified Statements. With (8), duplicious
counts without a element of a Burglary, and (9), duplicious occurrences in the
Supreme Court of New York County. Which Charge the Petitioner Burglary in the
Third Degree(Penal Law § 140.20.), Without a "True Bill of Indictment ever
being Authorized by a Grnad Jury, or being filed with the Court The State of
New York Lack Subject Matter Jurisdiction, in violation of Petitioner Right to
Due Process and Protection of Law, and Civil Rights and Deprived him of Effec-
tive Assistance of Counsel. Strickland V. Washington, 466 U.S. 668. In viola-
tion of the Petitioner 4th, 5th, 6th, And 14th, Amendment, of the Due Process
Clause of the United States Constitution.

2. The Petitioner John Walden, pleaded a Involuntary guilty plea to all (9),
duplicious counts to a True Bill of Indictment and that does "Not "Exist
(Penal Law § 140.20.), Burglary in the Third Degree. Without a Grand Jury Pro-
ceeding ever Authorizing a True Bill of Indictment. The State of New York Lack
Subject Matter Jurisdiction, in violation of the Petitioner 5th, Amendmnt of
the United States Constitution. Strickland V. Washington, 466 U.S. 668.
Wiggins V. Smith, 539 U.S. 510.

3. On November 16, 2017. The Petitioner filed a Motion to "Withdraw his plea and oral "Objection and the sentence went Unopposed 28 U.S.C.A. § 2254(d), The Motion being denied was contrary to the spirit of the United States in violation of the Petitioner 4th, 5th, 6th, And 14th, Amendment of the United States Constitution.

4. Jackson V. Virginia, 443 U.S. 307. "Reasonable doubt is not confined to those defendants normally blamless, even a thief is in intitled to Complain that he has been "Unconstitutionally convicted, and Illegally Imprisoned As a Burglar U.S.C.A. Constitution Amendment 14th,

## STATEMENT OF FACTS

5. In the Early Mornig of August 20, 2015. The Petitioner was inside of his Home, which was located at 515 145th street in Harlem Despite having done nothing to warrant Suspicion. Police Officers entered the petitioner Home without permission, without probable cause, while He was a sleep. The petitioner had Broken any Law, and the petitioner did act in any way that would have Justified Police Suspicion. Nevertheless, Officers Approached him, Question him, and search him, Arrested him without probable cause, and without a Arrest warrant, and without a search warrant. The petitioner was Illegally detained and Illegally Imprisoned, in all Acutuality the petitioner was "Kidnap by "Authorities. The petitioner has been subjected to Illegal detainment and Illegal Imprisonment, without a "True Bill of Indictment ever being Authorized by a Grand Jury Proceeding. The petitioner had (5), Ineffective Assistance of Counsel, and the petitioner made clear "Jurisdiction Objection upon the prior Record shall reveal all (5), Ineffective Assistance of Counsel to conession to the "6th, Amendmendment, Strickland V. Washington, 466 U.S. 668. Kerisen V. Kilpatrick, 378 F. Supp. 3d 237. Alhough there was no direct Appeal Review there was a "Postconviction Proceeding.

## POSTCONVICTION PROCEEDING

6. The petitioner John Walden, filed a criminal procedure Law § 440.10. Motion to vacate the Judgment. See Exhibit(B), copy of the order of the Court. The petitioner Raised (1), The Lack of Subject Matter Jurisdiction, (2), Ineffective Assistance of Counsel, (3), U.S.C.A. § 3612 Speedy Trial Violation, (4), Constitution violations 4th, 5th, 6th, And 14th, Amendment, (5), The plea was Not Knowing Volintary, And Intelligently Made, therefore the Judgment is void for Lack of Subject Matter Jurisdiction. Strickland V. Washington, 466 U.S. 668. Argerisinger V. Hamlin, 407 U.S. 25. Peterson V. Becker, 72 A.D. 3d 1250 People V. Harper, 37 N.Y. 2d 96.

## STATE COURT APPELLANT DECISION

7. The Petitioner move to Appeal the § 440.10. be leave of the Appellate
Division First Department. The decision by the Hon. Ellen Gesmer, who by deci-
sion date Feburary 26, 2019. Denied the certificate of leave of the Court See
Exhibit(B), Copy of the "Order. The Petitioner now Completely Exhausted, with
Reguards to State "Remedies. Sullivan V. Boek, 526 U.S. 838. David V. Silva,
F. 3d 1005.

## ARGUEMENT GROUND ONE

8. The Petitioner Conviction was Obtained in violation of his 4th, 5th, 6th,
And 14th, Amendment of the United States Constitution. The Petitioner was Arr-
ested at his Home without probable case, and without probable cause of a Crime
and without probable cause of a Arrest warrant or a search warrant. The Petit-
ioner plea was Accepted without properly being Advised by Counsel, and being
"Misled to believe there was Evidence that did not "Exist, such as Fabricated
manufactured "DNA, and such as a "True Bill of Indictment that was never Aut-
horized by a Grand Jury, that does "Not "Exist. It turns out there was no Evi-
dence, and there was not True Bill of a Indictment, and there was no Evidence
of a Crime. The Petitioner was Just Illegally detained until he Accepted a
"Involuntary plea, and Illegally Imprisoned without a True Bill of Indictment,
and without Due Process of the Law and without Protection of the Law, in viol-
ation of his civil Rights. The Record of the sentence Transcript Exhibit(B),
will reveal that the Petitioner was "Sham, and force and Trick" to Accept a
plea. The Petitioner "Shouted and Screem and demanded that the Court "Withdraw
his plea, cites Fontain V. U.S. 411 U.S. 213. Karisen V. Kilpatrick, 378 F. 3d
237. Statute pertainig to Motions to vacate Judgment and sentence call for a
hearing on Allegation of coerced plea of guilty, uless the Motion and the file
and the Record of the case conclusively show that the Prisoner is entitled to
no Relief. The Petitioner sentence Transcript shall demonstrate his position
on the Matter. Coerced plea of guilty is open to "Collateral Attack. A defen-
dant who enters such a plea Simultaneously waives several Constitutional Incl-
uding his privilege against Compulsory self-incrimination, his Right to Trial
by Jury and his Right confront his Accusers(There is No Accuses), for the
Waiver" to be valid under the Due Process Clause. It must be on intentional
Relinquishment of Abandonment of a know Right or privilege Johnson V. Zerbst,
304 U.S. 458. Consequently, if a defendant's guilty guilty plea is not equally
Volunary and Knowing, it has been Obtained in in violation of Due Process,
and is therefor "Void. Strickland V. Washington, 466 U.S. 668.

9. After the Petitioner Accepted his plea, after having "Five Ineffective Assistance of Counsel. Where "Jurisdiction Issues were "Raised, and other Legal issues were Raised and denied. Priciple "Res Judicata are not wholly Applicable to Habeas Corpus Proceeding, and State Confinment, and who has been denied Relief in the State Court is "Not precluded from seeking Habeas Relief on the same cliam in Federal Court, 28 U.S.C.A. § 2254(d),

10. When a defendant weighs his State Court Remedies's and admits his guilt, he does so under the Law and Existing" and assumes, Risk of ordinary Error in either his or her Attorney's Assesement of the Law and the "Facts, and although he might have pleaded differently and later decided cases then the Law, he is bound by his plea, and his conviction will not be set aside unless he can allege and "Prove serious dereliction on part of Counsel, Sufficient to show that his plea was "Not Knowing and Intelligent Act, Mann V. Richardson, 397 U.S. 759. Strickland V. Washington, 466 U.S. 668.

### (5), INEFFECTIVE ASSISTANCE OF COUNSEL 6TH, AMENDMENT IN VIOLATION OF DUE PROCESS UNDER THE UNITED STATES CONSTITUTION 4TH, 5TH, 14TH, AMDNEMENT

11. The Petitioner Made "Objections to the conduct of all (5), Ineffective Assistance of Counsel Ultimate failure to Address the Courts, Lack of Subject Matter Jurisdiction. In violation of the Petitioner 4th, 5th, 6th, And 14th, Amendment of the United States Constitution, And New York Constitution. In violation of his Right to Due Process of the Law, and Protection of the Law and his Civil Rights. The (5), Ineffective Assistance of Counseler's acted as "Advocates for the People, and gave good word of mouth that the Petitioner was "Not Indicted and counsler waive the "Reading of the "True Bill. Knowing, and that there was No True Bill of a Indictment, ever Authorized by a "Grand Jury Proceeding, and was not ever filed with the Court. CPL § 190.65. In violation of the Petitioner 4th, 5th, 6th, And 14th, Amendment of the United States Constitution. Strickland V. Washington, 466 U.S. 668.

12. Ineffective Attorney(1), Ms. Prakash whom waive the Reading of the Indictment and also was a advocated for the people, and help the people Arraigne the Petitioner, on A Fabricated Manufactred Arriagnment Sheet dated September 10, 2015, and October 9, 2015. With (8), duplicious counts of "Trespassing, and (9), duplicious counts of occurrences, and a Fabricated Manufactured Falsified (7), duplicious count "Trespassing Felony Complaint, that was never dated or

signed by a Accuser or complaintaint of a criminal act, and it was never filed
with the Court. Attorney Prakash also waive the Petitioner Right to be herd at
the Grand Jury Proceeding, without consent from him. Attorney Prakash was well
a aware that all of the Evidence, was fabricated manufactured falsified "DNA
and Exculpatory, as well as falsified statements and Video Evidence, she was
the First Ineffective Assistance of Counsel. Attorney Krakash with held all of
the Petitioner Illegal fabricated manufactured Illegal paper work from him.
Including the fact that the District Attorney Office had (4), UnAuthorized
Grand Jury Proceedings, without eather one of them ever producing a "True Bill
of a Indictment to the Court. Attorney Prakash was apart of the "Sham Bureau
Thirty Data Sheet, that was created by the District Attorney Office with (7),
duplicious counts of Trespassing", and fabricated manufactured evidence and
falsified statesment, with only on witness which was Detective James Meehan.
Attorney Prakash also did not ever inform the Petitioner that there were (4),
UnAutorized Grand Jury Proceedings on the dates of 8/25/2015, 8/9/2015, 9/8/-
2015, 9/10/2015. That is because she was a Advocate for the People and that
she with held the Felony Complaint Data Sheet from the Petitioner, because it
would show that there was never any Grand Grand "Action, taken to produce a
"True Bill of a Indictment, or any other of a felony offeder and that the Pet-
titioner was "Kidnap and Illegally detained by the State of New York, without
Probable Cause and without Due Process of the Law. The State of New York Lack
Subject Matter Jurisdiction, and has violated Petitioner Right to Due Process
of the Law and Protection of the Law, and his Civil Rights and deprived him of
Effective Assistance of Counsel. Washington V. Strickland, 466 U.S. 668. Wig-
gins V. Smith V. Smith, 539 U.S. 510. See Exhibit(A), Felony Complaint Data
Sheet and "Sham Fabricated Mantured Bureau Thirty Data Sheet. 6th, Amendment.

13. INeffective Attorney(2), William Kendall whom did "Not ever provide the
Petitioner a copy of his "Omnibus Motion. That Raised all corrrect issues whi-
ch was a very good Motion, such as dismissing the fabricated manufactured fal-
sified Grand Jury Minutes, that was never filed with the Court. Pursuant to
CPL § 210.30(2), CPL § 190.65. And suppressing the falsified evidenc Dunaway
Hearing CPL § 710.20(3), Producing the Prosecution from Introducing at Trial
for which has failed timely Notice Pursuant to CPL § 710.30. Precluding the
Prosecution use of certain evidence for failure to comply with Request for
duplicious falsied Bill of Particulars Pursuant to CPL § 200.95(5), 240.70(1),
and tainted Unlawfull Arrest Dunaway Hearing, and Discovery and Inspection
CPL § 240.20. Brady and Rosario hearing. The "Omnibus Motion was dated on the
date of November 2, 2015, it was in violation of CPL § 255.20. a "Void Motion,

the "Omnibus Motion was a "Returnable Motion that was not filed with the Court within the (45), day Period of time to do so. in violation of CPL § 255.20. The "Omnibus Motion was never Ruled on and there was never a decision on the Motion, it was a "Void Judgment that woould never be Reviewed for Appellate or Appeal Review. Attorney Kendall created a Great Motion that could dismiss this hole fabricated manufactred case, that never produced a "True Bill of Indictment Authorized by a Grand Jury Proceeding. The Motion had all coorect issues in it to have the case dimissed, The Proceeding was conducted before fewer than "Sixteen Grand Jurors Pursuant to CPL § 210.35(1), Fewer than "Twelve Grand Jurors concuured in the finding of the Indictment Pursuant to CPL § 210.35(3), The Grand Jury waS defective within the meaning of Pursuant to CPL § - 210.35. The Grand Jury was "Illegally Constituted Pursuant to CPL § 210.35(1), Dismissing the Indictment or in the Alternative, dismissing or Reducing counts therein Pursuant to CPL § 210.20(1)(b), Evdence before the Grand Jury was not legally Sufficient to establish the offence. Attorney William Kendall could have made a "Wrong A "Right, but when all said and done he was Ineffective Assistance of Counsel, and a Advocate to Illegally detained and Illegally Imprisoned the Petitioner for the People. The State of New York Lack Subject Matter Jurisdiction, in violation of the Petitioner Right to Due Process of the Law and Protection of the Law, and his Civil Rights and deprived him of his Right to Effective Assistance of Counsel. <u>Strickland V. Washington, 466 U.S. 668.</u> <u>Kimmelman V. Morrison, 477 U.S. 648.</u> In violation of the Petitioner 4th, 5th, 6th, And 14th, Amendment of the United States Constitution. See Exhibit-(B), "Sham Omnibus Motion in violation of CPL § 255.20.

14. Ineffective Attorney(3), Attorney Lawrence Schwartz See Exhibit(B), "Sham CPL § 30.30. Speady Trial Motion. Whom the Petitioner pleaded with to file a Speedy Trial Motion. For dismissal of the case and then he created, a "Sham pleading Speedy Trial Motion. CPL § 30.30(1)(a), CPL § 30.30(2)(a), to dismiss or to Release the Petitioner. The Motion was a Sham pleading Motion that did not conform to the statue CPL § 2214(A), it did not have the nessary Address and time of the Court, which made the Motion "Returnable and it was a Rejected Motion, by the Court as a Void Motion. Which means it was not Preserved for Appellate or Appeals Court Review, the issue was a void order and Attempted to convince the Petitioner that the Order was by a competent Jurisdiction. Which is in violation of the Petitioner 6th, Amendment U.S.C.A. § 3612. Right to Speedy Trial. Attorney Schwartz created a Pursuant to § 690. to dismiss the fabricated manufactred search warrant, that was in violation of CPL § 2214(A), without the nessary Address time and Court, it was a very good Motion

Such as Detective Meehan the Accuser where he States I Reconized the defendant
in the Video as the result of having partioated in the arrest of the defendant
in June 2011, and falsified Exculpatory "DNA evidence, Lantent print matched
the defendant, and U.S. currency, cigars and persnal papers, that were never
filed with the Court as evidence. Attorney Schwartz had all of the issues in
the Motion, that was dated August 8, 2016. He Just did not ever file the Moti-
on with the Court. Including the fact that the Police" had a Incorrect Address
and place and time, were the lived at, and what Room he was in, And what cons-
titutes specific evidence to search and arrest the petitioner. The search war-
rent Motion also ask if there was Probable cause to arrest the Petitioner.
Attorney Schwartz adds the fact that the "Bodega Owner gave incorrect **Infor-
mation"**of were the Petitioner lived, evidence that was incorrect. Attorney
Schwartz Raised very good issues to have the Search Warrant dismiss, such as
Pursuant to CPL § 690.35(3)(b), Execution of the "Warrant to be dismiss, and
CPL § 690.45(6), Insufficient to Justifie issuance of a Authorizing Night and
Time and Entery, and a hole lot more good Issues. Attorney Schwartz just did
not ever filed the Motion it was a "Void Judgement. Attorney Lawrence Schwartz
was Ineffective Assistance of Counsel in violation of the Petitioner 6th, Ame-
ndment, The State of New York Lack Subject Matter Jurisdiction and have viol-
ated and deprived the Petitioner of his Right to Due Process of the Law and
deprived of Protection of the Law, and deprived him of his Right to Effective
Assistance of Counsel, and deprived of his Civil Rights, In violation of his
4th, 5th, 6th, And 14th, Amendment of the United States Constitution. Strick-
land V. Washington, 466 U.S. 668. Kimmelman V. Morrison, 477 U.S. 648.

15. Ineffective Attorney(4), Attorney Gottlin did not last that long he did
not ever file any Motions to dismiss the case, or to Suppress any fabricated
manufactured evidence, Pursuant to CPL § 210.30(2), 210.20. to see if there
was any evidence to presented to the Grand Jury, was legally sufficient east-
blish any kind of defense of offense. Attorney Gottlin would Argue with the
Petitioner every time that he would ask for his paper work, and to file a
Motion. Attorney Gottlin was a Advocate for the people, he Relieved himself,
told Judge Konviser that he did not want to be the Petitioner Attorney any
More, because the Petitioner did not want to "Play ball with Court or Him. The
State of New York Lack Subject Matter Jurisdiction and deprived the Petitioner
of his Right to Effective Assistance of Counsel, 6th, Amendment violation and
and deprived his Right to Due Process of the Law and Protection of the Law.
Strickland V. Washington, 466 U.S. 668.

16. Ineffective Attorney(5), Susan Calvello, The Petitioner filed a Motion to "Withdraw his "Involuntary plea on November 16, 2017. Tot a (9), Count True Bill of Indictment that does "Not "Exist, and that was never Authorized by a Grand Jury Proceeding. Attorney Calvello also admitted on the Record that she would not ever "Adopt, any the Petitioner Motions. Attorney Calvello also Admitted on the Record, that she was Ineffective Assistance of Counsel. with the following statement, "Let the Record be clear since November 1, I have been on a Trial on a 100-Count Traffic Indictment and there are six defendants, and I have made time today. We are not going to be done untill January, which is why I could not do a Video. Because we are in Court fron 9 until 6 every day since November 1. Attorney also admitted that she and all other Ineffective Attorney's, with held Fabricated Manufactured Exculpatory "DNA Evidence that did ever Exist, and that she and the other Ineffective Attorney's with held the Petitioner Legal paper work from him. Attorney Calvello Created a great "Omnibus Motion, which was dated August 17, 2017. Pursuat to CPL § 210.20(1), (b), the evidence that was presented to the Grad Jury was not legally suffic-ient to establish the offence of a Burglary, and 210.30(2), and Pursuant to CPL § 210.30, for inspection of the Grand Jury Minutes. The "Omnibus Motion was never Ruled on, and ther was never a decision on the Motion becuase it was never filed the Court, because it went past the 45 day period, which made the Motion a void Judgment, which made it a "Sham Motion. Attorney Calvello was a Advocate for the People, by forcing and helping the People sentence the Pet-itioner, to be sentence to Illegal sentences of a 3 to 6 years of Imprisonment without a "True Bil of Indictment, and then being Re-Sentence to a Illegally sentence of a 6 to 12 years of Imprisonment, charging him with First Degree Burglar(Penal Law § 140.30), and Burglary in the Third Degree Penal Law § 140.20. as a falsified Predicate on both, and a Multi State violent offeder, without ever being sentence on eather "One of them, and witout a "True Bill of Indictment ever being Authorized by the Court. Attorney Calvello did not ever Advocate for the Petitioner, in the Appellate or Appeals Court. The State of New York Lack Subject Matter Jurisdiction. In violation of the Petitioner Right to Due Process of the Law and Protection of the Law, and the Petitioner Civil Rights, and deprived him Effective Assistance of Counsel 6th, Amendment. Strickland V. Washington, 466 U.S. 668. Wiggins V. Smith, 539 U.S. 510. Kimmelson V. Morrison, 477 U.S. 648. See Exhibit(B), Sentence Minutes, See Exhibit(C), "Sham Omnibus Motion. In violation of Petitioner 4th, 5th, 6th, And 14th, Amendment, of the United States Constitution.

LACK OF SUBJECT MATTER JURISDICTION
THE PLEA WAS INVOLUNTARY NOT KNOWING
INTELLIGENTLY ACCEPTED INEFFECTIVE
ASSISTANCE OF COUNSEL FABRICATED
AND MANUFACTURED FALSIFIED EVIDENCE
IN VIOLATION PETITIONER DUE PROCESS
4TH, 5TH, 6TH, AND 14TH, AMDNEMNT
OF THE UNITED STATES CONSTITUTION

17. The District Attorney Office of New York County, and District Attorney
Cyrus Vance JR, Assistance District Attorney Shipla Kalra. Had (4), UnAutho-
rized Grand Jury Proceeding's without ever being Authorized by the Court. On
the dates of 8/25/2015, 8/26/2015, 9/8/2015, 9/10/2015. Without one of them
ever being Certified as a "True Bill of a Indictment being filed with the
Court. Then created out of all (4), of Them a Fabricated Manufactured Falsi-
fied Grand Jury Proceeding "Minutes, that were never Authorized by the Court
and never filed with the Court. The falsified Grand Jury Minutes were picked a
apart, to make it "Look as if it was a "Real Grand Jury Proceeding, that had
took place as a "Illusion, when there was never a Proceeding that was ever
filed with Court. The falsied Minutes does not contain a front page on it, it
does not contain a Address or a date and time of place, it fails to contain a
list of "Witnesses it fails to contain a Exhibit list, it fails to contain
any thing about Exculpatory or DNA Evidence, it fails to contain a Back Page
and a forman signature on it, it has pages Missing from it, and it was never
certified or filed with the Court. The District Attorney Office created "One
"Witness Detective James Meehan, who was not a "Witness to the Petitioner com-
mitting a Crime, and "Leading other people that were not "Witness, and did Not
ever "Identifie the Petitioner as committing a Crime of a Burglary". The Distr-
ict Attorney Office did not ever have any "Video of the Petitioner committing
a Crime, and did not ever have any "Witnesses who could "Identifie him commit-
ting a Crime of Burglary. The Petitioner had (5), Ineffective Attorney not one
of them ever filed a Motion Pursuant to CPL § 210.30. CPL § 210.20. CPL § 210.
35. CPL § 190. on the Issue of the Fabricated Manufactured Grand Jury Minutes,
there was never a "True Bill of Indictment filed with the Court. The State of
New York Lack Subject Matter Jurisdictin in violation of the Petitioner Right
to Due Process of the Law and Protection of the Law, and Civil Rights and dep-
rived him of Effective Assistance of Counsel, Strickland V. Washington, 466
U.S. 668. Kimmelman V. Morrison, 477 U.S. 648.See Exhibit(A), "Sham Grand Jury
Minutes, and pages 10,11,36,37,71.

18. The District Attorney Office of New York County, and District Attorney Cyrus Vance JR, Assistance District Attorney Shipla Kalra, and all (5), Ineffective Assistance of Counsel. Are in violation of CPL § 180.50. The District Attorney Office created a Fabricated Manufactured Falsified, Felony Complaint with (7), duplicious counts of "Trespassing Burglary in the Third Degree without a Felony Complaint ever being filed with the Court.( Penal Law § 140.20.), and without ever having a "Complaintaint or a Accuser, and without ever having a "Witness to a Crime of a Burglary taking place. The Fabricated Manufactured Falsified "Trespassing Complaint, has a falsied "Secret Bar Code(#2732078.), that was created by the District Attorney Office. For the Real Bar Code No. (#2015NY053270.), See Exhibit(A), Felony Complaint Data Sheet that was never filed with the Court.  The falsified "Trespassing complaint contains falsified Exculpatory and manufacttured "DNA Evidence, and Brady Material without falsified video without any time or dates without any "Incident of the Pettioner Committing Crime, of a Burglary, and that does not show the Petitioner committing a crime of a Burglary. The (7), duplicious count "Trespassing Complaint has the datess of July 14, 2015, August 17, 2015, August 14, 2015, July 7, 2015, July 28, 2015, August 17, 2015, August 8, 2015, The "Trespassing complaint was never signed by Complaintaint of a "Witness of a Crime or a Accuser of a crime, and it was never signed by a Police Office, and it was never certified or filed with the Court. It only had one Complaintaint and one Accuser, and one "witness, and that was "Detective James Meehan. With the following Statement to Prejudice the Petitioner, "I Reconized the male in the Video as the defendant, John Walden since i previously Arrested him in June 2011. All of the Incidents were manufactured and falsified by the District Attorney to Illegally detained and Illegally Imprisoned, the Petitioner without a (9), Count "True Bill of Indictment ever being filed with the Court, and how can there be a (7), duplicous count "Trespassing Complaint, and a (9), Count "True Bill of Indictment, there is not eather "One of them filed with the Court. All (5), "Ineffective Attorney's fail to file a Motion to the case, and the fabricated manufactured "Trespassing Felony Complaint and the Fabricated Manfactured Falsified Grand Jury Minutes, in violation of CPL § 180.50. See Incidents (3)(6), falsified "DNA Exculpatory evidence. The State of New York Lack Subject Matter Jurisdiction in violation the Petitioner Right to Due Process of the Law and Protection of Law and his Civil Right, and deprived him of Effective Assistance of Counsel, Strickland V. Washington, 466 U.S. 668. Wiggins V. Smith, 539 U.S. 510. In violation of 4th, 5th, 6th, And 14th, Amendment of the United States Constituion. See Exhibit(C), "Sham Trespassing Felony Complaint.

19. The District Attorney Office of New York County, District Attorney Cyrus Vance JR, Assistance District Attorney Shipla Kalra. Created a Fabricated Manufactured Falsified Arraignment Sheet, that contained falsified information dated September 9, 2015, and October 10 2015. In violation of CPL § 170.10. And in violation of CPL § 100.40, and CPL § 180.50. Without ever filing a Misdemeaner" of "Felony Accusatory Instrument Complaint, with the Court. And in violation of the Petitioner 6th, Amendment Ineffective Assistance of Counsel. The Fabricated Manufactured (8), duplicious counts with the dates of July 7, 2015, July 14, 2015, July 28, 2015, August 14th, 2015, August 17, 2015, August 17, 2015, August 18, 2015. It has falsified Exculpatory and DNA" evidence on it, as well as failsified Brady Material, and falsified statement all of which were never filed with the Court as Evidence. The Fabricated Manufactured Falsified Arraignment Sheet, also has (9), duplicious counts of Occurrences of duplicious times and dates of July 7, 2015, July 14, 2015, August 8, 2015, and August 14, 2015, August 17, 2015, August 17, 2015, August 14, 2015, August 18, 2015, The Arraignment sheet also has falsified "Video information not showing the Petitioner committing a crime. See Incident(3), "Latent Print Recovered from the above paper machted the defendant, Incident(4), D cuts himself and leaves "Blood on elevator door "DNA from blood comes back to deft, Incident-(3), One American Eagle Silver dollar Recovered from the defendants person after he was arrested. There was never any Exculpatory or DNA" evidence, or Brady Material, or Video of the Petitioner cutting himself, and there ws never Latent print that machted the Petitioner, and not one thing of the falsified manufactured evidence was filed with the Court, as Evidence of a crime. The Petitioner was never charged with a "Misdemeaner or as a "Felony Offender, charged with a crime, because there was never a "True bill of Indictment filed or Authorized by a Grand Jury Proceeding, or filed with a Court. The Falsified Manufactured Arraignment Sheet, was all a Illussion to Illegally Imrisonment the Petitioner, without a "True Bill of Indictment ever being filed with the Court. And all (5), Ineffective Attorney's including Ms. Prakash who waive the Reading of the Indictment, did not ever file a Motion to Dismiss. The State of New York Lack Subjuct Matter Jurisdiction in violation of the Petitioner Right to Due Process of the Law and Protection of the Law, and deprived him of his Civil Rights and deprived him Effective Assistance of Counsel. Strickland V. Washington, 466 U.S. 668. Kimmelson V. Morrison, 477 U.S. 648. In violation of the 4th, 5th, 6th, And 14th, Amendment of the United States Constitution. See Exhibit(C), "Sham Arraignment Sheet.

20. The District Attorney Office of New York County, and District Attorney Cyrus Vance JR, Assistance District Attorney Shipla Kalra. Created a Fabricated Manufactured Voluntary Disclosre Form, with falsified information that was dated on October 5, 2015. In violation of CPL § 200.95. With (9), duplicious counts of occurrences with the dates of July 7, 2015, July 14, 2015, July 28, 2015, August 8, 2015, August 14, 2015, August 14, 2015, August 17, 2015, August 17, 2015, August 17, 2015, August 18, 2015. The Voluntary Disclosure Form failes to show Items of factual information, it failed to which pertain to the substance of each of the conduct of a crime, it failed to show a value of property. The District Attorney Office, and the Petitioner Ineffective Assistance of Counsel, failed to file and failed to Recieve the Volutary Disclosure Form within "15 days and "30 day period of time. The Voluntary Disclosure Form show no Action of a Grand Jury Proceeding of any kind, that a "True Bill of a "Indictment ever bing filed with the Court. The Disclosure Form shows no "DNA or "Brady Material ever being filed with the Court, it showa no identification, it shows no Discovery of a crime. It only shows a falsified Statemnt that was created as a Illusion, created by the New York City Police Department and the District Attorney Office. It has (9), duplicious fabricated manufactred times and dates, and Addresses and Streets. The Disclosure Form was dated October 5, 2015, ninty days later while the Petitioner was being Illegally detained without a "True Bill of Indictment ever being filed with the Court, in the County Jail, without Due Process of the Law, and without Protection of the Law. Not one of the Petitioner (5), Ineffective Attorney ever filed for a hearing or a dismissal of the "Case, at any time without ever producing a "True Bill of "Indictment being filed with the Court. And without a Voluntary Disclosre Form ever being filed with the Court, or a "True Bill of a Indictment being filed with the Court. The State of New York Lack Subject Matter Jurisdiction, And in violation of his Right to Due Process of the Law and Protection of the Law, and deprived of his Civil Rights, and the Petitioner was deprived of his Right to Effective Assistance of Counsel in violation of his 6th, Amendment. and in violation of 4th, 5th, 6th, And 14th, Amendment of the United States Constitution, Strickland V. Washington, 466 U.S. 668. Cullen V. Pinholster, 563 U.S. 170. See Exhibit(C), "Sham Fabricated Manufactured Volutary Disclosure Form.

(12)

21. The District Attorney Office of New York County, District Attorney Cyrus Vance JR, Assistance District Attorney Shipla Kalra. Created a Fabricated Manfactured Office of Chief Medical Exeminer Laboratory Report, dated September 30, 2015. And a Fabricated Manufactured Affirmation In Support of Seizure dated January 26, 2016. Both with falsified information, and falsified Statements with manufactured Exculpatory and "DNA Evidence, and Brady Material. In violationof CPL § 240.20. Discovery upon demand, and CPL § 240.40. Discovery upon Court. In violation of the Petitioner 6th, Amendment Ineffective Assistance of Counsel. Both manufactured falsified Illegall documents have falsified Exculpatory, and "DNA and Brady Material with falsified statement that does not "Exhist, and that were never Authorized or filed with the Court. The Laboratory says swab of the upper interior door, It also says the "DNA of a male "A is suitable for entry into the local DNA of a Male doner "A suitable for entery into the local index System(LDSI), State DNA index(SDIS), and National DNA index System(NDIS), It also says a Male Profile from a male doner. Which was all fabricated manufactured evvidence, because a A" Male doner Profile is more then a Billion men on Earth, a profile means that there was never any "DNA evidence aiainst the Petitioner. The falsified Chief Medical Report was used to Illegally detained the Petitioner, without a "True Bill of Indictment to then be used, with the Affirmation IN Support of and Order of Seizure was dated January 26, 2016. Which also was never signed or certified of filed with the Court, and used to Illegally "Swab the interior of the Petitioner mouth and cavity between the cheek and teeth, with cotton. Without a Accustory Instrument or a "True Bill of Indictment being Authorized by a Grand Jury, or being filed with the Court. There was never any video of the Petitioner cutting his hand on a Elevator door, there was never any "Exculpatory or "DNA or Brady Material, filed with the Court as a "Match to the Petitioner. All (5), Ineffective Attorney are in violation Pursuant to CPL § 710.20. for failure to Supress Unlawful Search and Seizure, and Property obtained by means of Unlaful Search and Seizure Precluding Admissibilty of Evidence. See Exhibit(B), Sentenee Minutes, Attorney Susan Calvello admits that there was never any "DNA Evidence, and that it was all falsified and she with held it from the Petitioner and that was Ineffective Counsel. The State of New York Lack Subject Matter Jurisdiction, in violation of the Petitionet Right to Due Process of the Law and Protection of the Law, and his Civil Rights and deprived him Effective Assistance of Counsel. Strickland V. Washington, 466 U.S. 668. Kimmelman V. Morrison, 477 U.S. 648. In violation of the Petitioner 4th, 5th, 6th, And 14th, Amendmnet of the United States Constitution. See Exhibit(C), "Sham "DNA And Exculpatory Evidence.

(13)

22. The District Attorney Office of New York County, District Attorney Cyrus Vance JR, Assistance District Attorney Shipla Kalra, and Ineffective Attorney Susan Calvello. Are in violation of Procedure Law § 400.21. and Penal Law § 70.06. The District Attorney Office created a Fabricated Manufactured Pursuant to Criminal Procedure Law § 400.21. and Penal Law § 70.06. to create a Statement Predicate Felony Conviction dated October 5, 2015, to Illegally Imprisoned the Petitioner without a "True Bill of a Indictment ever being Authorized by a Grand Jury Proceeding, or filed with the Court. To Illegally Sentence the Petitioner to (2), Involuntary Not Knowing Intelligently Accepted Plea, to a 3 to 6 years and a 6 to 12 years of Imprisonment, without a "True Bill of Indictment being filed with the Court. Charging the Petitioner with (7), duplicious counts of a Fabricated Manufactured "Trespassing Felony Complaint, with (7), Incidents of "Trespassing without a element of a crime, with a UnAuthorized Directive sent to the Department of Corrections. Charging the Petitioner with First Degree Burglary(Penal Law § 140.30.), adding to manufacutred counts of Burglary in the Third Degree(Penal Law § 140.20.), Illegally sentencing the Petitioner to Illegal sentence of "6 to 12 years of Imprisonment, as a Multi State Predicate violent Offender. Reason being Judge Arlene Goldberg could Not Re-Sentence the Petitioner, to a (9), Count "True Bill of Indictment that was never Authorized by a Grand Jury Proceeding, and that does Not "Exist. The Fabricated Manufactured Statement Predicate Felony Conviction, has falsified dates of the Petition being convicted on April 2, 2012, and being sentence on April 23, 2012. Which was all falsified information the Petitioner was never in life a Predicate offender or Imprisoned in any other Prisons in the United States, the manufactured Predicate Statement and the manufactured Trespassing Felony Complaint, was created by the District Attorney Office. Attorney Susan Calvello was well aware that the Petitioner was being Illegally Imprisoned without a Due Process, and without a "True Bill of Indictment when she would adopt his Motion to "Withdraw his plea, she was a Advocate for the People and she new that the Petitioner was not a Predicate offender and that he was not Indicted or Convicted. The State of New York Lack Subject Matter Jurisdiction in violation the Petitioner Right to Due Process of the Law and Protection of Law, and his Civil Rights and he was Deprived Effective Assistance of Counsel. Strickland V. Washington, 466 U.S. 668. Wiggins V. Smith, 539 U.S. 510. In violation of the Petitioner 4th, 5th, 6th, And 14th, Amendment, of the United States Constitution. See Exhibit(D), "Sham Predicate Statement Exhibit(C), "Sham "Trespassing Felony Complaint not Filed with the Court.

23. On December 1, 2017. The Petitioner was Illegally sentence by Judge Arlene Goldberg. To a Involuntary Not Knowing Intelligently Accepted Plea, to a (9), Count "True Bill of Indictment that was never Authorized or any action taken by a Grand Jury Proceeding, that does not "Exist. To Burglary in the Third Degree Penal Law § 140.20. to a Indeterminate term of 3 to 6 years of Imprisonment. Counts One and Four are to Run Consecutively with each other. all other counts will be concurrent , and One and Four Consecutive to each other "But Concurrent with all other counts. Without a "True Bill of Indictment ever being filed with the Court, and without a Uniform Sentence & Comminent of a Conviction ever being filed with the Court. Thereafter the Petitioner was left in the County Jail" without ever being sentence of a Conviction, on a (60), day stay of Execution to go back to Court to be "Re-Sentence by Judge Goldberg that did not happen. Judge Goldberg at that time period used a Fabricated Manfactured falsified, (7), duplicious count "Trespassing Felony Complaint without any element of a crime, created a Fabricated Manufactured falsified UnAutorized Directive". To "Re-Sentence the Petitioner to (7), duplicious counts of Burglary in the Fisrt Degree(Penal Law § 140.30.), charging the Petitioner as violent Offender, then she Added (2), Counts charging the Petitioner with Burglary in the Third Degree(Penal Law § 140.20.), To "Re-Sentence the Petitioner to a "Illegal sentence of a "6 to 12 years of Imprisonment, without ever bringing him back to Court, to be "Re-Sentence because there was never a True Bill of "Indictment filed with the Court. she then used a falsified statement and classified the Petitioner, as a Multi state Offender, the state of California were the Pettitioner has been living, for the past "30 years of his life, the State of Connecticut were the Petitioner was born and Raised, and his mother and father live, without any facts or Jurisdiction. Judge Goldberg and the District Attorney Office classified him as a Predicate Offender" with a falsified Predicated statement, with the falsified date of October 5, 2015. The Petitioner filed a Motion to "Withdraw his Plea and "Shouted and Screemed on the Record, but would not "Adopt any of his Motions. This was done to Illegally Imprisoned the Petitioner without a "True Bill of Indictment. The State of New York Lack Subject Matter Jurisdiction in violation Peitioner Right to Due Process of the Law and protection of the Law, and his civil Rights and deprived him of Effective Assistance of Counsel, Strickland V. Wasgington, 466 U.S. 668. Wiggins V. Smith, 539 U.S. 510. See Exhibit(D), "Sham UnAuthorized Directive Sham Uniform Sentence Sheet, Sham Predicate Statement. See Exhibit (A), Sentence Minutes.

(15)

Therefore, the Undersigned Petitioner prays that the Application for Writ of Habeas Corpus be Granted, and the Petition's Judgment of Conviction be Vacated in it's Entirety or in the Alternative, a hearing should be held and such other and further Relief as this Court may deem Just, Proper and Equitable.

Respectfully Submitted

John Walden Pro-Se
Orleans Correctional Facility
3531 Gaines Basin Road
Albion, N.Y. 14411.

I declear(or certifie, verifie, or state), under penalty that the pursury that the foregoing is True and Correct and that this Petition for Writ of Habeas Corpus was placed in the Prison mailing system on December 6, 2019.

Executed(signed), John Walden (Date), December 6, 2019.

EXHIBIT

(A)

**Criminal Court of the City of New York**

**New York County**

**Felony Complaint**

The People of the State of New York
vs.

| DEFENDANT: | | CHARGES: |
|---|---|---|

**F**

**FELONY**

DEFENDANT:

John Walden                                    (M 49)

M15662105      08/20/2015 09:00

515 WEST 145 STREET

MANHATTAN NY

M15662105

CHARGES:

PL 140.20

DOCKET

**2015NY053270**

Interpreter: Language _____    Screener: KALRA, SHILPA - TB30

---

**Notices Served at Arraignment:**

☐ CPL 190.50 - Grand Jury
☐ Cross Grand Jury
☐ Waive Cross Grand Jury
☐ CPL 710.30(1) (A) - Statement
☐ CPL 710.30(1) (B) - Identification
☐ CPL 250.20 - Alibi
☐ PL 450.10(48 hrs /15 days) - Property

☐ OTHER: _____

**Adjournment:**

Part: _____ Date: _____
☐ CPL. 180.80/30.30 Waived

**Bail Condition:**

_____ / _____ / _____
(Ins. Co. Bond)    (Cash)    (Other) _____

☐ Surety Exam - 48 hours/72 hours
☐ Temporary Order of Protection
☐ ART. 730 Exam Ordered
☐ Medical Attention
☐ Protective Custody
☐ Suicide Watch
☐ Psychiatric Evaluation

---

| Arresting Officer | Court Reporter | Date | Part |
|---|---|---|---|
| STEVEN STANLEY | | | |

Judge: _____

**NEW YORK CITY**
**CRIMINAL JUSTICE AGENCY Interview**

| INTERVIEW REPORT | CJA LOG Page **12** | Line # **10** | Precinct **018** | Arrest # **M15662105** |
|---|---|---|---|---|

| Name: WALDEN, JOHN | | |
|---|---|---|

| Age: | 49 | Interview Date: | 2015-08-20 |
|---|---|---|---|
| DoB: | 1965-11-26 | Interview Time: | 14:02:00 |
| Sex: | MALE | CJA Interviewer: | N150 |
| Hispanic? | NO | Interview Location: | CB |
| Race: | BLACK | Interview Language: | ENGLISH |

| Name (on this arrest) from NYSID/Arrest | |
|---|---|
| Report: | JOHN WALDEN |
| NYSID: | 09987141Z |
| Arrest Date: 2015-08-20 | Arrest Time: 09:00:00 |
| Arrest Charges: 1. 140.20 | 2. |
| 3. | 4. |

### RESIDENCE/FAMILY

| Current Address: | 399 9TH AVENUE, E ~ *old place* | Prior Address: | DK EAST 126TH STREET |
|---|---|---|---|
| City, State, Zip: | NEW YORK, NY, 10001 | City, State, Zip: | NEW YORK, NY 99999 |
| Lives With: | Lives Alone | | |
| Contact: | SELF | Contact: | RA |
| Relationship: | | Relationship: | FRIEND |
| Phone #: | 347-488-8777 | Phone #: | NA |
| Length at Current Address: Years 4  Months   Weeks | *Harlem* | Length at Prior Address: Years 5  Months | |
| | | Contact still Resides at Prior Address? | NO |
| Alternate Address: *Family - mom has dementia - NJ* | Expects Someone at Arraignment? | NO |
| City, State, Zip: | Name: | |
| Contact: *2 kids - S.F.* | Relationship: | |
| Relationship: *Manhan* | Phone #: | |
| Phone #: *W.C.* | | |

### EMPLOYMENT

| Employed? | UNEMPLOYED | Does Defendant Provide Support for Others? | NO |
|---|---|---|---|
| Job/Position: | | If "Yes" How Many? | |
| Employer: *Chef - self-employed* | Other Sources of Financial Support: | Welfare Defendant |
| Address: *Boston - culling school* | | |
| City, State, Zip: | | | |
| Length of Employment: Years   Months: | Highest Grade: | 16 |
| Hours Worked/Week: | In School? | NO |
| Avg. Net Pay: | Name: | |
| Pay Period: | In Training Program? | NO |
| Length of Unemployment: Years   Months: 1 | Name: | |
| Other Employment Status: NONE | In Treatment Program? | NONE |

### CRIMINAL RECORD

| First Arrest (Excluding Violations)? | Warrant Attached to NYSID? | Prior Warrant? | # of Prior Felony Convictions | # of Prior Misdemeanor Convictions | Open Cases |
|---|---|---|---|---|---|
| NO | NONE | NO | 2 | 1 | 0 |

Gray Shading = Information from Official Sources
Miscellaneous Comments

LEGEND:  **NP** = No Phone   **RA** = Refuses to Answer
**DK** = Doesn't Know   **NC** = Not Calculated
**NA** = Not Applicable   **No Shading** = Information from Defendant

This report assesses the defendant's risk of flight by considering the following: community ties and warrant history as defined in sections 2(a)(ii) and 2(a)(iii)&(vi) of CPL 510.30 and open cases. However, a positive assessment is withheld for defendants with outstanding bench warrants attached to their NYSID sheet at the arrest. This report does not consider other criteria listed in CPL 510.30 such as the defendant's mental condition, the weight of the evidence, or the possible sentence.

### DEFENDANT'S RESPONSE VERIFICATION

| | | | | CJA RECOMMENDATION |
|---|---|---|---|---|
| 1 | Has the defendant lived at his/her current address for 1.5 years or more? | YES | | |
| 2 | Does the defendant live with parent, spouse, C/L spouse of 6 months, grandparent, or legal guardian? | NO | | **MODERATE RISK FOR ROR** |
| 3 | Does the defendant have a working telephone in residence/cell phone? | YES | 1 | |
| 4 | Does the defendant report a NYC area address? | YES | 0 | |
| 5 | Is the defendant employed, or in school or training program, full time? | NO | -1 | |
| 6 | Does the defendant expect someone at arraignment? | NO | -1 | |
| 7 | Does Prior Warrant equal Zero? | YES | 5 | |
| 8 | Does Open Case equal Zero? | YES | 1 | |
| | | TOTAL POINTS | 5 | |

Verification Reference Source: NO CONTACTS PROVIDED

CJA is not the official source of data provided in gray-shaded area

Arrest ID: M15662105

Arrest Date: 2015-08-20

Arrest Time: 09:00:00

Name: WALDEN, JOHN

Sex: MALE

Race: BLACK

NYSID: 09987141Z

DOB: 26-Nov-1965

## Charges:

| CHARGE | ATTEMPT? | LAW CODE | CLASS | TYPE | COUNTS |
|--------|----------|----------|-------|------|--------|
| TOP | N | PL 1402000 | D | A | 1 |

Additional Paperwork Received:  N

Notes:

DEFENDANT SOUGHT AS PERP ON ICARD NO. I2015027426. NOTIFIED PO ROHE @ RISC/PO SANCHEZ IN ROOM 132.

DEFENDANT SOUGHT AS PERP ON ICARD NO. I2015026452. NOTIFIED PO ROHE @ RISC/PO SANCHEZ IN ROOM 132.

DEFENDANT SOUGHT AS PERP ON ICARD NO. I2015025650. NOTIFIED PO ROHE @ RISC/PO SANCHEZ IN ROOM 132.

NO RECORDS FOUND FOR ICARD NO. I2015025632. ICARD CANCELLED.
NO RECORDS FOUND FOR ICARD NO. I2015026449. ICARD CANCELLED.
NO RECORDS FOUND FOR ICARD NO. I2015027307. ICARD CANCELLED.

## Warrants:

Warrant Search Type:   NYSID Search

Warrant Type:   I-Card

| Warrant Num | Warrant Date | Warrant Indictment Num | Warrant Docket Num | Def Name | Def Sex | Def DOB | Def NYSID |
|-------------|--------------|------------------------|--------------------|----------|---------|---------|-----------|
| I2015025632 | 05-Aug-15 | | | WALDEN, JOHN | M | 26-Nov-65 | 09987141Z |
| I2015025650 | 05-Aug-15 | | | WALDEN, JOHN | M | 26-Nov-65 | 09987141Z |

Warrant Search Type:

Warrant Type:   I-Card

| Warrant Num | Warrant Date | Warrant Indictment Num | Warrant Docket Num | Def Name | Def Sex | Def DOB | Def NYSID |
|-------------|--------------|------------------------|--------------------|----------|---------|---------|-----------|
| I2015027426 | 18-Aug-15 | | | WALDEN, JOHN | M | 26-Nov-65 | |

Warrant Search Type:   NYSID Search

Warrant Type:   I-Card

| Warrant Num | Warrant Date | Warrant Indictment Num | Warrant Docket Num | Def Name | Def Sex | Def DOB | Def NYSID |
|-------------|--------------|------------------------|--------------------|----------|---------|---------|-----------|
| I2015026452 | 11-Aug-15 | | | WALDEN, JOHN | M | 26-Nov-65 | 09987141Z |
| I2015027307 | 17-Aug-15 | | | WALDEN, JOHN | M | 26-Nov-65 | 09987141Z |
| I2015026449 | 10-Aug-15 | | | WALDEN, JOHN | M | 26-Nov-65 | 09987141Z |

<u>Incident 9</u>: August 18, 2015 560 Broadway, Video shows D enter building and office of Work Group, which requires special access. 3 laptops missing.

**_SUMMARY OF DEFENDANT(S) STATEMENT(S):_**

They look like me, but I won't answer that. I had that silver dollar for a hot minute, for like a year. I was never a chef. I did work in the kitchen at a church, serving. It was in the Bronx. I didn't say it looked like me. My friend gave me the silver dollar. Somebody I worked with. She lives in California. I was there 7 months ago. I am not going to answer if I have a chef jacket. I have 3 backpacks. I don't have any with a white stripe on it. My blood shouldn't be at any of the burglaries. Did they take everything from my room? There shouldn't be a chef jacket in my room.

VIDEO: yes

PHOTOS: yes

| WEAPON | YES: | NO: X | RECOVERED: | LOADED W/: |
|---|---|---|---|---|
| INJURY | YES: | NO: X | TO: | |
| | PLACE OF TREATMENT: | | | |
| NARCOTICS | TYPE: | WEIGHT: | LAB: | FT: |
| SEARCH WARRANT | YES: X | NO: | NUMBER: N0901-2015 | |

| GRAND JURY | DATES: 8/25/15; 8/26/15; 9/8/15; 9/10/15 | NO. 3-20 | TERM: 9 |
|---|---|---|---|
| | ASSIGNED ADA: Shilpa Kalra | | |
| | PRESENTING ADA: Shilpa Kalra | | |

Final Charges:
140.2520 (9 COUNTS)                                   ϕ 10-6-15

**REMARKS**

DNA and Print hit on 2 incidents.

**WITNESSES**

| Police Officers | Shield | Tax | Command | Telephone | GJ |
|---|---|---|---|---|---|
| Detective Steve Stanley | 3554 | 907392 | MTS | | N |
| Det. James Meehan | 6445 | 906807 | MTS | | Y |

## TRIAL BUREAU THIRTY

| DEFENDANT | AGE | ATTORNEY | Total Arrest | Mis Con | Fel Con | NYSID |
|---|---|---|---|---|---|---|
| John Walden | 49 | A. Prakash | 14 | 1 | 6 | 09987141Z |

| | | Date | Time (approx) | Place |
|---|---|---|---|---|
| **OCCURRENCE** | | See Attached | | |
| **ARREST** | | 8/20/15 | 9AM | 357 West 35th Street |

| SUMMARY OF CASE | |
|---|---|

### 9 INCIDENT PATTERN COMMERCIAL BURGLARY

Incident 1: July 7, 2015 at 119 West 57th Street, Room 906. Video shows that at about 6:30pm, a male, dressed in a white chef jacket, black pants, and a black backpack, enter the office on the 9th floor, attempts to open several office doors, and enter some of the offices. Shows male leaving about 15 minutes later with a large black backpack. Property missing: 1 Apple laptop

Incident 2: July 14, 2015 460 Park Avenue South, 5th floor. Video shows a male, dressed in a white chef jacket, black pants, and a black backpack, enter the office on the 5th floor, and use a tool to pry the office door open. The video further shows the male leave about 15 minutes later with a full backpack. 7 Apple laptops were missing

Incident 3: I July 28th, 2015 at 402 West 13th Street, 4th Floor. Video shows at about 6pm, a male, dressed in a white chef jacket, black pants, and a black backpack, enters the office on the 4th floor, and enters multiple offices. Shows the male touch 2 pieces of paper in the office and leave about 15 minutes later with a large black backpack. Missing Property: 1 Samsung laptop and 1 Lenovo Thinkpad. **Latent print was recovered from the above paper and matched the defendant.**

Incident 4: August 8th, 2015 at 138 West 25th Street, 5th Floor, video shows that at about 12:25pm, a male, dressed in a white chef jacket, black pants, and a black backpack, enter the office on the 5th floor, and attempts to pry the office door open with a tool and, then uses his body to open the door. Security alarm goes off and shows the male leave about one minute later with a large black backpack. Missing Property: 2 Dell laptops and 3 Macbook laptops. **D cuts himself and leaves blood on elevator door. DNA from blood comes back to deft**

Incident 5: August 14, 2015 at 6 East 39th Street, 7h floor. Video shows that at about 7:36pm a black male, dressed in a white chef jacket, black pants, and a black backpack, enters the office on the 7th floor, pries the office door open, and enters the office. The video further shows the male running out a few minutes later. No property missing.

Incident 6: August 17, 2015 . No video but door was damaged, the safe had been moved, and property, including Cuban cigars, 20 American Eagle Silver Dollar coins, 7 watches, US currency, and 20 Citibank checks in the name of "Pac Program," and multiple US Treasury Bonds, was missing from the office. **One American Eagle Silver Dollar was recovered from the defendant's person after he was arrested**

Incident 7 and Incident 8: August 17th, 2015 at 20 East 46th Street, 4th Floor. Video shows that at at about 5:45pm, a black male, dressed in a white t-shirt, dark pants, and a black backpack, enter the office on the 4th floor, and enters 2 separate offices. Shows the male leaving about 15 minutes later with a large black backpack. Damage to both office doors. Property Missing: 1 Acer laptop, 1 Toshiba laptop, 1 Lenovo laptop, 1 ASUS laptop, and 1 digital camera

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK
THE PEOPLE OF THE STATE OF NEW YORK

FELONY

-against-

John Walden, (M 49),

ADA Shilpa Kalra
(212) 335-9095

Defendant.

Detective James Meehan, Shield 06445 of the Midtown South Precinct Detective
Squad, states as follows:

*The defendant is charged with:*

PL 140.20                Burglary in the Third Degree.
                         (defendant #1: 7 counts)

At the times and places described below in the County and State of New York,
the defendant knowingly entered and remained unlawfully in a building with intent to
commit a crime therein.

*The factual basis for this charge is as follows:*

I am informed by an individual, of an address known to the District
Attorney's Office, that he is the office manager for an advertising company located at 460
Park Avenue South, 5th floor, New York, NY. I am further informed that on July 14, 2015,
he noticed that approximately 7 Apple laptops were missing. I observed surveillance video
from July 14, 2015 at 460 Park Avenue South, 5th floor that shows a male, dressed in a white
chef jacket, black pants, and a black backpack, enter the office on the 5th floor, and use a
tool to pry the office door open. The video further shows the male leave about 15 minutes
later with a full backpack. I recognized the male in the video as the defendant, John Walden
since I previously arrested him in June, 2011.

I am informed by a second individual, of an address known to the
District Attorney's Office, that he is the CEO for a Title Agency located at 6 East 39th
Street, 7th floor, New York, NY. I am further informed that on August 14, 2015, he
observed surveillance video from August 14, 2015 at 6 East 39th Street, 7th floor that shows
that at about 7:50pm a black male, dressed in a white chef jacket, black pants, and a black
backpack, enters the office on the 7th floor, pries the office door open, and enters the office.
The video further shows the male running out a few minutes later. I also watched the video
and recognized the male in the video as the defendant John Walden.

I am informed by a third individual, of an address known to the District

Page 1 of 3

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

THE PEOPLE OF THE STATE OF NEW YORK

-against-

John Walden (M 49),

Defendant.

Page 2 of 5

FELONY

ADA Shilpa Kalra
(212) 335-9005

I am informed by Detective Kevin Buehler, Shield 4387, that he spoke to an employee from RPG Incorporated located at 119 West 57th Street, Room 906, New York, NY who observed surveillance video from July 7, 2015 at 119 West 57th Street, Room 906 that shows that at about 6:30pm, a male, dressed in a white chef jacket, black pants, and a black backpack, enter the office on the 9th floor, attempts to open several office doors, and enter some of the offices. I am further informed that the video further shows the male leaving about 15 minutes later with a large black backpack. I am further informed that male who entered the office is not an employee of RPG Incorporated and 1 Apple laptop was missing after the male entered the office. I viewed stills from the surveillance video from this incident, and recognized the male in the video as the defendant.

I am informed by Detective Buehler, that he spoke to an employee from a company located at 20 East 46th Street, 4th Floor, New York, NY, a commercial office building, who observed surveillance video from August 17th, 2015 at 20 East 46th Street, 4th Floor, New York, NY that shows that at about 5:45pm, a black male, dressed in a white t-shirt, dark pants, and a black backpack, enter the office on the 4th floor, and enters 2 separate offices. I am further informed that the video further shows the male leaving about 15 minutes later with a large black backpack. I am further informed that the male who entered the office is not an employee of the company located 20 East 46th Street, 4th Floor. I am further informed there was damage to both office doors and 1 Acer laptop, 1 Toshiba laptop, 1 Lenovo laptop, 1 ASUS laptop, and 1 digital camera was missing after the male entered the office. I viewed stills from the surveillance video from this incident and recognized the male in the video as the defendant.

I am informed by Detective Elvis Montalvo, Shield 478, that an employee from Stripes Group located at 402 West 13th Street, 4th Floor, New York, NY, a commercial

Attorney's Office, that he is a physician for the "PAC Program," located at 6 East 39th Street, 4th floor, New York, NY. I am further informed me that on August 17, 2015 that the door was damaged, the safe had been moved, and property, including: Cuban cigars, 20 American Eagle Silver Dollar coins, 7 watches, US currency, and 20 Citibank checks in the name of "Pac Program," and multiple US Treasury Bonds, was missing from the office. One American Eagle Silver Dollar was recovered from the defendant's person.

Page 3 of 3

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

THE PEOPLE OF THE STATE OF NEW YORK

-against-

John Walden (M 49),

Defendant.

FELONY

ADA Shilpa Kalra
(212) 335-9095

office building, observed surveillance video from July 28th, 2015 at 402 West 13th Street, 4th Floor, New York, NY that shows at about 6pm, a male, dressed in a white chef jacket, black pants, and a black backpack, enters the office on the 4th floor, and enters multiple offices. I am further informed that the video further shows the male who entered the office is not an employee of Stripes Group and that the male who entered the office and leave about 15 minutes later with a large black backpack. I s further informed that the male who entered the office is not an employee of Stripes Group and the 1 Samsung laptop and 1 Lenovo Thinkpad was missing after the male entered the office. I viewed stills from the surveillance video and recognized the male in the video as the defendant. I reviewed an ECT report which shows that a latent print was recovered from the above paper and matched the defendant.

I am informed by Detective John Hidalgo, Shield 584, that an employee from Principle MCD Incorporated located at 138 West 25th Street, 5th Floor, New York, NY, a commercial office building, observed surveillance video from August 8th, 2015 at 138 West 25th Street, 5th Floor, that shows that at about 12:25pm, a male, dressed in a white chef jacket, black pants, and a black backpack, enter the office on the 5th floor, and attempts to pay the office door open with a tool and, then uses his body to open the door. I am further informed that the video has sound and when the male enters the office, the alarm goes off and shows the male leave about one minute later with a large black backpack. I am further informed that the male who entered the office is not an employee of Principle MCD Incorporated and 2 Dell laptops and 3 Macbook laptops were missing after the male entered the office. I viewed stills from the surveillance video and recognized the male in the video as the defendant.

False statements made in this written instrument are punishable as a class A misdemeanor pursuant to section 210.45 of the Penal Law, and as other crimes.

Detective James Meehan

_____   _____   _____
                        Date                    Time

4

Willoughby

D O N                    W I L L O U G H B Y,

            called as a witness, having been first

            duly sworn, responded to the oath and

            testified as follows:

                    THE WITNESS:  Yes.

                    THE FOREPERSON:  Be seated.

BY MS. KALRA:

        Q.    Good morning.  Please state your

name for the grand jury.

        A.    It is Don Willoughby.

        Q.    And Mr. Willoughby, are you

currently employed?

        A.    Yes.

        Q.    Where do you work?

        A.    I work at MCD Partners.

        Q.    Where is that?

        A.    It is 138 West 25th Street.

        Q.    And that's part of the office of a

fifth floor, is that correct?

        A.    Yes, fifth floor.

        Q.    That's here in New York County, is

that right?

        A.    Yep.

        Q.    And how long have you been working

there?

JMS

5

Willoughby

A.    Just over two years.

Q.    And what is your title?

A.    Systems Administrator.

Q.    What do you do as a Systems
Administrator?

A.    Basically everything IT, that's
computer, video, copiers.

Q.    Now, directing your attention
August 8, 2015, that was a Saturday, is that
right?

A.    Yes.

Q.    Do you normally work on Saturdays?

A.    No, I don't.

Q.    On that particular day, did you go
into the office at this point?

A.    Yes.

Q.    And can you tell the grand jury
what lead you to go to the office that day?

A.    I was -- I received a call around
12:30 saying that the office was broken into by
the partner/owner.  And when I arrived 20
minutes later, I was arrived or I came in with
about ten NYPD officers and the owner because
of the break-in.

Q.    And the security alarm had gone

JMS

6

Willoughby

off, is that correct?

A.     Correct.

Q.     And as a result of that phone call,
when you went there, did you pull surveillance
video?

A.     Yes.

Q.     And as an employee of MCD Partners,
are you familiar with the surveillance system?

A.     Yes.

Q.     And did you have an opportunity to
view surveillance video from August 8, 2015 in
the original surveillance system that day?

A.     Yes.

Q.     And did you -- were you able to
verify if the date and time was correct?

A.     Yes.

Q.     And it was?

A.     Yes.

Q.     And then did you later then pull
that video and burn it to a disc?

A.     Yep.

Q.     I'm going to show you what we're
going to mark as Grand Jury Exhibit 1 for
identification, 1 and 1-A and 1-B, did you have
an opportunity to review these videos before

JMS

7

Willoughby

1      coming into the grand jury today?

2          A.      Yes.

3          Q.      And did these discs contain an

4      exact copy of the surveillance system that you

5      pulled from August 8, 2015?

6          A.      Yes.

7              MS. KALRA:  And so, at this time,

8          I'm going to move --

9          Q.      And how do you know those are the

10     same discs that you reviewed in my office?

11         A.      How do I know they are?

12         Q.      Yeah.

13         A.      My initials are on both of them.

14             MS. KALRA:  So, at this time, I'm

15         going to move Exhibit 1-A and 1-B into

16         evidence.

17         Q.      I'm also going to show you two

18     photographs which we will mark as Grand Jury

19     Exhibit 2-A and 2-B.  Are these photographs

20     from the video that is already in evidence as

21     Grand Jury Exhibit 1-A and 1-B?

22         A.      Yes.

23         Q.      And do they fairly and accurately

24     show stills from those -- from those videos?

25         A.      Yes.

JMS

Willoughby


MS. KALRA:  At this time, I move

into evidence Grand Jury Exhibit 2-A and

2-B.

Q.    Now, if you could just briefly tell

the grand jury what the Exhibit 1-A and 1-B

show, what the videos show?

A.    It shows the suspect, I guess you

could see is entering our front office door and

coming through the elevator and then about a

minute later him busting into the front door of

the office.  And then the second video I have

shows the alarm going off and shows him

stealing five laptops and going out the front

door of the office down the steps.

Q.    And you said there were five

laptops taken into total?

A.    Correct, five.

Q.    And do you know the approximate

value of those laptops?

A.    It's eighty-eight hundred dollars.

Q.    And did you notice any damage to

the door when you came into the office that

day?

A.    When I arrived, when the police

were on the scene, there was a few like pieces

JMS

9

Willoughby

of broken wood on the floor scattered about.

    Q.    And that wasn't there prior to the person coming in, is that correct?

    A.    Yeah.  Yeah.

    Q.    And now, the person that's pictured in what's in evidence as Grand Jury Exhibit 2-A and 2-B, that's the person that entered and took the laptops, is that correct?

    A.    Correct.

    Q.    And based on the -- on the video and stills, do you recognize that person to be an employee of MCD Partners?

    A.    No.

    Q.    Did that person have permission or authority to enter the building or take the -- or enter the floor and the office and take the laptops?

    A.    No.

    Q.    And do the videos show anybody else that was unauthorized, any other unauthorized people in the building?

    A.    No.

    MS. KALRA:  All right.  So, I'm going to just play this first video, or attempt to play it.  Let's see how this

JMS

Willoughby

1    goes.  I'm going to step out for just one

2    minute.

3                (ADA KALRA STEPS OUT OF GRAND JURY

4    ROOM AND RETURNS)

5         Q.    This is the video that you pulled,

6    is that correct?

7         A.    Correct.

8                MS. KALRA:  I'm just going to fast

9    forward to the end of it

10               (MACHINE TURNED ON, VIDEO BEING

11   PLAYED)

12               MS. KALRA:  All of it is in

13   evidence.

14        Q.    That's the individual, is that

15   correct?

16        A.    Yes.

17        Q.    And those are the laptops, is that

18   right?

19        A.    Yes.

20        Q.    And just, if you could, briefly

21   describe what the male was wearing?

22               I note the grand jury saw it, but

23   if you could put it on the record.

24        A.    Looks like he was wearing a white

25   shirt with a black backpack that he had on.

JMS

Willoughby

1    Q.    Looked like a white chef coat, is

2  that right?

3    A.    Yeah.

4          MS. KALRA:  All right.  I have no

5  further questions for this witness.

6          Are there any questions from the

7  grand jury?

8          Seeing none, you're excused.

9          (MACHINE TURNED OFF)

10         (WITNESS EXCUSED)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

JMS

12

Bailey

MS. KALRA:  At this time, I'm going
to call Mr. Troi Bailey into the grand
jury chamber.

T R O I                     B A I L E Y,
called as a witness, having been first
duly sworn, responded to the oath and
testified as follows:

THE WITNESS:  Yes, I do.

BY MS. KALRA:

Q.    Good morning.  Please state your
name for the grand jury.

A.    Troi Bailey.

Q.    And Mr. Bailey, are you currently
employed?

A.    Yes.

Q.    What do you do for a living?

A.    I'm an IT director.

Q.    And where do you work?

A.    Deep Focus.

Q.    Where is that located?

A.    460 Park Avenue South, New York,
New York.

Q.    That's in Manhattan, correct?

A.    Manhattan, yes.

Q.    And how long have you worked there?

JMS

13

Bailey

A.    Just under two years.

Q.    Now, directing your attention to
July 14, 2015, were you working that day?

A.    Yes.

Q.    And what day was that?

A.    Tuesday.

Q.    And did you -- what time did you
arrive at the office?

A.    Approximately 9:30.

Q.    And when you arrived at the office,
did you notice or were you told that anything
was missing?

A.    I received an e-mail from a
colleague that they had missing property.

Q.    Now, did you then check yourself to
see how much property was missing?

A.    Yes, I did.

Q.    And what property was missing and
how much?

A.    The user's laptop was missing and
five other users' laptops were missing.

Q.    So, there were six laptops?

A.    Yes.

Q.    And they belong to your company,
not the individual users?

14

Bailey

A.      That's right, to Deep Focus.

Q.      What is the approximate value of all six laptops?

A.      Eleven thousand dollars.

Q.      Now, as a result of finding that day that the laptops were taken, or were missing, did you check for surveillance video?

A.      Yes, I did.

Q.      And as an employee of Deep Focus, are you familiar with the surveillance video system?

A.      Yes.

Q.      And were you able to view surveillance video from July 14, 2015, from about 7:15 in the morning?

A.      Yes, I was.

Q.      And that was at 460 Park Avenue South, is that correct?

A.      Yes.

Q.      And did you -- were you able to verify if the date and time on those video on your surveillance system was correct?

A.      Yes, I was.

Q.      And then did you burn a copy of that on to a disc?

15

Bailey

A.     Yes, I did.

Q.     And now, I'm showing you what we're going to mark as Grand Jury Exhibit 3 for identification.  Is this a copy of the video that you burned from the surveillance system?

A.     Yes, it is.

Q.     And it's an exact copy, is that correct?

A.     That's correct.

Q.     And did you have a chance to review it before coming into the grand jury today?

A.     Yes, I did.

Q.     And how do you know that that's -- it's the same disc?

A.     Has any initials.

MS. KALRA:  All right.  At this time, I move into evidence Grand Jury Exhibit 3.

Q.     I'm also going to show you two photographs which we will mark as Grand Jury Exhibit 4-A and 4-B; do you recognize these photos?

A.     Yes, I do.

Q.     And what are they photos of?

A.     This is the fifth floor of our

16

Bailey

office, and the individual entering the floor
illegally.

Q.   And these photographs fairly and
accurately show stills from the video that's in
evidence as Grand Jury Exhibit 3, is that
correct?

A.   Yes, that's correct.

MS. KALRA:   I now move into
evidence Grand Jury Exhibit 4-A and 4-B.

Q.   Now, you had mentioned that in 4-A
and 4-B show the person that is pictured, is
that correct?

A.   That's correct.

Q.   Can you describe what that person
is wearing?

A.   A white chef's jacket, black pants,
black shoes and a backpack.

Q.   And can you just describe for the
grand jury what Grand Jury Exhibit 3, the
video, what that shows?

A.   It's footage of internal footage of
the gentleman in the photographs, again,
entering our floor illegally.

Q.   When you say illegally, can you
explain in more detail what the person is doing

JMS

17

Bailey

in the video?

A.    He has some sort of tool jimmying
the lock to the front door off the floor.

Q.    So, to be clear, the video actually
shows the person using that tool to enter the
office building, is that correct?

A.    Yes.

Q.    The office?

A.    The floor, yes.

Q.    And you mentioned the person was
wearing a white chef coat and black pants.
Does he have any bags on him?

A.    Yes, he has a black backpack.

Q.    And based on your review of the
stills and video, do you recognize this person
to be an employee of Deep Focus?

A.    He is not.

Q.    And as an employee of Deep Focus,
can you tell the grand jury, did this person
have permission or authority to enter the fifth
floor or take any of the laptops?

A.    He did not, no.

Q.    And does the video show any other
unauthorized people entering the fifth floor at
that time?

JMS

18

Bailey

A.    No, it does not.

Q.    And just to be clear, that video is from July 14th, from about 7:15 p.m., is that correct?

A.    That's correct.

Q.    And did you notice any damage to the lock when you entered?

A.    He actually destroyed the cylinder on the left portion of the door that would secure the door from being entered.

Q.    So, you could see that damage when you came in that day?

A.    Yes.

MS. KALRA:  All right.  I have no further questions for this witness.

Are there any questions from the grand jury?

Seeing none, you're excused.

THE WITNESS:  Thank you.

(WITNESS EXCUSED)

19

Torres

MS. KALRA:  At this time, I'm going
to call Mr. Juan Torres into the grand
jury chamber.

J U A N                         T O R R E S,
called as a witness, having been first
duly sworn, responded to the oath and
testified as follows:

THE WITNESS:  Yes.

THE FOREPERSON:  Please be seated.

BY MS. KALRA:

Q.     Good morning.  Please state your
name for the grand jury.

A.     Juan Torres.

Q.     And are you currently employed?

A.     Yes.

Q.     Where do you work?

A.     At Royal Promotion Group, 119 West
57th Street.

Q.     What floor is that on?

A.     That's the ninth floor.

Q.     Is that here in Manhattan?

A.     Yes.

Q.     And how long have you worked there?

A.     Three years now.

Q.     What's your title there?

JMS

20

Torres

A.      Systems Engineer.

Q.      And that's here in Manhattan, is that correct?

A.      That is correct.

Q.      Now, directing your attention to August 8, 2015, do you remember what day -- were you working that day?

A.      No, I wasn't working August 8th.

Q.      And that was a Saturday, is that right?

A.      August 8th, I'm not sure.

Q.      Well, did you receive a phone call regarding a security alarm?

A.      Yes.

Q.      And you remember what day you received that call?

A.      That was July, I believe.

Q.      I'm sorry July 7th?

A.      Yes.

Q.      Was that July 7th?

A.      July 7th.

Q.      And when you received that phone call, what did you do?

A.      I was told of some property that was actually missing, so I went ahead and I did

JMS

21

Torres

some investigation with the camera system.

Q.     And as a result of that you pulled video, is that correct?

A.     That's correct, I pulled video.

Q.     And are you familiar with the surveillance system at RPG?

A.     Yes, I was.

Q.     Were you able to verify when you looked through surveillance video from July 7, 2015, the date and time, if it was correct?

A.     Yes.

Q.     And it was correct, is that right?

A.     That's true.

Q.     And when you watched the video, did you then watch it into its original system?

A.     Yes, I did.

Q.     Did you later burn it to a disc?

A.     Yes, I did.

Q.     Now, I'm going to show you what we're going to mark as Grand Jury Exhibit 5 for identification.  Did you have an opportunity to review Grand Jury Exhibit 5, the disc that's in front of you, before coming into the grand jury today?

A.     Yes, I did.

22

Torres

Q.     And is it -- how do you know that's
the same video that you reviewed?

A.     My signature is right here in the
corner.

Q.     That's an exact copy of the video
that you pulled from July 7, 2015?

A.     Yes.

Q.     Is that correct?

A.     That's correct.

MS. KALRA:  Now, at this time, I
move into evidence Grand Jury Exhibit 5.

Q.     I'm also going to show you two
photos we will mark as Grand Jury Exhibit 6-A
and 6-B; do you recognize the photos that are
in front of you?

A.     Yes, I do.

Q.     And what are they photos of?

A.     These are the gentleman, the video
of the gentleman who actually came into our
premise that day.

Q.     That's the stills from the video,
is that correct?

A.     That is correct.

Q.     And they fairly and accurately show
what's depicted on the video, which is already

23

Torres

in evidence as Grand Jury Exhibit 6, is that

correct, or 5, is that correct?

A.      That is correct.

MS. KALRA:  At this time, I move

Grand Jury Exhibit 6-A and 6-B into

evidence.

Q.      Now, can you briefly tell the grand

jury what the video shows?

A.      The video shows this gentleman

coming into the -- out of the elevator coming

into our property, and then later on leaving

our property going and getting back on the

elevator.

Q.      And what time is the video -- does

the video depict?

A.      6:50.

Q.      Okay.

A.      6:50.

Q.      In the evening?

A.      In the evening, yes.

Q.      And as an employee of RPG, were you

able to verify whether property was taken?

A.      Yes, I was able to verify.

Q.      Was there any property that was

taken?

24

Torres

A.     There was property taken.

Q.     What property?

A.     It was a laptop.

Q.     Do you know the approximate value
of the laptop?

A.     Thirty-two hundred, I believe.  And
then there is some software that was put on
there, I started working there, so.

Q.     Now, the area where the video shows
the gentleman entering, is that an employees
only area?

A.     That is correct.  You need access,
you need a key file to enter that area.

Q.     And so it's generally locked and
not open to the public, is that right?

A.     That's correct, it's never open to
the public.  It's usually locked, yes.

Q.     And now from looking at the video
and stills, did that person -- is that person
an employee of RPG?

A.     No.

Q.     Did that person have permission and
authority to enter RPG offices and take any
property?

A.     No, not not all.

JMS

25

Torres

Q.    Does the video show any other
unauthorized person or is he the only
unauthorized person?

A.    He is the only unauthorized person
that was on the premises that day.

MS. KALRA:  All right, okay.  I
have no further questions.

Q.    Did you notice any damage to the
doors or anything like that?

A.    No, there were -- no damage was
done.

MS. KALRA:  All right.  I have no
further questions for this witness.

Are there any questions from the
grand jury?

Q.    I'm actually going to ask you one
more question.  Can you describe the clothing
that the person was wearing in the video?

A.    Sure, black pants, look like some
sort of a chef jacket, black shoes and a black
knapsack.

Q.    Like a backpack?

A.    Yes, backpack.

MS. KALRA:  I have no further
questions.  At this time, you're

JMS

26

Torres

1        excused.

2                THE WITNESS:   Thank you.

3                (WITNESS EXCUSED)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

28

Edge

Q.      How long have you been employed there?

A.      I have been affiliated with the company since the beginning, about six years.

Q.      What's your current title?

A.      Technology Manager.

Q.      Now, directing your attention to August 14, 2015, did you receive any phone calls from security that day?

A.      From ADT, our security center, yes.

Q.      As a result of that phone call, did you then go to the office?

A.      To -- not that night, no.

Q.      When was the next time that you went to the office?

A.      Monday.

Q.      And at that time, did you check for surveillance video?

A.      I did.

Q.      And as an employee of Insignia, are you familiar with the surveillance video system?

A.      I am.

Q.      And were you able to verify when you viewed the surveillance video system from

29

Edge

August, you viewed it from August 14, 2015, is

that correct?

A.     That's correct.

Q.     Were you able to verify, did it

have the correct date and time?

A.     It did.

Q.     And you viewed the video from the

original system, is that correct?

A.     Correct.

Q.     Did you later then burn what you

observed from the surveillance system on to a

disc?

A.     Will, I downloaded a copy of it, I

did not burn it to a disc.

Q.     You electronically downloaded it?

A.     Yes.

Q.     I'm showing you what we are going

to mark as Grand Jury Exhibit 7 for

identification.  Did you have an opportunity to

review this disc before coming into the grand

jury today?

A.     Yes, I did.

Q.     And how do you know it's the same

disc?

A.     Because I initialed it.

JMS

30

Edge

Q.     And that is an exact copy of the
surveillance video that you downloaded from
August 14, 2015, is that correct?

A.     It was.  It was.

Q.     And that's from 6 East 39th Street
on the 7th floor, is that correct?

A.     Correct.

Q.     What is the time of the
surveillance video?  The surveillance video
that's -- about what time do you see the person
come in?

A.     7:36 p.m.

MS. KALRA:  All right.  At this
time, I move into evidence Grand Jury
Exhibit 7.

Q.     And I'm going to show you a photo
which I'm going to mark as Grand Jury Exhibit 8
for identification; do you recognize the photo
that's in front of you?

A.     Yes, I did.  I did screen shots of
the video on Monday and these are them.

Q.     And those are fair and accurate
depictions of the screen shots from the video
which is Grand Jury Exhibit 7 in evidence, is
that correct?

JMS

31

Edge

A.     Yes, it is.

MS. KALRA:  All right.  At this
time, I move into evidence Grand Jury
Exhibit 8.

Q.     Now, Mr. Edge, if you could just
describe for the grand jury what the video
shows?

A.     Well, the entire video clip starts
when I extracted where our cleaning person
locks up for the night and sets the alarm,
which was I think 7:27.  And then at 7:36, this
guy gets off the elevator, looks down the hall.
When you get off the elevator, you're looking
at Suite 700 entrance, which is two glass
doors, so I have a camera pointed that day.
And then Suite 700 is down, 701 is this way.
And I have a camera pointed to that front door.
So, you see him get off the elevator from Suite
700's camera, look down 701, come back, look
into 700 because the glass is clear, sees that
the lights were off, goes back down the hall to
701.  The glass is frosted on that window.  You
see the frosted glass, drops the bag, pulls
something out of it.  Jimmies the door, puts it
back in his door, puts it back on, comes

JMS

Edge

through the door.  You have about 30 seconds
before my alarm goes off.  He goes down the
hall and in Suite 701 looks into the conference
room, giggles one of the doors that was locked,
and there is no audio on the video, however,
you can tell when the alarm went off.  He
panicked, he turns and he runs.  He grabs his
bag, goes out of the door, hits the elevator
button on both elevators, just one on either
side, goes in one elevator, comes out, looks
out the fire escape, and goes in the other
elevator and disappears.

     Q.    And so, just to be clear, the man
in the video actually does enter the office, is
that correct?

     A.    Absolutely, he does.

     Q.    And that area is enclosed and
enclosed, is not open to the public, correct?

     A.    Correct.

     Q.    It's a locked area?

     A.    It was locked.

     Q.    Was there -- did you notice if
there was any property missing from the office
when you were there?

     A.    There was not.

33

Edge

Q.      There was no property missing?

A.      No property missing.

Q.      Can you describe what, if any, damage you observed personally when you returned to the office?

A.      When I returned to the office I didn't observe any damage.  It was after I watched the video and saw how he got in and I went and looked at the door.  You can see a small mark where he jammed something, you know, on the latch.

Q.      And can you tell the grand jury based on your review of the video and the stills, what the person is wearing who was trying to get into the office?

A.      I would say it was a white dress shirt, maybe a white shirt, and black trousers.

Q.      And did the person have a bag or anything that they were carrying?

A.      It appeared to have two backpacks, one large and in the video it looks like it's probably heavy.  And then one small that I think is the one that he pulled his tools out of to break the door.

Q.      And based on the video, could you

JMS

34

Edge

tell if the person was an employee of Insignia?

A.    Absolutely not.

Q.    He was not?

A.    He was not.

Q.    And did -- he did not have
permission or authority to enter the office, is
that correct?

A.    He did not.

Q.    Does the video show any other
unauthorized persons entering the office at
that time?

A.    It does not.

Q.    And just to be clear, what is the
time again that's policed at the time the
person is entering?

A.    7:36 p.m.

     MS. KALRA:  All right.  Okay,
great.  I have no further questions for
this witness.

     Are there any questions from the
grand jury?

     Seeing none, you're excused.

     (WITNESS EXCUSED)

JMS

Meehan

MS. KALRA:   Ladies and gentlemen,
I'm going to be calling Detective Meehan
into the grand jury chamber.

J A M E S                        M E E H A N,
called as a witness, having been first
duly sworn, responded to the oath and
testified as follows:

THE WITNESS:   Yes.

THE FOREPERSON:   Please be seated.

BY MS. KALRA:

Q.    Good afternoon.  Please state your
name, shield and command for the grand jury.

A.    Detective James Meehan, shield
number 6445, Midtown South Detective Squad.

Q.    And detective, how long have you
been part of the New York City Police
Department?

A.    Almost 22 years.

Q.    And how long have you been a
detective?

A.    Sixteen years.

Q.    Now, as part of your role as a
detective in the Midtown South Detective Squad,
did you investigate a series of burglaries in
the Midtown Manhattan area?

36

Meehan

A.     Yes.

Q.     And as a result of that
investigation, did you make an arrest?

A.     Yes.

Q.     And who did you arrest?

A.     John Walden.

Q.     Now, just to be clear, I -- have
you ever had any prior contact with the
defendant, John Walden?

A.     Yes.

Q.     And how many hours of contact would
you say that included?

A.     Three.

Q.     Three hours?

A.     Yeah.

Q.     And then during the course of this
arrest, how many hours of contact did you have
with the defendant?

A.     About three also.

MS. KALRA:  Now, you heard
testimony from the detective that he had
prior contact.  You're not to speculate
as to what that contact is, but just to
consider that in terms of determining his
credibility regarding -- in regard to

JMS

37

Meehan

identification that he will be supplying
to us.

Q.    All right.  Now, I'm going to show
you what's in evidence already from Grand Jury
Exhibit 1 through 8, a series of photos and
stills.  During the course of your
investigation, did you have an opportunity to
review all of these stills and look at these
videos?

A.    Yes.

Q.    And do you recognize the person in
the video and in the stills?

A.    Yes.

Q.    And who is that person?

A.    John Walden.

Q.    And are you sure about that?

A.    Yes.

Q.    Now, can you just describe for the
grand jury what the -- what the defendant is
wearing in each of those videos?

A.    He has on a white chef's jacket,
it's a black backpack with the white stripe on
it, and some of the video he has black sneakers
with tan front.

Q.    Now, as part of the your

38

Meehan

1    investigation, did you execute a search warrant

2    at 515 West 145th Street, Room 3210?

3         A.    Yes.

4         Q.    And was that search warrant duly

5    signed by a judge?

6         A.    Yes.

7         Q.    And is that the same room where the

8    defendant was staying and apprehended?

9         A.    No.

10        Q.    All right.  Now, I'm going to mark

11   for identification a series of photos, 1 -- 9-A

12   through G.  I'll just deemed them marked for

13   now.  Do you recognize those photos?

14        A.    Yes, I took them.

15        Q.    And what are they photos of?

16        A.    The first one is five watches, the

17   second and third is the front and the back of a

18   US silver dollar coin, the fourth is the black

19   backpack with the white stripe, the fifth is

20   the white chef's jacket, the sixth is two

21   chisels, and the other is a photo of his

22   sneakers he was wearing, John Walden.

23        Q.    So, minus the last photo of the --

24   of the sneakers that Mr. Walden was wearing,

25   the other photos are all property that you

JMS

39

Meehan

recovered during the search warrant, is that
correct?

     A.    Yes.

     Q.    And the last photo of the sneakers,
that's a photo that you took of the defendant
wearing the sneakers, is that correct?

     A.    Yes.

     Q.    And those photos fairly and
accurately show the items that you recovered
and the shoe that the defendant was wearing, is
that correct?

     A.    Yes.

     MS. KALRA:  I now enter into
evidence Grand Jury Exhibits 9-A through
G.

     Q.    So, I just want to start with the
photos of the shoes.  Can you describe for the
grand jury what those shoes looked like?

     A.    Black sneakers, but they have a tan
Rubber Band around the front.

     Q.    And could you characterize these
shoes as distinctive?

     A.    Yes.

     Q.    And do you see the same shoes in
the video from MCD Partners?



40

Meehan

A.    Yes.

Q.    You reviewed that video, right?

A.    Yes.

Q.    Now, looking at the photo of the chisels, where was that recovered from?

A.    Two chisels were in the closet, Room 3210.

Q.    And where -- do you recognize those chisels?

A.    They're very heavy duty, yes.

Q.    And do those look like -- can you tell, based on looking at them, if those are consistent with the tools that were used in some of the videos?

A.    Yes.

Q.    And now looking at the white chef -- the photo of the white chef jacket and the backpack, where were those recovered from?

A.    The chef's jacket was in the closet also and the black backpack was on the floor in the room.

Q.    And I think I elicited this, but just could you be clear, this is the room where the defendant was apprehended and was staying, is that correct?

JMS

41

Meehan

A.     Yes.

Q.     And does that white chef jacket and backpack look familiar to you?

A.     Yes.

Q.     And can you explain to the grand jury how it does?

A.     The same one in all the videos.

Q.     And is there anything distinctive about the backpack?

A.     It has like a white strap on it that makes it look like a stripe.

Q.     And is that stripe visible in some of the videos that you observed?

A.     Yes.

Q.     Now, as part of your investigation, did you investigate a burglary that took place in the office of a PAC, P-A-C, Program.

A.     Yes.

Q.     And as a result of that investigation, did you learn that there was any -- if there was any property that was taken?

A.     Yes.

Q.     And what was the property that you were told that was taken?

A.     Twenty silver dollars, coins, seven

42

Meehan

watches, money, US Bonds, cigars.

MS. KALRA:  Now, members of the grand jury, I just elicited a statement from the detective that somebody else told him.  You will later hear testimony on a different day that will help link that up.  For now, we are -- you are not to consider that for the truth of the matter, but just to understand why the detective recovered those items when he executed the warrant.  But again, there will be other testimony on a different day.

Q.   So, looking at the photos of the watch and the coins, those were items that you recovered during the search warrant, is that correct?

A.   The watches recovered during the search warrant, the coin was on his possession at the time of his arrest.

Q.   Where did you recover them from?

A.   The watches were from a night stand in the room.

MS. KALRA:  Okay.  All right.  I have no further questions for this

JMS

43

Meehan

witness.

Are there any questions from the grand jury?

Seeing none, you're excused.

(WITNESS EXCUSED)

JMS

49

Ross

1   K E V I N                          R O S S,

2              called as a witness, having been first

3              duly sworn, responded to the oath and

4              testified as follows:

5                   THE WITNESS:  I do.

6   BY MS. KALRA:

7         Q.    Good morning.  Please state your

8   name for the Grand Jury.

9         A.    Kevin Ross.

10        Q.    And are you currently employed?

11        A.    Yes.

12        Q.    Where do you work?

13        A.    The Pac Program.

14        Q.    Where is that located?

15        A.    6 East 39th Street.

16        Q.    That's here in Manhattan?

17        A.    Yes.

18        Q.    What floor is your office on?

19        A.    Four.

20        Q.    What is your title?

21        A.    I am the president.

22        Q.    Can you tell the Grand Jury a

23   little bit about your educational background?

24        A.    I have a PHD in clinical phycology.

25        Q.    Directing your attention to August

KC

50

Ross

14, 2014, that was a Friday; is that correct?

A.     Yes.

Q.     And were you working that day?

A.     Yes, I was.

Q.     And when you left what time did you leave the office?

A.     Probably about 2, 3.

Q.     When you left the office did the office seem to be normal and no problems at that time?

A.     Yes.

Q.     And did you later return to the office the following Monday on August 17, 2015?

A.     Yes.

Q.     And what, if anything, did you observe when you returned?

A.     I observed the safe that we had under the reception desk in another room on its back.  I went to another room.  I looked on the door, it appeared to be marked up.  I noticed inside my room two drawers dumped back.  I had a small cabinet next to me dumped out and dumped over.

Q.     What doors were marked up?

A.     The front door.  Basically, any

KC

51

Ross

door that was locked had a mark on.

Q.    When you say marking, was it damaged?

A.    Yes, jimmied with possibly a screwdriver.

Q.    Did you notice if any property of the drawer was missing?

A.    Yes.

Q.    What was that?

A.    Twenty silver bullion coins, six watches.  I had petty cash next to me which had $650 in it, 2012 tax return.

Q.    Any US currency missing?

A.    The 650 was missing, as well as I believe $2,200 in bonds.

Q.    You mentioned there was twenty silver US dollar coins missing, can you describe what they looked like, if there was any special packages?

A.    Yes, they were kept in a black velvet case.  Each coin was kept in a hard plastic so you couldn't touch it in your hands.

Q.    Was there any surveillance in your office?

A.    No.

KC

Ross

Q.    Why is that?

A.    Because I assumed the building would have cameras and proper security.

Q.    There was no video available for that span of time from August 14th and August 17, 2015; is that correct?

A.    Correct.

Q.    I am going to show you what's already in evidence as Grand Jury Exhibit 9-E, a photograph, as I said already in evidence, of five watches.  Do you recognize any of those watches?

A.    Yes, the three watches on the left.

Q.    And can you describe what those watches are?

A.    The first one is a Locman watch. The second one is a black Swatch.  The third one is a blue and orange Swatch.

Q.    Are those the watches that were missing from your office between the period of August 14th and August 17th?

A.    Yes.

Q.    And do you know the approximate value of those watches?

A.    The Locman is 700.  The Swatch is

53

Ross

60, and the other Swatch is 60.

Q.     Now, I am showing you what's also in evidence as Grand Jury Exhibit 9-F and 9-G. Do you recognize those photos?

A.     Yes.

Q.     What is pictured in them?

A.     The silver coin wrapped in silver plastic.

Q.     Does that look similar to one of the coins that was missing from your office between the time periods of August 14th and August 17th?

A.     Yes.

Q.     And that coin that is pictured, that's the front and the back of the coin; is that correct?

A.     Correct.

Q.     Is that coin that is pictured encased in the plastic as yours were?

A.     Yes.

Q.     All right.  And did anybody have permission or authority to enter the building, or to enter your office rather, between the period of August 14th and August 17, 2015 and take these items?

KC

54

Ross

A.    No.

          MS. KALRA:   I have no further

questions for this witness.  Are there

any questions from the members of the

Grand Jury?  Seeing none.  You are

excused.

          THE WITNESS:   Thank you.

          (WITNESS EXCUSED)

KC

Sheldon

1  M A R Y                            S H E L D O N,

2           called as a witness, having been first

3           duly sworn, responded to the oath and

4           testified as follows:

5               THE WITNESS:  I do.

6  BY MS. KALRA:

7       Q.    Good morning.  Please state your

8  name for the grand jury?

9       A.    Mary Sheldon.

10      Q.    And, Ms. Sheldon, are you currently

11  employed?

12      A.    Yes,

13      Q.    Where do you work?

14      A.    Stripes Group.

15      Q.    Where is that located?

16      A.    Meat Packing District, 402 West

17  13th Street.

18      Q.    Here in Manhattan, correct?

19      A.    Yes.

20      Q.    Now, directing your attention to,

21  well actually, let me ask you this first,

22  what's your title there?

23      A.    Office manager.

24      Q.    As an office manager, what is your

25  role?

SL

Sheldon

A.     I oversee the day-to-day activities
in the office, I also maintain executive
everyday calendars, travel.  Kind of cover the
entire office.

Q.     Now, directing your attention to
July 29, 2015, were you working that day?

A.     Yes.

Q.     And what -- when you were working,
did you -- what time did you get there in the
morning to the office?

A.     Nine a.m.

Q.     And when you got to the office did
you notice if anything was missing?

A.     We didn't notice anything missing
until later in the morning.

Q.     What was missing?

A.     Two laptops and an iPad.

Q.     As a result of seeing that the
property was missing, did you view surveillance
video?

A.     We did.

Q.     And what -- that was in -- where
were the cameras?

A.     The camera we had access to was on
the executive level on the fifth floor of the

60

Sheldon

1  building.
2      Q.    Just to clarify, what floor were
3  the laptops taken from?
4      A.    Fourth floor.
5      Q.    Okay.  Now, I'm going to show you
6  what we're going to mark as grand jury -- Grand
7  Jury Exhibit Nine for identification.  Do you
8  recognize the disk in front of you?
9      A.    Yes.
10     Q.    Did you have an opportunity to
11 review that disk before coming to the grand
12 jury today?
13     A.    Yes.
14     Q.    And how do you know it's the same
15 disk?
16     A.    Because I initialed it.
17     Q.    And your initials appear on that
18 disk, correct?
19     A.    Yes.
20     Q.    Now, does that video show exactly
21 the surveillance video that you observed in
22 your office system?
23     A.    Yes.
24     Q.    And were you able to verify that
25 the date and time was correct when the video --

SL

61

Sheldon

when you watched the video initially?

A.    Yes.

Q.    Can you tell the grand jury what are the date and time on that video, approximately?

A.    July 28th, approximately -- actually, I'm blanking on the time.

Q.    Was it around six p.m.?

A.    Yes, it was around six p.m., yes.

MS. KALRA:  All right, so I'm moving into evidence Grand Jury Exhibit Nine.

Q.    So, Ms. Sheldon, can you briefly describe to the grand jury, what does the surveillance video show?

A.    It shows a gentlemen getting off the elevator on the fifth floor.  He's wearing a white button down, dark jeans, a backpack. He goes off screen into my bosses office and when he comes back into the screen he's holding a pad of paper.  He writes something on a sheet of paper and puts that sheet of paper in his pocket, leaves the pad of paper on my desk and he then goes out of the screen shot.

Q.    So the -- the piece of paper that

SL

62

Sheldon

1   he put on the desk, that remained there when
2   you returned to the office, is that correct?
3       A.   Yes.
4       Q.   And can you describe for the grand
5   jury, you had mentioned that the laptops were
6   taken from the fourth floor.  Can you see on
7   the video how the person entered into the
8   building?
9       A.   Yes.  An employee from my office
10  let him in and you see him enter the building,
11  go in the elevator.  He tries to access any
12  floor on the elevator that he can push.  He
13  pushes all of the buttons and the only floor
14  that actually works is the fifth floor.  The
15  elevator was broken and it should not have --
16  he should not have been able to access the
17  fifth floor, but it worked, and that's how he
18  was able to get up.
19      Q.   So in -- in order to get on to any
20  of the floors, how does a person have to get
21  access?
22      A.   You need an access card.  All
23  employees have access cards to enter the
24  building to access each floor via the staircase
25  and each floor via the elevator.

SL

63

Sheldon

Q.    And from the fifth floor -- can you see from the video how the gentlemen got from the fifth to the fourth floor?

A.    He used the staircase.

Q.    But you can't see how he entered the fourth floor?

A.    You can't see how he entered the fourth floor, but you can see that he used the staircase.

Q.    Again, to get into the fourth floor from the staircase, you still need an access key?

A.    Correct.

Q.    And that area is closed off to the public, is that correct?

A.    Correct.

Q.    Was -- was there any damage to the doors on -- on the fourth or fifth floor?

A.    No.

Q.    In looking at the video, were you able to tell if the gentlemen was an employee or worker of Stripes Group?

A.    You could tell, and he was not, he should not have been there.

Q.    And he did not have permission or

SL

Sheldon

1   authority to take anything, is that correct?

2       A.    Correct.

3           MS. KALRA:  I have no further

4   questions for this witness.  Are there

5   any questions from the grand jury?

6   Seeing none, you are excused.

7           (WITNESS EXCUSED)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SL

69

Vega

W I L F R E D O                    V E G A,

called as a witness, having been

first duly affirmed, responded to

the affirmation and testified as

follows:

THE WITNESS:  I affirm to tell the

truth.

BY MS. KALRA:

Q.    Good morning, detective.  Please

state your name for the Grand Jury.

A.    Wilfredo Vega.

Q.    Your shield and command.

A.    7560 currently assigned to the 5th

Precinct.

Q.    How long have you been with the New

York City Police Department?

A.    Twenty-four years.

Q.    Now, directing your attention to --

well as part of your role as detective in the

5th Precinct Squad, did you investigate a

commercial burglary that took place on August

18, 2015 at 560 Broadway?

A.    It was grand larceny of commercial

premises at that location, yes.

Q.    And as part of that investigation,

RL

70

Vega

did you pull surveillance video from 560

Broadway?

      A.    Yes, I did.

      Q.    All right.  I'm going to hand to

you what has been premarked as Grand Jury

Exhibit 11 for identification.  Is this the

surveillance that you pulled from August 18,

2015?

      A.    Yes, a copy of it.

      Q.    Did you have an opportunity to

review that before coming into my office today?

      A.    Yes.

      Q.    Did you have an opportunity to see

that video in the original surveillance system

at 560 Broadway.

      A.    Yes, I did.

      Q.    Were you able to verify if the date

and time on the surveillance system was

approximately correct?

      A.    That is correct, yes.

      Q.    And that is the same video you

viewed in my office, correct?

      A.    Yes.

      Q.    How do you know that?

      A.    I initialed the copy.

71

Vega

1   Q.     You are -- these are your initials

2   on the disc before you, correct?

3   A.     Yes, it is.

4          MS. KALRA:   At this time, I'm

5   moving into evidence Grand Jury Exhibit

6   Number 11.

7          Q.     Now, detective, if you could

8   briefly describe for the Grand Jury what that

9   video shows.

10         A.     The video footage shows -- it's a

11  camera.  It's of the lobby of the location.  It

12  shows the defendant exiting the building.

13         Q.     When you say defendant you mean a

14  male, correct?

15         A.     Yes.

16         Q.     Can you describe what that person

17  looks like?

18         A.     He is a male black wearing a white

19  shirt.  I don't know roughly five six, five

20  seven.

21         Q.     When you say white shirt, can you

22  describe is it a chef jacket, a button-down?

23         A.     A chef jacket.

24         Q.     Do you recall what color his pants

25  were?

RL

72

Vega

1          A.     To the best of my recollection, I
2    think, it was blue jeans.
3          Q.     It shows him exit 560 Broadway, is
4    that correct?
5          A.     Yes, exiting the location.
6          Q.     It does it show him pulling up to
7    any of the floors?
8          A.     No.
9          Q.     There are no -- are there separate
10   cameras on each floor?
11         A.     No.
12         Q.     That is the only video that was
13   available from that location, is that correct?
14         A.     That's correct.
15         Q.     And just to clarify 560 Broadway
16   that is here in Manhattan, right?
17         A.     Yes.
18         Q.     What is the time on the video?
19         A.     The time stamp I believe is 19:48
20   hours.
21         Q.     So that's about?
22         A.     7:48, excuse me.
23              MS. KALRA:  Thank you.  I have no
24         further questions for this witness.  Are
25         there any questions from the Grand Jury?

73

Vega

1          Seeing none you are excused.

2                THE WITNESS:   Thank you.

3              (WITNESS EXCUSED)

RL

74

Glaser

1           MS. KALRA:   Now calling Stephanie

2       Glaser into the Grand Jury chamber.

3    S T E P H A N I E              G L A S E R,

4           called as a witness, having been first

5           duly sworn, responded to the oath and

6           testified as follows:

7           THE WITNESS:  Yes.

8    BY MS.  KALRA:

9           Q.     You can have a seat.  Please state

10   your name for the Grand Jury.

11          A.     Stephanie Glasser.

12          Q.     Ms. Glasser, are you currently

13   employed?

14          A.     Yes.

15          Q.     Where do you work?

16          A.     I work at Work Group.

17          Q.     Where is it located?

18          A.     At 560 Broadway.

19          Q.     That's here in Manhattan, is that

20   correct?

21          A.     Yes.

22          Q.     Now, directing your attention to

23   August 19, 2015, were you working that day?

24          A.     Yes.

25          Q.     And what time did you get into the

75

Glaser

office?

A.   Around 8:55 close to 9:00.

Q.   Around that time, some time at that point in the morning, did you notice any property missing from your office?

A.   There were four laptops missing.

Q.   As a result of noticing that, did you view surveillance video later at some point?

A.   Yes.

Q.   Showing you what is in front of you as Grand Jury Exhibit Number 11 already in evidence.  Did you have an opportunity to review that video before coming into the Grand Jury today?

A.   Yes.

Q.   And how do you know it's the same video you viewed?

A.   My initials are on it.

Q.   What does that video show?

A.   It shows a man walking out of the lobby of the building dressed in a chef outfit.

Q.   Now, did you recognize that person?

A.   No.

Q.   Is he an employee of Work Group?

RL

76

Glaser

A.    No.

Q.    Did he have permission or authority to be in the building?

A.    No.

Q.    Was there any damage that you noticed on the doors or anywhere in your office?

A.    No.

Q.    How does one get into the office?

A.    You need a key but there was a cleaning service there that night so it was open.

Q.    But generally to get in, it's closed off?

A.    Yes.

Q.    And only employees are allowed to get in, is that correct?

A.    Yes.

MS. KALRA:  I have no further questions for this witness.  Are there any questions from the Grand Jury? Seeing none.  You are excused.

(WITNESS EXCUSED)

RL

77

Criollo

J O S E                                  C R I O L L O,

           called as a witness, having been first

           duly sworn, responded to the oath and

           testified as follows:

                THE WITNESS:  Yes, I do.

BY MS. KALRA:

           Q.    Good morning.  Please state your

name, shield and command for the Grand Jury.

           A.    Yes.  Good morning everyone.

Detective Jose Criollo, shield number 4076,

Midtown North Detective Squad.

           Q.    Detective, how long have you been

with the New York City Police Department?

           A.    Over fifteen years.

           Q.    As part of being a detective with

the Midtown South Detective Squad, did you

investigate two burglaries that took place at

20 East 46th Street here in Manhattan?

           A.    Midtown North Squad.  Yes, I did.

           Q.    As a result of that investigation,

did you pull surveillance video from that

location?

           A.    Yes, I did.

           Q.    I'm showing you what has been

premarked as Grand Jury Exhibit Number 12 for

RL

78

Criollo

1   identification.  Is that the copy of the
2   surveillance video that you pulled from that
3   location?
4        A.    Yes.
5        Q.    And what is the date and time from
6   that surveillance video?
7        A.    August 17th of this year.  The time
8   stamps when I looked at the video I noticed it
9   was off by twelve hours and fourteen minutes.
10  So, on the timestamp, it doesn't actually have
11  the right time.
12       Q.    What is the correct time?
13       A.    When I looked at the video I found
14  out after adjusting, the time was at 7:00 in
15  the morning.
16       Q.    That is again from what date,
17  August 17th, is that right?
18       A.    Yes, August 17th.
19       Q.    Okay.  Now and that is an exact
20  copy of the video you viewed in the original
21  system, is that correct?
22       A.    That's correct.
23            MS. KALRA:  At this time, I'll move
24       into evidence Grand Jury Exhibit Number
25       12.

RL

Criollo

Q.    And just looking at the photo,
which has been marked as Grand Jury Exhibit
Number 13 for identification, do you recognize
that photo?

A.    Yes.

Q.    What is that a photo from?

A.    That is John Walden.

Q.    Is the still from the surveillance
video that is in evidence?

A.    Yes.

Q.    That is a still from Grand Jury
Exhibit 12, is that correct?

A.    Yes, that is an image of the
surveillance video.

Q.    This fairly and accurately shows a
still from that video, correct?

A.    That's correct.

MS. KALRA:   I'm now moving into
evidence Grand Jury Exhibit Number 13.

Q.    Now, detective, if you could just
briefly describe to the Grand Jury what the
video Grand Jury Exhibit Number 12 shows.

A.    The video shows a cleaner dropping
off keys at the desk.   You see one of the
janitors take the garbage out on to the

RL

Criollo

sidewalk.  Again, this is right after the
building was closing so you see a few tenants
leave.  As one tenant was leaving the
individual on this image approaches the person
and there is an interaction and he actually
walks in as they're exiting the building.  He
later on takes the elevator to several floors.
At one point, returns back to the lobby, where
he is approached by the cleaner and then again
he heads back up on the elevator.  He comes
back down to the lobby area and then approaches
the service desk area where the cleaner had
said she had dropped off a set of keys.  He
again takes the elevator, goes back up and a
little while later he comes down and exits the
building.

    Q.    And from the video, can you tell
what the person is wearing?

    A.    Yes.  He was wearing -- he had a
backpack, T shirt, jeans, I believe.

    Q.    And can you describe what the
backpack looks like.  Can you tell us what the
color was?

    A.    It appears to be black in color, a
large backpack.

RL

Criollo

1          MS. KALRA:   I have no further

2     questions for this witness.   Are there

3     any questions from the Grand Jury?

4          (CONFERRING)

5          MS. KALRA:   The video is Grand Jury

6     Exhibit Number 12 and the still is Grand

7     Jury Exhibit Number 13.   I don't know

8     what I said on the record.   Any other

9     questions?   All right.   Seeing no hands.

10    You're excused.

11         THE WITNESS:   Thank you.   Have a

12    good day.

13         (WITNESS EXCUSED)

14

15

16

17

18

19

20

21

22

23

24

25

82

Criollo

B R I A N                              D A V I S,
called as a witness, having been first
duly sworn, responded to the oath and
testified as follows:
            THE WITNESS:  I do.
BY MS. KALRA:
    Q.    Please have a seat.  In a loud
clear voice please state your name for the
Grand Jury.
    A.    Brian Davis.
    Q.    And Mr. Davis, are you currently
employed?
    A.    Yes.
    Q.    Where do you work?
    A.    XG Consultants Group.
    Q.    Where is that locate?
    A.    20 East 46th Street.
    Q.    What floor is your office on?
    A.    Fourth floor.
    Q.    That is here in Manhattan, correct?
    A.    Correct.
    Q.    Directing your attention to August
18, 2015, that Tuesday, were you working that
morning?
    A.    Yes.

RL

Criollo

Q.    And at some point during the
morning, did you notice any property missing?

A.    Yes.

Q.    And what was missing?

A.    Two laptops.

Q.    Did you have an opportunity to --
I'm showing you a still, if you can look at the
photo in front of you, Grand Jury Exhibit 13.
Do you recognize the person in that still?

A.    No.

Q.    Does that person work in the
building?

A.    No.

Q.    Did he have permission or authority
to be in the building on August 17, 2015?

A.    No not that I know of, no.

Q.    Can you describe for the Grand Jury
was there any damage to the door or anything in
your office?

A.    Yes, there was force of entry
inside.  They are wooden doors inside.  The
door, the communal door outside, there was no
force of entry.

Q.    When you say force of entry, can
you describe what the damage looked like.

Criollo

A.     Chips in the wood of the door, I
guess, to force it open, so just chipping on
all the doors.

Q.     In order to get into the office on
the fourth floor, what is required to gain entry?

A.     You need a key.

Q.     It is closed off to the public,
correct?

A.     Correct.

MS. KALRA:  I have no further
questions for this witness.  Are there
any further questions?

(CONFERRING)

Q.     A grand juror has a question.  What
is your title at your job?

A.     Director of business relations.

Q.     As part of your job, what are your
responsibilities there?

A.     I deal with a lot of the, I guess,
communications with our venders that we use for
business operations and client relations.

MS. KALRA:  Any other questions
from the Grand Jury?  Seeing none.
You're excused.

(WITNESS EXCUSED)

RL

Desaunders

1          MS. KALRA:   I'm now going to call

2      Estelle Desaunders into the Grand Jury.

3   E S T E L L E          D E S A U N D E R S,

4          called as a witness, having been first

5          duly sworn, responded to the oath and

6          testified as follows:

7          THE WITNESS:   Yes.

8   BY MS. KALRA:

9          Q.      Please have a seat.   Good morning.

10   Please state your name for the Grand Jury.

11          A.      Desaunders, Estelle.

12          Q.      Are you currently employed?

13          A.      Yes.

14          Q.      What do you do for a living?

15          A.      I'm a dentist.

16          Q.      Where do you work?   Where is your

17   office located?

18          A.      20 East 46th Street.

19          Q.      What floor is your office on?

20          A.      Fourth floor.

21          Q.      That is a separate office from Mr.

22   Davis that just stepped out of the Grand Jury

23   chamber, is that correct?

24          A.      Yes.

25          Q.      Now, that is here in Manhattan?

86

Desaunders

A.      Yes.

Q.      Now, directing your attention to the Tuesday of August 18, 2015, were you working that morning?

A.      Yes.

Q.      And at some point, when you came to work in the morning, did you notice any property missing?

A.      Yes.

Q.      What did you notice missing?

A.      A laptop and digital camera were missing.

Q.      And now looking at what is in front of you as Grand Jury Exhibit Number 13, the photo.  Do you recognize the person in that photo?

A.      No.

Q.      And did that person have permission or authority to enter your office?

A.      No.

Q.      Can you describe for the Grand Jury, was there any damage to your doors?

A.      There was no damage to the external door to get into the building.  Internally there was property damage inside of the office

RL

Desaunders

1    space, yes.

2          Q.    What do you mean by that?

3          A.    Like the office, our personal

4    office space was ransacked and that is how they

5    obtained the digital camera and things of that

6    nature, draws pulled out and off the hinges and

7    things of that nature.

8          Q.    And in order to get into your

9    office, how does one gain entry?

10         A.    You have to be allowed in.  There

11   is a buzzer to buzz you in or you need a key to

12   access the office.

13         Q.    And that person pictured in Grand

14   Jury Exhibit Number 13 did not have any of

15   those things, is that correct?

16         A.    Correct.

17         MS. KALRA:  I have no further

18         questions for this witness.  Are there

19         any from members of the Grand Jury?

20         Seeing none.  You're excused.

21              (WITNESS EXCUSED)

22

23

24

25

Meehan

MS. KALRA:   Now calling the last
witness Detective Meehan into the Grand
Jury.

J A M E S                           M E E H A N,
called as a witness, having been first
duly sworn, responded to the oath and
testified as follows:

THE WITNESS:  Yes.

BY MS. KALRA:

Q.    Good morning.  Please state your
name, shield and command for the Grand Jury.

A.    Detective James Meehan, shield
number 6445, Midtown South Detective Squad.

Q.    And detective you previously
testified on this case on August 25, 2015, is
that correct?

A.    Yes.

Q.    And so directing your attention to
August 20, 2015 did you arrest defendant John
Walden on that day?

A.    Yes.

Q.    As part of your investigation
against Mr. Walden, did you have an opportunity
to review what I'm handing to you as the video,
Grand Jury Exhibit Number 10, Grand Jury

Meehan                          89

Exhibit Number 11, Grand Jury Exhibit Number 12
and Grand Jury Exhibit Number 13.  Did you have
an opportunity to view those photos and videos?

A.     Yes.

Q.     And did you recognize the person in
the videos and photos?

A.     Yes.

Q.     Who did you recognize that person
to be?

A.     John Walden.

Q.     Just to remind the Grand Jury, you
had previous contact with Mr. Walden prior to
this arrest, is that correct?

A.     Yes.

MS. KALRA:  And I've given this
instruction before I just want to remind
the Grand Jury and reenforce, you are not
to speculate as to what that contact was.
It only goes for you to determine the
identity of the defendant.  Okay.

Q.     And in Grand Jury Exhibit 11 and
12, what was the defendant wearing?

A.     It's a white chefs jacket.

Q.     Just to remind the Grand Jury, did
you execute a search warrant on, I believe, it

90

Meehan

was August 20, 2015, is that correct?

A.     Yes.

Q.     That was in the room the defendant
stays in, correct?

A.     Yes.

Q.     What clothing, if any, did you
recover?

A.     The backpack, the white chefs
jacket.

MS. KALRA:  I have no further
questions for this witness.  Are there
any questions from the Grand Jury?
Seeing none.  You are excused.

(WITNESS EXCUSED)

**EXHIBIT**

**(B)**

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION : FIRST JUDICIAL DEPARTMENT

BEFORE: Hon. Ellen Gesmer
        Justice of the Appellate Division

-------------------------------------------X
The People of the State of New York,

                                       M-259
                                       Ind. No. 3190/15

        -against-                  CERTIFICATE
                                         DENYING LEAVE
John Walden,

                       Defendant.
-------------------------------------------X

     I, Ellen Gesmer, a Justice of the Appellate Division, First

Judicial Department, certify that, upon the application of the

above-named defendant for a certificate pursuant to Criminal

Procedure Law, sections 450.15 and 460.15, there is no question

of law or fact presented which ought to be reviewed by the

Appellate Division, First Judicial Department, and permission to

appeal from the order of the Supreme Court, New York County,

entered on or about August 10, 2018 is denied.

                                    Hon. Ellen Gesmer
                                    Associate Justice

Dated:     February 26, 2019
             New York, New York

ENTERED:



SUPREME COURT·
APPELLATE DIVISION
FIRST DEPARTMENT
27 MADISON AVENUE
NEW YORK, N.Y. 1OO1O

John Walden
16-R-0155  18R0155
Orleans Corr. Fac.
35-31 Gaines Basin Rd
Ablion, NY, 14411

U.S. POSTAGE >> PITNEY BOWES

ZIP 10010 $ 000.50⁰
02 1W
0001403201 MAR 14 2019

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK    )
                             )  S.S. :
COUNTY OF ORLEANS   )

I, _____JOHN WALDEN_____, being duly sworn, deposes and says:

That I am the _____DEFENDANT_____, in the within action, and I reside at

Orleans Correctional Facility, 3531 Gaines Basin Road, Albion, New York 14411-9199.

That on the **20** day of **MARCH**_____, 20 **18**, I served a true copy of the

annexed ____**AMENDED NOTICE OF MOTION TO VACATE JUDGEMENT**____

~~PURSUANT TO   PL 440.10  (1)(C)(3)(B)   INDICTMENT# 3190/2015~~
(A)(B)(C)

by placing it into a mailbox located at the above-named Facility, which is under the direct care

and custody of Orleans Correctional Facility, addressed to the below named at the address (es)

within the State of New York respectfully designated by them for the purpose as follows:

| To: NEW YORK COUNTY SUPREME COURT. PART,56 100 CENTRE STREET N.Y. N.Y. 10013 | To: _____ |
|---|---|
| To: NEW YORK COUNTY DISTRICT ATTORNEY 1 HOGAN PLACE. N.Y.N.Y 10013 | To: _____ |

Sworn to me this

__20__ day of __March__, 201̶5̶

_____John M. Fitzak_____
NOTARY PUBLIC
JOHN M. FITZAK
Notary Public - State of New York
No. 01FI6026303
Qualified in Orleans County
My Commission Expires June 14, 201__

_____John Walden_____
3531 Gaines Basin Road
Albion, NY  14411-9199

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW NEW
----------------------------------------
THE PEOPLE OF THE STATE OF NEW YORK

                          AMENDED
          -AGAIST-              NOTICE OF MOTION
                          TO VACATE JUDGEMENT
  JOHN WALDEN             PURSUANT TO CPL 440.10(1) (G)&(H)
              DEFENDANT PRO-SE      INDICTMENT#.3190/2015
----------------------------------------

PLEASE TAKE NOTICE,
That upon the annexed affadavit of john walden, duly sworn to the
_____ day of march 2018, exhibit attached hereto and
1)upon the defective accusatory instrument and the defective of
notice. will move this court at criminal term part 56
there of the court house located at 100 centre street,n.y.n.y
10013. at 9am or soon after as may be heard on may,5, 2018
for a order pursuant to criminal procedre law § 440.10
vacating the judgement entered agaist the above name.

defendant on the above grounds...
1) the court lacks jurisdiction over the subject
2) inffective assitances of counsel
3) constitutional violations.

an order pursuant to n.y crm pro law § 440.10(5)
to produce the defendant at the hearing to be conducted for the
purpose the determine, and for such other and further relief as
the court may deem and jist proper.

           20-2018
dated march._____


TO NEW YORK COUNTY
SUPREME COURT
100 CENTE STREET
N.Y. N.T.10013

                                      _____
                               JOHN WALDEN
                               ORLEANS CORRECTIONAL
                               FACILITY
                               3531 GAINS BASIN ROAD
                               ALBION,N.Y.14411.

NEW YORK SUPREME COURT OF THE STATE OF NEW YORK
--------------------------------------------------X
THE PEOPLE OF THE STATE OF NEW YORK

                     Respondent(S)


        -against-

        JOHN WALDEN                    AFFIDAVIT
                                       INDICTMENT. ; 03290/2015

                 DEFENDANT PRO - SE

--------------------------------------------------X
STATE OF NEW YORK
COUNTY OF ORLEANS          SS; )


john walden being duly sworn, deposes and says the followwing:
i AM i am the defendant in the above entitled proceeding
i make this affidavit in support of a motion pursuant to section
440.10. subdivision (A)(B)(C) TO VACATE THE JUDGEMENT OF

CONVICTION HERRIN, upon the grouds  that the supreme court lacks
jurisdiction over over the suject matter.
the defendant rights were violated under the 4th, 5th, 6th, 14th,
amendment of the united state constiution, article 1 section
6 of the state of new york constitution, due process clause,
a true bill must be filled.. or, a valid waver of indictment
cpl.195.10.
2) the defendant was illegal indicted for charges of burlary
in the third degree (9 couts) at the arriagnment the defendant
entered a ple of guilty, and bail was set at 10.000,dollars

3) ON   DEC-1-2017   THE DEFENDANT WAS SENTENCE TO 6 TO 12 YEARS


    4)                (THE FACTS)

the early morning hours of august 20-2015, the defendant was
located on 515 west 145th street in harlem n.y dspite having
done nothing . to warrent police suspicion, police officers
entered the defendants home with out his perninsion ,
and while he was asleep. the defendant had not broken any
laws.., nor acted in any way that would sustify police
suspicion, none the less, officers apprached him.
question him, search him, and then arrested him, with proable
cause. the defenddant was illegal held in the county jail for
30 months in violation of 4,5, amend u.s constitution,
the defense.

3) constitutional violatons
an order pursuant to n.y. cnm pro lawS 44.10.(5)
to produce the defendant at the hearing to be conducted
for the purpose of to determine this motion, and
for such other and further relief as the court may deem just and
proper.

dated.   MARCH-20-2018
_____

JOHN WALDEN
ORLEANS CORRECTIONAL
FACILITY
3531 GAINS BASIN ROAD
ALBION, N.Y.14411.

TO. NEW YORK COUNTY
DISTRICT ATTORNEY
1 HOGAN PLACE
N.Y.N.Y.10013.

THE COURTS LACKS
JURISDICTION OVER THE
SUBJECT MATTER.

———————————————

5) the defendent is beig illegaly detained in violation
of his constitual rights under the4th, 5th. 6th, and
14th, amendment of the of the united states constitution,
articl 1 section 6 of the new york constitution
due process clause.

6) the defendent waiver of indictment was not executed, as such he
was not knowingly voluntarily and inteeligently mode, therefore
the indictmen is jurisdictional defective,
pterson v. becker. 72a.d3d.1250)) a valid and sufficient
accusatory instrument, is a non waivable jurisdictional
preequisite to criminal prosecution,
peopl v. harper 37 ny.2d,96
articl 1 section 6 was amended in 1973 to permit a defendent
to waive indictment and to be prosecuted (SCI) in certain
felony cases, as in this case. there was not a valid
(( SCI) with waiver of indictment and as such the court
lacks jurisdiction over the subject matter.

peopl ex rel battista v. christain 249,ny,314

———————————————

7) in baltista...the issue of the subject matter are the sane.
a defendent chargge with a but not yet indicted for a felony
burglary petitioned the court to have an information filed
charging him with that offense , and then he pled guilty
base off the information . the court concluded that the
conviction must be vacated, reasoning that article 1 section 6
preclides any defendent from being held to anser for a felony
absent on indictment by a grand jury.
this protection of the grand jury could not be waive that
protection because the contitution requirment of the
grand jury presentation was more than a pernal right,
but exist to protect the public from prosecutional
excess.

7) there is no true bill filled... the supreme court in
new state may not convict a defendent of a felony absent
conplainces with the indictment and waiver of indictment
provion in article 1 § 6 of the new york state constitution
people v. wiltshire. 23. a.d. 3d. 86 felony complalnt
factial.

8)the defense attorney.

served and filed a defective notice of motion to pursuant
to cpl 30.30(!)(A) the motion did not confore to the ststute
cplr.2214(A) it did not contain the location of the hearing
which contitute a jurisdictional defect to the motion.
the ultimate failure to serve and file a proper motion
in itself is ineffective assistance of counsel
people v jimenez 180. a.d 2d.757,
the court of appeals in people v. devine counsel failure to
move to dismiss cpl 30.30 when applicable is inefective
counsel exhibit.B

9) the new york court of appeals has explicity decline
to adopt mechanile, find that new york law,, provide for
dismissal (of an indictment) upon the nere possibity
of (prejudice , and allows a defect to raise claims of
defects in his grand jury procedings even after a plea of
guilty. peopl v. revette 48. a.d 3d 886. challenge to
a grnd jury proceding brought by a convicted defendent on a
direct appeal becauase, altough a defent was convitted.
defects th the grand jury cannot be waived.

10) the court of appeals has held.. the defects in grand jury
proceedings may be raise on appeal, even after conviction.
in wilkins the court af appeal not only decline to apply
mechanikl but also dismiss the conviction.

11) tue grand jury did not confoem to the statue
cpl 190.60) cpl 190.15) CPL ~~1().t%(1)~~ cpl 190.75(3)
cpl 190.25(1) cpl 190.25(¢) the grand jury was untimely,
and was adjorned without leave of court.the prosecuter was
leading the witness. people v,houton 88.ny.2d.400.
the witness were influnces by the prosecuter,and the
evidence was insufficient as a matter of fact of law.

12) the prople faild to provide legal insructions or
to advise. the court of appeals . people v. calbud
49 ny.389) a citizen can not be haled into court and
triad for an infamous crime unlesshe has first been indicted,
by the grand jury which had the opportunity ti consider
the evidence agaist him(ARTIsection 6 ny.cont) accordingly,
when the disrict attorneys insrctions to the grand jury are so
imcomplete or misleading as substantially undermine the
grand jurys function of protection of citzen from un founded and
arbitrary accusation agaist them.

14) THE defendent was held under a defective indictmentfor over
30 months. all the time is therefore chargable to the people.
the notice of readiness being illusinal.

14) the 14th amendment under the due process clause requires an
element of fairness, however, the defendent was denied
assistances if counsel, and denied the action of the grand jury.
and denied pretrial motions to address the defects to the
indictment. eyitt v. lacey 49 u.s.387)


            WHERFORE, THE DEFENDANT RESPECFULLY
            REQUEST AN ORDER TO VACATE THE JUDGMENT.




            JOHN WALDEN
            ORLEANS CORRECTIONAL FACILITY
            3531 gains basin road
            albion,ny.14411.
            din#18r0155

13)The defendant was held under a defective indictment for over
30 months. all the time is therefor chargable to the people the
the notice of,readyness beig illusional.


14) the  14th amendment under the due process clause requires
an element of fairnes, however the defendant was ineffective
of counsel. and denied the action of the grand jury
denied pretial motions to address the defects to the indictment
               evitt v. lacey 49.u.s.387.



               WHEREFORE THE DEFENDANT RESPECTFULLY
          REQUST AN ORDER TO VACATE THE JUDGEMENT.




                              _John W Walden_
                              JOHN WALDEN
                              ORLEANS CORRECTIONAL
                              FACILITY
                              3531 GAINA BASIN ROAD
                              ALBION,N.Y.14411.

sworn to before me this
day of march ___20___  2018
____John M. Fitzak____
notary public

        JOHN M. FITZAK
   Notary Public - State of New York
         No. 01FI6026302
     Qualified in Orleans County
  My Commission Expires June 14, 20_19_

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK : PART (56)
---------------------------------------------X
The People of The State of New York

                        Respondent(s)

          -against-

JOHN WALDEN,

                        Defendant-Pro-se.
---------------------------------------------X
SIRS

NOTICE OF MOTION TO
VACATE JUDGMENT AND
PURSUANT TO: (CPL §440.
10(1)(G) & (H).*

[NEWLY DISCOVERED EVIDENCE]
[INEFFECTIVE ASISTANCE OF
COUNSEL.]
Ind. No.: 03190/2015

Goldberg, (j).

          PLEASE TAKE NOTICE, That upon the Affidavit of, John
Walden, Acting Pro-se, and pursuant to all prior Proceedings held
heretofore, including the said indictment, the undersigned will move
this Court located at a Courthouse at, 100 CENTRE STREET, NEW YORK,
NY 10013, On The 4 Day of January 2018, or as soon thereafter
as this Court file and Motion Can Be Heard, For An Order, First:
Vacating Judgment Rendered by Judge Arlene Goldberg On The 1St Day of
*  *  *  *  *  *  *  * December 2017, On The Ground That: Defense
Counsel, Ms. Susan Calvello, turned over Newly Discovered Brady And
Rosario Material that is "Exculpatory Information that is, "Highly
Material To The Defense" and Revealing Prosecutorial Misconduct, and
Ineffectiveness of (all) prior Defense Counsel's on this case, (SEE:
PEOPLE V. CARDLIN, (1St Dep't 1998) 240 A.D.2d 5), Also; The Defendant
moves for a dismissal of the Complaint & Indictment as it is now shown
to be Defective, Jurisdictionally So, (See: C.P.L. §§100.15(3), 100.40
(C), 210.25, 210.35), also see; People v. Baldi, 54 NY2d 137; and see;
Strickland v. Washington, 466 U.S. 668 (U.S.C.A.Const.'s 6, 14), and
for such other and further relief as this Court may deem just, proper
and equitable.

DATED: December 5Th, 2017.
BRONX COUNTY*

                                        Yours, Etc.

                                        Mr. John Walden, Pro-se

                                        John Walden

TO: HON. CYRUS VANCE, JR.
    NEW YORK COUNTY D'A
    ONE HOGAN PLACE
    NEW YORK, NY 10013

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK : PART (56)
---------------------------------------X
The People of The State of New York

                    Respondent(s)

              -against-

JOHN WALDEN,

                    Defendant-Pro-se.

---------------------------------------X
STATE OF NEW YORK)
               ) SS.:
COUNTY OF  BRONX )

AFFIDAVIT IN SUPPORT FOR
NOTICE OF MOTION TO VACATE
JUDGMENT AND *PURSUANT TO
:(CPL §440.10(1)(G) & (H).*
[NEWLY DISCOVERED EVIDENCE]
[INEFFECTIVE ASSISTANCE OF
COUNSEL.]

Ind. No.: 03190/2015

Goldberg, (j).

            John Walden Pro-se , being duly sworn, deposes
and says that:

1.  I am the defendant acting Pro-se in this case and as such am
    fully familiar with the facts herein.  This is an Affidavit In
    Support of my Instant Motion by Notice To Vacate Judgment Rendered
    by Hon. Arlene Goldberg, On The 1st Day of December, 2017, Due To
    Newly Discovered Evidence and Prosecutorial Misconduct, and Defective
    Representation...  The defendant plea to 9-counts of Burglary
    In The Third Degree, (P.L. §140.20), and To A Sentence of (6 to
    12) on each count, to run currently.  The defendant• is due to
    be sentenced on, November 16th, 2017.

2.  The defendant's assigned counsel called the defendant to the
    Courthouse on the 20th of October, 2017, and handed the defendant
    a large amount of Discovery Papers.  The defendant found the
    following Newly Discovered Document's. [SEE: EXHIBIT @A): BY
    (ADA) Shilpa Kalra, "ARRAIGNMENT INFORMATION SHEET" APPROVED ON
                        10-9-15.?. .
                             [SEE: EXHIBIT (B): TRIAL
                    BUREAU THIRTY "SUMMARY OF CASE SHEET" FOR
                    ARREST DATE: 8/20/15. . .

The Assistant District Attorney has concealed evidence from the
defense before the Indictment was filed and Grand Jury held. Also,
deleted information from the Felony Complaint and it's factual
part sworn under oath. The concealment was intentional and was
clearly selected. First, there is 9-incidents listed as a pattern
of Commercial Burglaries.  The Assistant District Attorney has
bold printed event's in selected paragraph's, detailing matters

AFFIDAVIT IN SUPPORT
PAGE 2. (2-Con'd)

-concerning (DNA) & (FINGERPRINTS), also (Cash Items) Etc.

3.  The District Attorney's Office referred to Incident # 3 that
    took place on, July 25th, 2015 at 402 West 13th Street, 4th
    Floor. In bold print at the end of the small paragraph, the
    following is stated: "Latent Print was recovered from the above
    paper and matched defendant."

    Next, they refer to Incident # 4 that took place on, August 8th,
    2015 at 138 West 25th Street, 5Th Floor. In bold print at the
    end of the small paragraph, the following is stated: "D cuts
    himself and leaves blood on elevator door DNA from blood comes
    back to deft".

    Next, they refer to incident # 6 that took place on, August 17th,
    2015. In bold print at the end of the small paragraph, the follow-
    ing is stated: "One American Eagle Silver Dollar was recovered
    from the defendant's person after he was arrested.'

4.  The defendant also refers to Exhibit (B), which has the same
    inputed bold print statement's at the ending of each small para-
    graph.  It is clear that the Assistant (ADA) understood the iden-
    tity of the defendant from the second or third day after her staff
    obtained Lab Results from collected Prints & (DNA). The defendant
    ask this Court to look at the Felony Complaint and it's Factual
    Part therein, to compare the same event's listed, in the same
    order as in Exhibit's (A) & (B).

5.  The District Attorney had detailed evidence and facts concerning
    the defendant injuring himself on, August 8th, 2015. Since there
    is only Video Tape Evidence and since there is no eye witness'es
    in this crime event.  It is concluded that the District Attorney
    reviewed a Video Tape to come to the following conclusion. (See;
    Exhibit (a)). In incident # 4 and written in bold print at the
    end of Incident # 4, it states, inter-alia, "D cuts himself and
    leaves blood on elevator door."  The building lobby on the 5th
    floor is made up as follows. When you come off the elevator,

AFFIDAVIT IN SUPPORT
PAGE 3. (5-Con'd)

-a office door is facing you. This was told to me by my defense
counsel's and including what the Video Tape Shown. It was said that
the defendant "attempts to pry the office door open with a tool and,
then uses his body to open the door." The problem is this, there is
no mention of the elevator in the Felony Complaint in this August
8th, 2015, crime event. Moreover, as the District Attorney uses in
all factual crime event's in the Felony Complaint, Video Tape Evi-
dence, the District Attorney is using same here.

6. The Video Tape would not only show the door being opened, yet,
would also show the defendant cutting himself on the elevator
door? Or, getting off the elevator? The defendant argues that
the elevator and it's evidence was intentionally deleted by the
District Attorney and as such, the Felony Complaint, and the
Indictment, including Grand Jury Testimony was Tailored and
Manufactured. The defendant argues that both, The Felony Com-
plaint and the Indictment, Grand Jury Etc., is all defective
within the meaning of (C.P.L. §100.15(3), §100.40(C), §210.25
& §210.35) and must be dismissed.

7. ¡SEE: EXHIBIT (C): (3 of 3 Pages) Felony Complaint°.
The defendant comes to this conclusion of intentional manufactured
evidence and suppression of Real Evidence due to the fact that,
in the Felony Complaint, most of the statement's are the same
as the "Arraignment Information Sheet", Exhibit (A). Infact, the
District Attorney did delet one other factual detail that also
makes the complaint & indictment/Grand Jury defective. SEE: Inci-
dent # 6. August 17th, 2015. In the Arraignment Sheet the (ADA)
ended with bold print also and said, "One American Eagle Silver
Dollar was Recovered from the defendant's person, "AFTER HE WAS
ARRESTED". The (ADA) deleted these last four words from her Felony
Complaint. (See; Exhibit (C)°).

8. The defendant argues that this was also a major set of facts that
could change the actual crime event and goes to detailed arrest-

AFFIDAVIT IN SUPPORT
PAGE 4. (8-Con'd)

-event's and simply cannot be deleted?

The rest of the facts in the Complaint and Arraignment Sheet

are listed. Therefore, the question for this Court is this. Did The

Prosecutor Commit Prosecutorial Misconduct by Non-Disclosure of Ex-

culpatory Material? "The failure of the prosecutor to make any effort

to correct any falsehood to afford the Court or Defense Counsel an

an opportunity to examine those error's, manufactured event's and

evidence, in effect amounted to a suppression of Brady & Rosario

material and severely prejudiced this defendant, including denied

him a fair trial". (See; People v. Savvides, 1 NY2d 554, People v.

Zimmerman, 10 NY2d 430, 433; also see, People v. Simmons, 36 N.Y.S.

2d 126).

The defendant also argues that Due Process Compels the Dismissal of

this indictment, due to 'prosecutorial misconduct and the fact that

the District Attorney's File is nothing more than "Fruit of The

Poisonous Tree." (See; People v. Isaacon, 44 Ny2d 511. Manufacturing

False Evidence to obtain a conviction cannot be over-looked.

(SEE: NORTON V. TOWN OF ISLIP, et al., (.U.S. Dist. Lexis 27565,

04-CV-3079(NGG)(WDW)(DECIDED MARCH 27TH, 2009).

9.  (SEE: EXHIBIT (D): "PEOPLE'S VOLUNTARY DISCLOSURE FORM")
                DATED: OCTOBER 5Th, 2015. *

    The defendant was arraigned on this case on, August 20th, 2015,

    and the People's Answer To Defendant Omnibus Request is dated,

    October 5th, 2015. The People had (45) days to decide whether

    to Disclose the Blood Evidence Test and Elevator event's in

    the Bill of Particulars. Yet, the people decided not to do so?

    (SEE: PAGE FOUR, Paragraph (3). "SCIENTIFIC AND MEDICAL REPORTS"

    The District Attorney's Office had the Medical Report's also.

    (SEE: EXHIBIT (E): Evidence Received #FB15-04186 "Disposition")
                Voucher #1008680389 Dated: 08/11/2015

    (SEE: EXHIBIT (F): :LABORATORY REPORT:REPORT ID CRT.0915-0694:
                DATED: SEPTEMBER 30Th, 2015.*

10. The District Attorney's Office, for some reason decided to focus

    on the August 8th, 2015, crime event, even though they had made

    illegal deletion with facts and evidence. On (January 26th, 2016),

    The Court made a ruling on the Omnibus Motion and on this same

    day the People moved to Seize (DNA) from the defendant's mouth.

    (SEE: EXHIBIT (G): "AFFIRMATION IN SUPPORT OF AN ORDER OF SEIZURE".)
                (3 of 3 Pages) DATED: January 26th, 2016.*

    The People wrote in the August 8th, 2015 crime event and mentioned-

AFFIDAVIT IN SUPPORT
PAGE 5. (10-Con'd)

-Blood on the elevator. Yet. they did not mention anything about
the defendant cutting himself on the elevator.  Once again, the
District Attorney's Office deleted the main fact that could have
only came from viewing a Video Tape. The fact that was mentioned
from (Day One), that defendant cut himself "on the elevator door"!

11.  The defendant also argues that the Peoples have created a large
     Governmental Delay that was not needed if they would have made
     disclosure of the (DNA) facts and evidence over a year prior.
     The denial of the (CPL 30.30 Motion and Delay for (DNA) results
     should be viewed as erroneous). The CPL 30.30 Motion was filed
     and dated by, Defense Counsel, Lawrence Schwartz and dated; Jan
     3rd, 2017.

12.                    *MEMORANDUM OF LAW*

         The defendant is requesting an Evidentiary Hearing Pursuant
to, CPL 440.30 Subd(5). (See; People v. Zeh,  22 N.Y.3d 1144 (2014)).
The defendant's Last Assigned Counsel turned over the file, after he
was Convicted and Before Sentence. The prior assigned counsels, three
of them, were also Ineffective. It should be noted that there may by
Mixed Claims of Issues On The Record, and there is issues off the record.
Therefore, CPL 440.10(2)(C)(D)  does not preclude review.(See; People
v. Maxwell, 89 A.D.3d 1108.

13. SEE: PEOPLE V. PING CHEUNG,  186 Misc.2d 507 (Sup.Ct. Ny 2000),
"Motions To Set Aside or Vacate Sentence have no time limitations and
may be initiated any time after the entry of Judgment." Id. The Defen-
dant was also denied, Meaningful Representation, People v. Baldi, 54
N.Y.2d 137, also see; Strickland v. Washington, 466 U.S. 668.*

                    WHEREFORE, The Defendant Prays For Relief
                    Requested and For such other and further
                    relief that this Court may deem Just, Proper
                    and Equitable,. . .
DATED: DECEMBER 5TH, 2017.

                              Yours, Etc.
                    Defendant, John Walden, Pro-se

SWORN TO BEFORE ME THIS 5 ᵀᴴ

DAY OF DECEMBER, 2017.

                    DANIELLE STRINGER
                    Notary Public State of New York
                    No. 01ST6131234
                    Qualified in Queens County
                    Commission Expires August 1, 2021

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  PART 56
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
THE PEOPLE OF THE STATE OF NEW YORK

            -against-

JOHN WALDEN,
                           Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

<u>DECISION AND ORDER</u>
CPL §440.10

Ind. No. 3190/15

ARLENE D. GOLDBERG, J.:

The defendant moved <u>pro se</u> to vacate the judgment on his conviction by guilty plea of nine counts of burglary in the third degree pursuant to CPL §440.10 subdivisions (1)(g),(h).  He subsequently filed an amended <u>pro se</u> motion requesting that the judgment also be vacated pursuant to subdivisions (1)(a), (b) and ( c ) of CPL §440.10 and the constitutions of the United States and the State of New York. The People filed a response in opposition to the defendant's motion. The defendant was given the opportunity to file a reply but did not do so.[1]

Based upon all the proceedings in this case, as well as my review of the parties' submissions, the official court file, and the relevant law, the defendant's motions are denied in all respects for the reasons set forth below.

<u>BACKGROUND</u>

The criminal action in this case was commenced by the filing of a felony complaint on which the defendant was arraigned on August 21, 2015.  The instant indictment charging the defendant with nine counts of burglary in the third degree was subsequently filed and the defendant arraigned thereon on September 29, 2015

---

[1]On June 26, 2018, a letter by defendant was received in Part 56, in which defendant states that he rejects the People's response because it was not timely filed and there is no record of the People moving to enlarge the time to respond and no order granting the People an extension to file a late response.  According to the defendant, by not filing their response on time, the People conceded his claims and therefore the court must grant his motion to vacate judgment. Defendant's contention is without merit since defendant was notified in writing by my court attorney that I had granted the People's requests for additional time to respond.  While the People's response may have been submitted about a week past the last due date, I still have the discretion to accept and consider it, and do so in this case. Furthermore, contrary to defendant's contention, the lack of a timely response by the People does not require that the court grant defendant's motion pursuant to <u>People v. Gruden</u>, 42 NY2d 214 (1977), where, as here, defendant's claims do not establish an adequate factual or legal basis for the relief he seeks. <u>See</u>, CPL §440.30 (4)(a),(b),(c),(d).

before the Honorable Justice Jill Konviser in Part 31.  The case pended before her until October 5, 2017, when the parties appeared before me for the hearings that had been ordered on defendant's motions to suppress physical evidence and statements and for trial.

In the afternoon on that date, October 5, 2017, the defendant, who was represented by Ms. Susan Calvello, his fifth attorney in the case, pleaded guilty[2] before me to all nine counts of burglary in the third degree charged in the indictment.   On December 1, 2017, I sentenced the defendant on each of the nine counts, as a second felony offender, to an indeterminate term of imprisonment of three to six years with the sentences on counts one and four running consecutively to each other but concurrently with the other counts, for an aggregate term of six to twelve years.

<u>THE INSTANT MOTIONS</u>

The defendant asserts that on October 20, 2017, Ms. Calvello provided him with discovery papers which included the ADA's Arraignment Information Sheet (annexed to defendant's motion as Exhibit A) and the Trial Bureau Thirty summary of case sheet (annexed to defendant's motion as Exhibit B).   The defendant maintains that these items  constitute newly discovered documents which demonstrate that the Assistant District Attorney (ADA) concealed evidence from the defense before the indictment was filed and the grand jury held,  because, according to the defendant, specified information contained therein was intentionally deleted from the felony complaint by the prosecutor.  (The felony complaint is annexed to defendant's motion as Exhibit C.)  Based thereon, the defendant argues that the testimony presented to the grand jury was tailored and manufactured and that the grand jury proceeding as

---

[2]The defendant's request to plead guilty came immediately after the defendant had viewed, in the presence of the court, his attorney and the ADA, the video surveillance footage of the commercial burglary that occurred on August 8, 2015 on the 5th floor at 138 West 25th Street.  The footage clearly showed the defendant break in the office, and while the alarm was sounding, scoop up property that was in the premises and quickly run out.  Upon seeing the footage, the defendant's attorney advised me, in open court, that the defendant no longer wanted to see footage from other burglaries charged in the indictment prior to pleading guilty.

well as the felony complaint and the indictment are all defective pursuant to enumerated provisions of the Criminal Procedure Law and must be dismissed. The defendant further argues that dismissal is warranted because the information which he alleges was deleted from the felony complaint amounts to the suppression of <u>Brady</u> and <u>Rosario</u> material which severely prejudiced the defendant and denied him due process of law. The defendant's notice of motion also includes the claim that the newly discovered documents reveal that all of his prior attorneys provided ineffective assistance of counsel and that the defects in the complaint and indictments are jurisdictional. The defendant, who states that he was arraigned on August 20, 2015, further complains that the People's request to obtain a DNA sample from him was untimely because the People did not make the request until January 26, 2016, the date his omnibus motion was decided when, according to the defendant, the People knew, based on reports contained in his exhibits E and F, that there was DNA evidence before then but did not disclose it. The defendant contends that the People therefore created unnecessary delay and as a result the decision denying his CPL §30.30 motion was erroneous.

In defendant's amended motion, he alleges that the convictions must be vacated because the court lacked subject matter jurisdiction. His argument appears to be that there was not a valid SCI (superior court information) because the defendant did not validly waive indictment. At the same time, he also alleges that he was illegally indicted for nine counts of burglary in the third degree. The defendant further asserts that his constitutional rights were violated because the police entered his home without his consent and questioned and arrested him and also that he was illegally detained in the county jail for 30 months. He additionally asserts that the attorney who filed the CPL §30.30 motion on his behalf provided ineffective assistance of counsel because the motion did not contain the location of the hearing. The defendant also alleges that because he was detained on a defective indictment, all of the time he was detained was chargeable to the People.

-3-

DISCUSSION

The information the defendant complains was omitted from the felony complaint but contained in the ADA's Arraignment Information Sheet (hereinafter AIS) and the Trial Bureau Thirty summary of case sheet (hereinafter TBT) consists of the following:

As to what is referred to in both the AIS and TBT as incident #3, that took place on July 28, 2015,[3] at 402 West 13th Street, 4th floor, the defendant points to the bolded portion which states, "Latent print was recovered from the above paper and matched the defendant."   With respect to that date of occurrence, the deponent of the felony complaint, Detective James Mechan, stated, in pertinent part, that, "I reviewed an ECT report which shows that a latent print was recovered from the above paper and matched the defendant." (See, the sixth paragraph of the factual portion of the felony complaint.) Thus, the felony complaint provided the same information concerning the latent print to that contained in the IAS and the TBT, except that in the felony complaint, Detective Mechan specified that the source of his information about the latent print was his review of an ECT report.

As to what is referred to in both the AIS and TBT as incident #4, that took place on August 8, 2015, at 138 West 25th Street, 5th floor, the defendant points to the bolded portion which states, "D cuts himself and leaves blood on elevator door DNA from blood comes back to the deft." The bolded information is not contained in the felony complaint.  (See, the seventh paragraph of the factual portion of the felony complaint.)

As to what is referred to in both the AIS and TBT as incident #6, that took place on  August 17, 2015, at 6 East 39th Street, 4th floor, the defendant complains that the last four words (i.e., after he was arrested) of the bolded portion in the AIS and TBT are omitted from the felony complaint.  Specifically, the AIS and TBT both state that, "One American Eagle Silver Dollar was recovered from defendant's person after he was arrested," whereas the felony complaint states that, "One American Eagle Silver Dollar

---

[3]The defendant erroneously states in his affidavit that the alleged date of occurrence is July 25, 2015.

-4-

<u>DISCUSSION</u>

The information the defendant complains was omitted from the felony complaint but contained in the ADA's Arraignment Information Sheet (hereinafter AIS) and the Trial Bureau Thirty summary of case sheet (hereinafter TBT) consists of the following:

As to what is referred to in both the AIS and TBT as incident #3, that took place on July 28, 2015,[3] at 402 West 13th Street, 4th floor, the defendant points to the bolded portion which states, "Latent print was recovered from the above paper and matched the defendant."   With respect to that date of occurrence, the deponent of the felony complaint, Detective James Mechan, stated, in pertinent part, that, "I reviewed an ECT report which shows that a latent print was recovered from the above paper and matched the defendant." (<u>See</u>, the sixth paragraph of the factual portion of the felony complaint.) Thus, the felony complaint provided the same information concerning the latent print to that contained in the IAS and the TBT, except that in the felony complaint, Detective Mechan specified that the source of his information about the latent print was his review of an ECT report.

As to what is referred to in both the AIS and TBT as incident #4, that took place on August 8, 2015, at 138 West 25th Street, 5th floor, the defendant points to the bolded portion which states, "D cuts himself and leaves blood on elevator door DNA from blood comes back to the deft." The bolded information is not contained in the felony complaint. (<u>See</u>, the seventh paragraph of the factual portion of the felony complaint.)

As to what is referred to in both the AIS and TBT as incident #6, that took place on August 17, 2015, at 6 East 39th Street, 4th floor, the defendant complains that the last four words (i.e., after he was arrested) of the bolded portion in the AIS and TBT are omitted from the felony complaint. Specifically, the AIS and TBT both state that, "One American Eagle Silver Dollar was recovered from defendant's person after he was arrested," whereas the felony complaint states that, "One American Eagle Silver Dollar

_____

[3]The defendant erroneously states in his affidavit that the alleged date of occurrence is July 25, 2015.

-4-

defendant's direct appeal from the judgment so as to have permitted appellate review, the claim is procedurally barred pursuant to CPL §440.10 (2)(b), ( c ).

The defendant's assertions that the indictment and the grand jury proceedings were likewise procedurally barred by CPL §440.10 (2)(b), ( c ), because they too concern matters that were of record since several of defendant's attorneys raised such claims in the motions that they filed.  Justice Konviser, who had inspected the grand jury minutes, determined that the grand jury evidence was sufficient and that the proceedings were not defective, and issued written decisions stating so.

The defendant's claim that Mr. Schwartz, the attorney who filed the CPL §30.30 motion on his behalf, provided ineffective assistance of counsel because the motion did not include the place where the hearing would take place is completely without merit. The motion was returnable in Part 31, the People filed a response in opposition and Mr. Schwartz submitted a reply.  In a written decision and order dated March 7, 2017, Justice Konviser denied the motion finding that the includable delay since the commencement of the action to March 7, 2017 only amounted to forty days. Justice Konviser's decision describes the reason for each adjournment period and her findings as to the status of each adjournment.  Her findings clearly refute the defendant's claim that the People's untimely request for the DNA swab caused unnecessary delay. Instead, her decision shows that the Article 78 proceeding the defendant had instituted to compel Justice Konviser to refer him for diversion and the time it was pending for decision by another court, as well as the repeated assignment of new counsel at defendant's request which occasioned delay for the successor attorneys to familiarize himself and herself with the case and also occasioned delay to resolve successive motions that they made on defendant's behalf.

The defendant's claim that the police entered his home without his consent is unavailing since the police had a warrant to search the premises.  The defendant's attorney, Mr. Schwartz, filed a motion to controvert the search warrant.  Justice Konviser in a written decision and order denied the motion finding that the search

was recovered from the defendant's person." (See, the third paragraph of the factual portion of the felony complaint.)

The above described omissions in the felony complaint about which defendant complains provide no basis for relief as there is no requirement that a felony complaint include all information known to the People or the police. See, CPL §§100.15(3), 100.40 (4)(b).   The felony complaint in this case conformed to the requirements of the law and was not defective in any respect.   All claims by the defendant to the contrary are rejected.  Furthermore, as to incident #3, the felony complaint provided even more information than what was recited in the AIS and TBT.

The defendant's claim that the omissions constitute a Rosario violation must fail because the obligation to provide Rosario material does not arise until the conclusion of the direct examination of a witness at a pre-trial hearing (see, CPL §240.44 [1]) and at a jury trial after the jury has been sworn and before the prosecutor's opening address (see, CPL §240.45 [1] [a]).

The defendant's claim that the undisclosed information constitutes Brady material is also unavailing since evidence that DNA which matched the defendant was found at one of the crime scenes or that the American Eagle Silver Dollar was recovered from the defendant's person after defendant's arrest can hardly be characterized as being favorable to the defendant or exculpatory.

The defendant's contention that he was prejudiced by the information omitted from the felony complaint is completely conclusory and does not provide a basis for granting the relief the defendant seeks.

The defendant's claim that the People's request on January 26, 2017, for the DNA swab from him was untimely does not provide a basis to vacate the judgment because defendant's then attorney, Mr. Kendall, filed a motion, dated February 5, 2016, in opposition to the People's request, based in part, on the People's request not being timely.   On February 9, 2016, Justice Konviser issued an order granting the People's request.   As this was a matter of record, which can or could have been raised on

warrant was valid and was supported by probable cause.   As this was a matter of record which can or could be raised on a direct appeal from the judgment by the defendant, it is  procedurally barred by CPL §440.10 (2)(b), ( c ).

As to the defendant's contention  that he was illegally searched and questioned by the police, Justice Konviser ordered hearings to determine the claims.  The case was referred to me for the hearings and for trial.  However, neither took place because the defendant pleaded guilty.  Thus, defendant's contention provides no basis to vacate the judgment.

The defendant's assertion that there was not a valid SCI because the defendant did not waive indictment must fail since the defendant was prosecuted by an indictment and not by a SCI (superior court information).

Defendant's contention that the indictment was jurisdictionally or otherwise defective is without merit as is the defendant's claim that the court lacked subject matter jurisdiction over the case.

All other claims made by the defendant in his pro se motion and amended motion to vacate the judgment not specifically addressed herein do not warrant discussion and, are additionally found not to establish a sufficient factual or legal basis for the relief the defendant seeks, and/or are procedurally barred pursuant to CPL §440.10 (2) (a), ( c ).

Accordingly, defendant's motions to vacate the judgment are denied in all respects.  The defendant's request for a hearing is also denied.

The foregoing constitutes the decision and order of the court.

Dated: New York, New York
       August 10, 2018

_____
ARLENE D. GOLDBERG, J.

HON. ARLENE D. GOLDBERG

-7-

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 31
------------------------------------------------------------------X
                         :

THE PEOPLE OF THE STATE OF NEW YORK,         NOTICE OF MOTION

                         :         **DKT. 3190/15**

                         :

                -against-

                         :

JOHN WALDEN,

                Defendant,            :

------------------------------------------------------------------X

     PLEASE TAKE NOTICE upon that  Lawrence Schwartz, Esq., attorney for the above-captioned defendant, will move the court on   January 3, 2017   for the following:

    1.  Dismissal of the Accusatory Instrument, Pursuant to C.P.L. 30.30(1)(a), or in the alternative;

    2. Defendant's Release From Custody Pursuant to CPL 30.30(2)(a)

Any further and different relief which this court deems just and proper.

No previous application for the relief sought herein has been made to any court.

DATED: NEW YORK, NEW YORK          YOURS, ETC.
          JANUARY 3, 2017              LAWRENCE SCHWARTZ
                                     576 Fifth Avenue Suite 903
TO: CYRUS VANCE, JR.             New York, New York 10036
      DISTRICT ATTORNEY, NEW YORK COUNTY
      CLERK, SUPREME COURT, CRIMINAL TERM

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 31
----------------------------------------------------------------------X
                          :

THE PEOPLE OF THE STATE OF NEW YORK,       MOTION TO DISMISS
                                      PURSUANT TO CPL 30.30
                          :     IND. 3190/15

                          :

            -against-

                          :

JOHN WALDEN,

                          :

           Defendant,

----------------------------------------------------------------------X

    Lawrence J. Schwartz, Esq., an attorney admitted to practice law in the state of New York, deposes and says the following, based upon information and belief, upon inspection of the records in this case, personally made court appearances, information secured from the District Attorney's Office, conversations with the Defendant, and an examination of the court file.

    1. Defendant herein was arraigned in criminal court on August 21, 2015, and the matter adjourned until August 25 for grand jury action. Four (4) days chargeable.

    2. On August 25, the defendant had been indicted, and the matter was adjourned for September 29, 2015 for Supreme Court arraignment in Part 31. Thirty-five (35) days chargeable.

    3. On September 29, 2015, the matter was adjourned for motion practice until November 2. Time excludable.

    4. On November 2, the matter was adjourned for People's Response by the court until December 1. Time excludable.

    5. On December 1, the People failed to provide a response in accordance with the schedule set by the court, and the matter had to be adjourned until December 15, 2015. Where an unreasonable delay occurs in answering a defendant's pretrial motions, the People should be charged with the period of delay. People v. Jones, 105 A.D.2nd 179 (2nd Dept. 1986). Fourteen (14) days chargeable.

6. On December 15, the People filed and served their response, and the matter was adjourned for decision by the court until January 26, 2016. Time excludable.

7. On January 26, 2016, the court rendered a decision on defendant's omnibus motion, and the matter was adjourned for hearing and trial until February 9, 2016. Time excludable.

8. On February 9, the People were not ready. The matter was adjourned until February 10, 2016, on consent. Time excludable.

9. On February 10, the People asked for an adjournment to obtain Defendant's DNA and perform comparisons. The matter was adjourned for this purpose until March 8. Where an adjournment is ordered for DNA testing, the adjournment is not excludable pursuant to CPL 30.30 unless the People show materiality and due diligence in obtaining the results. People v. Lathon, 120 A.D.3rd 1132 (1st Dept. 2015) People v. Clarke, 122 A.D.3rd 765 (2nd Dept,. 2015); Twenty-seven (27) days chargeable.

10. On March 8, the matter was again adjourned at the People's request for DNA results until May 3, 2016. Fifty-four (54) days chargeable.

11. On May 3, 2016, the People the matter was again adjourned for DNA results at the People's request until May 17. Fourteen (14) days chargeable.

12. On May 17, the matter was adjourned for assignment of new defense counsel until May 19. Time excludable.

13. On May 19, 2016, new counsel was assigned and the matter was adjourned until June 28. The People were not ready for trial. Forty (40) days chargeable.

14. On June 28, 2016, the People were again not ready and the matter was adjourned until August 9. Forty-two (42) days chargeable.

15. On August 9, Defendant filed and served a Motion to Controvert the Search Warrant, and the matter was adjourned until September 13. Time excludable.

16. On September 13, 2016, the People filed and served their response, and the matter was adjourned until November 1, 2016, for decision. Time excludable.

17. On November 1, 2016, the court rendered its decision as to Defendant's Motion to Controvert the Search Warrant. On October 14, 2016, Defendant had filed and served a Motion to Sever various counts of the Indictment. On November 1, the People did not have a response. The matter was adjourned until November 22, 2016, for Response. Time excludable.

18. On November 22, 2016, the People again did not have a response, and the matter

was adjourned until January 3, 2017. Where an unreasonable delay occurs in answering a defendant's pretrial motions, the People should be charged with the period of delay. People v. Jones, 105 A.D.2nd 179 (2nd Dept. 1986). Forty-Two (42) days chargeable.

Yielding a total of 272 days chargeable, beyond that allowed by CPL 30.30 (1)(b). Wherefore defendant requests that the instant matter be dismissed, or that he be released form custody, together with such other further and different relief as this court deems just and proper.

DATED:   NEW YORK, NEW YORK
         JANUARY 3, 2017                              LAWRENCE SCHWARTZ

1

1   SUPREME COURT OF THE STATE OF NEW YORK
    COUNTY OF NEW YORK:   CRIMINAL TERM:   PART 56
2   ------------------------------------------------x
    PEOPLE OF THE STATE OF NEW YORK
3

4                    -against-                Indictment No.
                                              03190-2015
5
    JOHN WALDEN,
6
                              Defendant.
7   ------------------------------------------------x

8                                  New York Supreme Court
                                   111 Centre Street
9                                  New York, New York  10013

10                                 December 1, 2017

11

12  B E F O R E:

13      HONORABLE ARLENE GOLDBERG, Justice of the Supreme Court

14  A P P E A R A N C E S:

15

16  FOR THE PEOPLE:

17          CYRUS R. VANCE, JR., ESQ.
            District Attorney of New York County
18          BY:  DANIEL MAKOFSKY, ESQ.

19  FOR THE DEFENDANT:

20          SUSAN CALVELLO, ESQ. (18B)
            Attorney for Defendant
21          30 Wall Street
            8th Floor
22          New York New York  10005

23

24                                          Lisa Mango
25                                      Senior Court Reporter

2

Proceedings

1          THE COURT CLERK:  This is calendar number 1,

2     Indictment 3190-2015, John Walden.

3          (Whereupon, Defendant is produced and before the

4     Court)

5          MS. CALVELLO:  Susan Calvello for Mr. Walden.

6          MR. MAKOFSKY:  Daniel Makofsky for the People.

7          Good morning.

8          THE COURT:  Good morning.

9          Defendant is present.

10          Both sides acknowledge receipt of the updated

11     probation report --

12          MS. CALVELLO:  Yes.

13          MR. MAKOFSKY:  Yes.

14          THE COURT:  -- reflecting defendant was

15     interviewed?

16          MS. CALVELLO:  Yes.

17          MR. MAKOFSKY:  Yes.

18          THE COURT:  Defendant pled guilty before me on

19     October 5, 2017 to all nine counts of the indictment.  He

20     was promised three to six as a second felony offender on

21     each count with two counts to run consecutively with each

22     other for a total of six to 12 years.

23          The matter was adjourned for sentence to October

24     20.

25          On October 20 the probation report indicated he

Proceedings

1    refused to be interviewed.   Defendant said no, no, he only

2    refused because he was sick.   Please put it over so he

3    could be interviewed.

4            I did.

5            Meanwhile, he sent a letter that we received after

6    that, received I believe October 26, a letter dated

7    October 18 asking for an extension to research the case law

8    for motion to withdraw his plea.

9            Then he sent a motion --

10           MS. CALVELLO:   10/24.

11           THE COURT:   Received November 6.   A duplicate of

12   the same allegations on November 27.   All of these items

13   were -- copies were made and sent to counsel.

14           Did you receive them?

15           MS. CALVELLO:   Yes.

16           THE COURT:   He indicates he cc'd the DA's office.

17           Are you adopting either of these?

18           MS. CALVELLO:   No, Judge.

19           THE COURT:   The claims are completely without

20   merit, in any event.

21           Arraign the defendant for sentence.

22           THE COURT CLERK:   Mr. John Walden, you are now

23   before the Court for sentencing following your plea of

24   guilty --

25           THE DEFENDANT:   Excuse me, Ms. -- may I say

Proceedings

1   something before that --

2                   THE COURT CLERK:  No.

3                   THE COURT:  You will get a chance.

4            What do you want to say?

5                   THE DEFENDANT:  I would like to -- I have an

6    Article 78 in and I would like to be heard before the

7    Appellate Division.

8                   THE COURT:  Sir, I --

9                   THE DEFENDANT:  Wait a minute.

10                  THE COURT:  You wait a minute.  We are going ahead

11   with sentence.

12                  Arraign him.

13                  THE COURT CLERK:  You are now before the Court for

14   sentencing following your plea of guilty to nine counts of

15   burglary in the third degree, each count --

16                  THE DEFENDANT:  Any way I can take my plea back?

17   I am asking for my plea back.  I would never have tooken

18   (sic.) it if I had my paperwork and I had this information.

19           Can I please have my plea back?  All my rights

20   have already been taken from me from the start of not

21   getting my paperwork and I have been asking my lawyer -- I

22   have been calling my lawyer the two weeks.  I put in a

23   motion.

24           I am asking can I please take my plea back.  I

25   don't want my plea.  If you want to go to trial, I will go

Proceedings

1     to trial.  I don't want my plea.  This whole thing is

2     defective.  You should not be sentencing me for this,

3     Mrs. Goldberg.  You know this.  I put that in my motion to

4     you, to why I was taking my plea back.

5            I asked you that and I would like a new attorney.

6     I would like if you can please grant that and not just send

7     me -- all my rights were violated.  I didn't know evidence

8     was fabricated and hidden from me.  I didn't know all that

9     was there.  I have been asking her for eight months I had

10    asked her for that.  I asked my other attorneys I had for

11    that.

12           Can you please give me a chance to fight this.  I

13    never had a chance.

14           THE COURT:  Now, you are going to stop talking.

15    All right.

16           You indicated when you were sent here for trial

17    and we were starting the trial, hadn't started yet, that

18    you wanted an adjournment to review everything.

19           We weren't starting today, so you would have

20    plenty of time to review all the paperwork.

21           Then you said -- and you asked me to reduce --

22    Judge Konviser offered you the six to 12.  People wanted

23    eight to 16.  You wanted five to ten.  Wasn't going to give

24    it to you.

25           The People indicated that the crimes were on

Proceedings

1    surveillance tape.  You said you never saw them.

2         We started playing them.  Clear as day there you

3    are in one of the burglaries and while it is being played

4    toward the end, I am asked to stop.  You don't need to see

5    any more.  You are taking the plea.

6         THE DEFENDANT:  Everything was not there.  It was

7    not there I was cutting my hand.  My question to you is

8    where is the video of me cutting my hand.

9         THE COURT:  Sir --

10        THE DEFENDANT:  That is my questioning.  I am

11   asking you can I take my plea back.  Can I take my plea

12   back?

13        THE COURT:  No, you cannot.  The plea was knowing,

14   voluntarily --

15        THE DEFENDANT:  No, it wasn't.  No, it wasn't.

16        THE COURT:  On appeal you can raise the issue.

17        MS. CALVELLO:  Judge, I would like just to put on

18   the record, so everything is clear, there was paperwork

19   handed over -- I was the fourth lawyer or fifth lawyer.

20        It's DNA material that Mr. Walden is talking about

21   that he says we did not discuss, just so it is clear.

22        The assistant was nice enough to recopy everything

23   to me.  I had received that all in July.

24        By August my expert, Dr. Henning (phonetic), had

25   already received all of that material that is now mentioned

Proceedings

1    in that motion by Mr. Walden.   It was analyzed.   It was

2    read.   I had a conference with the doctor and the material

3    was given to Mr. Walden as well as that was --

4                 THE DEFENDANT:   It was not given to me.   You did

5    not give me that until the day we came in here for

6    sentencing.   It is not even in the complaint.   It is not

7    even in the disclosure or bill of particulars.   It is not

8    even in the discovery.   It is not even in the indictment.

9    It was not.

10               That's under 240.20.   You are supposed to have

11   that there and tell me that.   You did not give me that.

12   You didn't give me that until that day because I wouldn't

13   have did that.   Ain't no way in hell I would have did

14   something like that.   You are sitting here saying I am

15   lying.   You didn't.   You handed me two.   One before that

16   and one on the 20th.   You handed me two.

17               You didn't.   There is no way I have did that.   I

18   wouldn't have took this sentence.   There is no way.   I've

19   been calling you for two or three weeks, two or three weeks

20   even prior asking to meet with you and ask you to sit down

21   and go over this.   Maybe to ask you to adopt the motions.

22               Did you -- I asked you to let me see on video if

23   you couldn't see me.   I asked you if you could call me to

24   the courtroom.   I asked you that.

25               MS. CALVELLO:   Stop screaming, Mr. Walden.

*Lisa Mango - Senior Court Reporter*

Proceedings

1          THE DEFENDANT:  I asked you that.  I'm sorry about

2     that.

3          MS. CALVELLO:  Stop screaming, Mr. Walden.

4          Stop screaming.

5          THE COURT:  You have to stop screaming and

6     talking.

7          MS. CALVELLO:  Let the record to be clear since

8     November 1 I have been on trial on a 100-count traffic

9     indictment and there are six defendants, and I made the

10    time today.  We are not done and not going to be done until

11    January, which is why I could not do a video.  Because we

12    are in Court from 9 until 6 every day since November 1.

13          So I have not been ignoring those calls.  Judge

14    Dwyer is not giving me time to do counsel visits.  That is

15    where I have been and will continue to be until January.

16          I did take time to read all of the information at

17    11 o'clock at night that is supplied very nicely by your

18    law secretary and I would not have adopted the motions.

19    Just so Mr. Walden is clear.  I read it and would not adopt

20    them.

21          THE COURT:  All right.

22          THE DEFENDANT:  Okay --

23          THE COURT:  Hold on.  You have got to stop

24    talking.

25          THE DEFENDANT:  Can I please take my plea back?

Proceedings

1      THE COURT:  The answer is no.

2      THE DEFENDANT:  Can you do that for me?

3      THE COURT:  You can raise that on your appeal.

4      Arraign the defendant for sentence.

5      THE COURT CLERK:  Mr. John Walden, you are now

6  before the Court for sentencing following your plea of

7  guilty to nine counts of burglary in the third degree, all

8  counts pertaining to Penal Law Section 140.20.

9      The Court will allow you, your attorney and the

10  district attorney an opportunity to make any statement

11  relevant to the question of sentence.

12      Any statement by the People?

13      MR. MAKOFSKY:  People rely on the promised

14  sentence.

15      THE COURT:  Counsel.

16      MS. CALVELLO:  Defense has nothing to add, Judge.

17      THE COURT:  Mr. Walden, anything you wish to say

18  with respect to the question of sentence?

19      THE DEFENDANT:  I do.  I do not agree with this.

20  I do not agree with this.  You are violating every one of

21  my constitutional rights.  I should not be sentenced today.

22  I should not.  I should have a right to get effective

23  counsel.  I don't have that.

24      THE COURT:  You have effective counsel.

25      THE DEFENDANT:  No, I don't.  No, I don't.  No, I

Proceedings

1    don't.  The complaint is defective.  Everything on the

2    indictment.  The whole thing is defective.

3              THE COURT:  Your things that are defective are

4    without merit.  You are sentenced on each count to an

5    indeterminate term of imprisonment of three to six years.

6              Counts one and four are to run consecutively with

7    each other.  All other counts will be concurrent.

8              One and four consecutive to each other but

9    concurrent with all other counts.

10             Advise your client of his right to appeal and let

11   me know you have done that.

12             MS. CALVELLO:  I will.

13             (Whereupon, the defendant and counsel are

14   conferring)

15             MS. CALVELLO:  I have informed Mr. Walden, handed

16   him the paperwork and informed him he has a right to appeal

17   and 30 days to do it.  If he cannot afford an attorney, one

18   will be accorded to him.

19             (Continued on the following page)

20

21

22

23

24

25

Proceedings

1          THE COURT:  All applicable fees are imposed.

2          Take charge.

3          *          *          *          *          *

4          Certified to be a true and accurate transcript of

5   the stenographic minutes taken within.

6

7

8

9   _____

10                      Lisa Mango
                Senior Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE OF SERVICE

STATE OF NEW YORK)
                 ) SS.:
COUNTY OF  BRONX )

John  Walden, Being Affirmed,   deposes and says that:
I am the defendant pro-se and make this Certificate of Service
under the penalty of perjury and to the best of my knowledge.

I am placing One Original and One Copy of the following:
NOTICE OF MOTION TO WITHDRAW & COMBINED MOTION TO DISMISS THE
INDICTMENT, WITH EXHIBITS ON THE BELOW LISTED PARTIES:

(A):   NEW YORK SUPREME COURT      NEW YORK SUPREME COURT
       COUNTY OF NEW YORK          PART (56) CHAMBER'S
       MOTION SUPPORT OFFICE       COUNTY OF NEW YORK
       RM: 1000                    100 CENTRE STREET
       100 CENTRE STREET,          NEW YORK, NY 10013
       NEW YORK, Ny 10013          Judge Arlene Goldberg, (j)

(C):   NEW YORK COUNTY D'A
       CYRUS VANCE, JR.
       (ADA) SHILPA KALRA, ESQ

       ONE HOGAN PLACE, Ny Ny
       10013

I have placed the above listed motion in the hands of an employee
located at, 11-11 HAZEN STREET, EAST ELMHURST, NY 11370, RNDC FACILITY,
(RIKERS ISLAND), to place same inside of a United States Post Office
Mail Box.
DATED: OCTOBER 28, $2017              Yours, Etc. John Walden
                                      John Walden, Pro se

I, John Walden, hereby affirms under penalty
of perjury that the foregoing is true and
correct. [28 U.S.C. §1746]
EXECUTED THIS 28 day of October, 2017.

_____
        SIGNATURE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK : PART (56)
-----------------------------------------X
The People of The State of New York

              Respondent(s)

        -against-

JOHN WALDEN,

              Defendant-Pro-se.
-----------------------------------------X
SIRS/MADAM:

NOTICE OF MOTION TO
WITHDRAW PLEA.* AND
COMBINED CLAYTON MOTION
TO DISMISS THE INDICTMENT
IN THE FURTHERANCE OF
JUSTICE.* [CPL §§220.60(3),
210.40].

Ind. No.: 03190/2015

Goldberg, (j).

          PLEASE TAKE NOTICE, That upon the Affidavit of, John
Walden, Acting Pro-se, and pursuant to all prior Proceedings held
heretofore, including the said indictment, the undersigned will move
this Court located at a Courthouse at, 100 CENTRE STREET, NEW YORK,
NY 10013, On The 16Th Day of November, 2017, or as soon thereafter
as this Court file and Motion Can Be Heard, For An Order, First:
Granting The Withdrawal of the defendant's Plea of Guilty Before This
Court on the 6Th Day of October, 2017, On The Ground That: Defense
Counsel, Ms. Susan Calvello, turned over Newly Discovered Brady And
Rosario Material that is "Exculpatory Information that is, "Highly
Material To The Defense" and Revealing Prosecutorial Misconduct, and
Ineffectiveness of (all) prior Defense Counsel's on this case, (SEE:
PEOPLE V. CARDLIN, (1St Dep't 1998) 240 A.D.2d 5), Also; The Defendant
moves for a dismissal of the Complaint & Indictment as it is now shown
to be Defective, Jurisdictionally So, (See: C.P.L. §§100.15(3), 100.40
(C), 210.25, 210.35), also see; People v. Baldi, 54 NY2d 137; and see;
Strickland v. Washington, 466 U.S. 668 (U.S.C.A.Const.'s 6, 14), and
for such other and further relief as this Court may deem just, proper
and equitable.

DATED: OCTOBER 28, 2017.
BRONX COUNTY*

                              Yours, Etc.

                        Mr., John Walden, Pro-se

TO: HON. CYRUS VANCE, JR.
    NEW YORK COUNTY D'A
    ONE HOGAN PLACE
    NEW YORK, NY 10013

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK : PART (56)
----------------------------------------X
The People of The State of New York

                  Respondent(s)

              -against-

JOHN WALDEN,

               Defendant-Pro-se.

----------------------------------------X

STATE OF NEW YORK)
          ) SS.:
COUNTY OF  BRONX )

**AFFIDAVIT IN SUPPORT FOR, NOTICE OF MOTION TO WITHDRAW PLEA.\* AND COMBINED CLAYTON MOTION TO DISMISS THE INDICTMENT IN THE FURTHERANCE OF JUSTICE.\* [CPL §§220.60(3), 210.40]. . .**

Ind. No.: 03190/2015

Goldberg, (j).

          <u>John Walden Pro-se</u> , being duly sworn, deposes and says that:

1.  I am the defendant acting Pro-se in this case and as such am
fully familiar with the facts herein.  This is an Affidavit In
Support of my Instant Motion by Notice To Withdraw My plea of
Guilty takened before the Hon. Justice Goldberg on the 6Th Day
of October, 2017.  The defendant plea to 9-counts of Burglary
In The Third Degree, (P.L. §140.20), and To A Sentence of (6 to
12) on each count, to run currently.  The defendant@ is due to
be sentenced on, November 16th, 2017.

2.  The defendant's assigned counsel called the defendant to the
Courthouse on the 20th of October, 2017, and handed the defendant
a large amount of Discovery Papers.  The defendant found the
following Newly Discovered Document's. [SEE: EXHIBIT @A): BY
(ADA) Shilpa Kalra, "**ARRAIGNMENT INFORMATION SHEET**" APPROVED ON
                     10-9-15.?. .

                           [SEE: EXHIBIT (B): TRIAL
                      BUREAU THIRTY "SUMMARY OF CASE SHEET" FOR
                      ARREST DATE: 8/20/15. . .

The Assistant District Attorney has concealed evidence from the
defense before the Indictment was filed and Grand Jury held. Also,
deleted information from the Felony Complaint and it's factual
part sworn under oath. The concealment was intentional and was
clearly selected. First, there is 9-incidents listed as a pattern
of Commercial Burglaries.  The Assistant District Attorney has
bold printed event's in selected paragraph's, detailing matters

AFFIDAVIT IN SUPPORT
PAGE 2. (2-Con'd)

—concerning (DNA) & (Fingerprints), also (Cash Items) Etc.

3.   The District Attorney's Office referred to Incident # 3 that
took place on, July 25th, 2015 at 402 West 13th Street, 4th
Floor. In bold print at the end of the small paragraph, the
following is stated: "Latent Print was recovered from the above
paper and matched defendant."

Next, they refer to Incident # 4 that took place on, August 8th,
2015 at 138 West 25th Street, 5Th Floor. In bold print at the
end of the small paragraph, the following is stated: "D cuts
himself and leaves blood on elevator door DNA from blood comes
back to deft".

Next, they refer to incident # 6 that took place on, August 17th,
2015. In bold print at the end of the small paragraph, the follow-
ing is stated: "One American Eagle Silver Dollar was recovered
from the defendant's person after he was arrested.'

4.   The defendant also refers to Exhibit (B), which has the same
inputed bold print statement's at the ending of each small para-
graph.  It is clear that the Assistant (ADA) understood the iden-
tity of the defendant from the second or third day after her staff
obtained Lab Results from collected Prints & (DNA). The defendant
ask this Court to look at the Felony Complaint and it's Factual
Part therein, to compare the same event's listed, in the same
order as in Exhibit's (A) & (B).

5.   The District Attorney had detailed evidence and facts concerning
the defendant injuring himself on, August 8th, 2015. Since there
is only Video Tape Evidence and since there is no eye witness'es
in this crime event.  It is concluded that the District Attorney
reviewed a Video Tape to come to the following conclusion. (See;
Exhibit (a)). In incident # 4 and written in bold print at the
end of Incident # 4, it states, inter-alia, "D cuts himself and
leaves blood on elevator door." The building lobby on the 5th
floor is made up as follows. When you come off the elevator,

AFFIDAVIT IN SUPPORT
PAGE 3. (5-Con'd)

a Office Door is facing you.  This was told to me by my defense
counsel's and including what the Video Tape Shown. It was said that
the defendant "attempts to pry the office door open with a tool and,
then uses his body to open the door."  The problem is this, there is
no mention of the elevator in the Felony Complaint in this August
8th, 2015, crime event. Moreover, as the District Attorney uses in
all factual crime event's in the Felony Complaint, Video Tape Evi-
dence, the District Attorney is using same here.

6.  The Video Tape would not only show the door being opened, yet,
    would also show the defendant cutting himself on the elevator
    door? Or, getting off the elevator? The defendant argues that
    the elevator and it's evidence was intentionally deleted by the
    District Attorney and as such, the Felony Complaint, and the
    Indictment, including Grand Jury Testimony was Tailored and
    Manufactured.  The defendant argues that both, The Felony Com-
    plaint and the Indictment, Grand Jury Etc., is all defective
    within the meaning of (C.P.L. §100.15(3), §100.40(C), §210.25
    & §210.35) and must be dismissed.

7.  !SEE: EXHIBIT (C): (3 of 3 Pages) Felony Complaint*.
    The defendant comes to this conclusion of intentional manufactured
    evidence and suppression of Real Evidence due to the fact that,
    in the Felony Complaint, most of the statement's are the same
    as the "Arraignment Information Sheet", Exhibit (A). Infact, the
    District Attorney did delet one other factual detail that also
    makes the complaint & indictment/Grand Jury defective. SEE: Inci-
    dent # 6. August 17th, 2015. In the Arraignment Sheet the (ADA)
    ended with bold print also and said, "One American Eagle Silver
    Dollar was Recovered from the defendant's person, "AFTER HE WAS
    ARRESTED". The (ADA) deleted these last four words from her Felony
    Complaint. (See; Exhibit (C)*).

8.  The defendant argues that this was also a major set of facts that
    could change the actual crime event and goes to detailed arrest-

AFFIDAVIT IN SUPPORT
PAGE 4. (8-Con'd)

-event's and simply cannot be deleted?

~~The rest of the facts in the Complaint and the Arraignment Sheet~~

are listed. Therefore, the question for this Court is this. Did The
Prosecutor Commit Prosecutorial Misconduct by Non-Disclosure of Ex-
culpatory Material? "The failure of the prosecutor to make any effort
to correct any falsehood to afford the Court or Defense Counsel an
an opportunity to examine those error's, manufactured event's and
evidence, in effect amounted to a suppression of Brady & Rosario
material and severely prejudiced this defendant, including denied
him a fair trial". (See; People v. Savvides, 1 NY2d 554, People v.
Zimmerman, 10 NY2d 430, 433; also see, People v. Simmons, 36 N.Y.S.
2d 126).

The defendant also argues that Due Process Compels the Dismissal of
this indictment, due to 'prosecutorial misconduct and the fact that
the District Attorney's File is nothing more than "Fruit of The
Poisonous Tree." (See; People v. Isaacon, 44 Ny2d 511. Manufacturing
False Evidence to obtain a conviction cannot be over-looked.
(SEE: NORTON V. TOWN OF ISLIP, et al., (.U.S. Dist. Lexis 27565,
04-CV-3079(NGG)(WDW)(DECIDED MARCH 27TH, 2009).

9.   (SEE: EXHIBIT (D): "PEOPLE'S VOLUNTARY DISCLOSURE FORM")
                DATED: OCTOBER 5Th, 2015. *

     The defendant was arraigned on this case on, August 20th, 2015,
     and the People's Answer To Defendant Omnibus Request is dated,
     October 5th, 2015. The People had (45) days to decide whether
     to Disclose the Blood Evidence Test and Elevator event's in
     the Bill of Particulars. Yet, the people decided not to do so?
     (SEE: PAGE FOUR, Paragraph (3). "SCIENTIFIC AND MEDICAL REPORTS"
     The District Attorney's Office had the Medical Report's also.
     (SEE: EXHIBIT (E): Evidence Received #FB15-04186 "Disposition")
                Voucher #1000680389 Dated: 08/11/2015
     (SEE: EXHIBIT (F): :LABORATORY REPORT:REPORT ID CRT.0915-0694:
                DATED: SEPTEMBER 30Th, 2015.*

10.  The District Attorney's Office, for some reason decided to focus
     on the August 8th, 2015, crime event, even though they had made
     illegal deletion with facts and evidence. On (January 26th, 2016),
     The Court made a ruling on the Omnibus Motion and on this same
     day the People moved to Seize (DNA) from the defendant's mouth.
     (SEE: EXHIBIT (G): "AFFIRMATION IN SUPPORT OF AN ORDER OF SEIZURE".)
                (3 of 3 Pages) DATED: January 26th, 2016.*
     The People wrote in the August 8th, 2015 crime event and mentioned-

AFFIDAVIT IN SUPPORT
PAGE 5. (10-Con'd)

-Blood on the elevator. Yet, they did not mention anything about
~~the defendant cutting himself on the elevator. Once again, the~~
District Attorney's Office deleted the main fact that could have
only came from viewing a Video Tape. The fact that was mentioned
from (Day One), that defendant cut himself "on the elevator door"!

11.   The defendant also argues that the People have created a large
      Governmental Delay that was not needed if they would have made
      disclosure of the (DNA) facts and evidence over a year prior.
      The denial of the (CPL 30.30 Motion and Delay for (DNA) results
      should be viewed as erroneous). The CPL 30.30 Motion was filed
      and dated by, Defense Counsel, Lawrence Schwartz and dated; Jan
      3rd, 2017.

12.                        *MEMORANDUM OF LAW*
      (SEE: PEOPLE V. JOSEPH DaGATA,(Ct of App's 1995)), 86 N.Y.2d
      40. "The Court remanded for disclosure of the notes and a hearing.
      Failure to order discovery of the notes was error because N.Y.
      Crim. Proc. Law §240.20(1)(C) required disclosure of any document
      concerning a scientific test when sought by defendant. Such dis-
      closure was mandated regardless of whether or not the information
      was exculpatory."   Id.

      (C.P.L. §220.60) authorizes the court to Set Aside a Plea and
      move the case forward. SEE: PEOPLE V. SELIKOFF, 35 NY2d 227,
      (1974); also see; People v. Reynaldo Lopez-Alvarado, 2017 N.Y.
      APP. DIV. LEXIS 2957.* The defendant in this case was subjected
      to Ineffective-Assistance of Counsel and given Newly Discovered
      Evidence, "After his Plea". (SEE: PEOPLE V. CARDLIN, MARTIN,
      (1St Dep't App. Div. 1998) 240 A.D.2d 5; 669 N.Y.S.2d 268.*

      Quoting: "A decision to vacate a plea rests in the sound discre-
      tion of the motion court, subject only to an abuse of discretion
      standard." Id. "A prosecutor's inadvertent or negligent failure
      to disclose exculpatory material in his control has long been
      seen as conflicting with considerations of elemental fairness
      and professional responsibility, which may deny the defendant

AFFIDAVIT IN SUPPORT
PAGE 6.
MEMORANDUM OF LAW
(12-Con'd)

-due process when nondisclosure of even unrequested exculpatory evidence is highly material to the defense. Although the obligation is termed an on-going one, there is a countervailing judicial interest in the finality achieved by a lawful plea. The concern is that a plea might not be knowingly and intelligent under circumstances where information pointing to the defendant's innocence is in the possession of the prosecutor, but is not disclosed to the defendant." Id. This Court Found That, "This Constitutional Violation undermines the very validity of the Plea Itself!" Yet, Affirmed.

13. The defendant argues that there is no question that the people's failure to disclose evidence that appears to change the entire crime event and is direct evidence, is serious enough to Set Aside The Plea and hold hearing concerning the claim that the withholding is ~intentional and evidence was manufactured, also, that the Felony Complaint and Indictment/Grand Jury are both Defective and Must Be Hereby Dismissed.

                    WHEREFORE, THE DEFENDANT REQUEST THAT
                    THIS COURT GRANT RELIEF REQUESTED, AND
                    FOR SUCH OTHER AND FURTHER RELIEF AS
                    THIS COURT MAY DEEM JUST, PROPER
                    AND EQUITABLE.

DATED: OCTOBER 28 , 2017.

                            Yours, etc.

                            John Walden, Pro-se
                            Signature

SWORN TO BEFORE ME
THIS ___ DAY OF OCTOBER,
2017.

        NOTARY PUBLIC

**DANIELLE STRINGER**
Notary Public State of New York
No. 01ST6131234
Qualified in Queens County
Commission Expires August 1, 2021

EXHIBIT

(C)

SUPREME COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK: PART 31

THE PEOPLE OF THE STATE OF NEW YORK

-against-

JOHN WALDEN,

Defendant.

**NOTICE OF OMNIBUS MOTION**

Indictment No.: 03190-2015

PLEASE TAKE NOTICE that, upon the annexed affirmation of William Kendall,

an attorney admitted to practice law in the State of New York and employed by the

Neighborhood Defender Service of Harlem, the undersigned will move this Court, at 100

Centre Street, Part 31, on November 2, 2015, for an Order:

1.      Granting a full inspection of the grand jury minutes by the Court and defense counsel. To the extent that this Court is not willing to fully dismiss the indictment based on its own inspection, the defense requests full disclosure of the grand jury minutes to the parties or, in the alternative, relevant portions thereof, including but not limited to the prosecutor's legal instructions. In the alternative, Mr. Walden requests an order retaining a sealed copy of the grand jury minutes as a court exhibit, for inclusion in the record on appeal. U.S. Const. Amends. VI, XIV; N.Y. Const. Art. I, § 6; CPL § 210.30;

2.      Dismissing the indictment, or in the alternative, dismissing or reducing counts therein, pursuant to CPL § 210.20, on the grounds that the evidence before the grand jury was not legally sufficient;

3.      Dismissing the indictment, or in the alternative, dismissing or reducing counts therein, pursuant to CPL § 210.20, on the grounds that the grand jury proceeding was defective within the meaning of CPL § 210.35. U.S. Const. Amends. VI, XIV; N.Y. Const. Art. I, § 6;

4.      Compelling the prosecution to turn over to defense counsel copies of the application for the search warrant, including any annexed affidavits, the search warrant, and the return on the search warrant;

5.      Suppressing, pursuant to CPL §§ 710.20(3), 710.20(4), and 710.60, all statements allegedly obtained from Mr. Walden; in the alternative, Mr. Walden requests a **Huntley** and **Dunaway** hearings for findings of fact and conclusions of law;

1

6. Precluding the prosecution from introducing at trial all evidence for which it has failed to give timely notice pursuant to CPL § 710.30;

7. Compelling a Demand to Produce, pursuant to CPL §§ 240.20 and 240.40;

8. Compelling a Bill of Particulars, pursuant to CPL § 200.95;

9. Precluding the prosecution's use of certain evidence for failure to comply with the Request for a Bill of Particulars and the Demand to Produce, pursuant to CPL §§ 200.95(5) and 240.70(1);

10. Ordering the prosecution to fulfill its continuing obligation to provide the defense with exculpatory material pursuant to the Fourteenth Amendment of the United States Constitution and Article I, § 6 of the New York State Constitution, *see Brady v. Maryland*, 373 U.S. 83 (1963);

11. Granting reasonable time for Mr. Walden to make such additional applications, if required, predicated on the prosecution's response to the motions herein, the Demand to Produce, the Request for a Bill of Particulars, the Court's decision as to the current motions, and any further developments in this case, pursuant to CPL §§ 255.20(2) and 255.20(3);

12. Granting such additional relief as the Court deems just and proper.

No previous application for the relief sought herein has been made to any court.

Dated: October 30, 2015
New York, New York

Respectfully submitted,

William Kendall
Attorney for John Walden
Neighborhood Defender Service of Harlem
317 Lenox Ave
New York, NY 10027
212.876.5500

To:   Shilpa Kalra, Esq.
      Assistant District Attorney
      New York County

      Clerk of the Supreme Court
      Part 31
      New York County

2

SUPREME COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK: PART 31

THE PEOPLE OF THE STATE OF NEW YORK

-against-

JOHN WALDEN,

Defendant.

**OMNIBUS MOTION**

Indictment No.: 03190-2015

WILLIAM KENDALL, an attorney admitted to practice law in the State of New York and employed by the Neighborhood Defender Service of Harlem, hereby affirms under penalty of perjury that the following statements are true, and as to those made upon information and belief he believes them to be true:

1.    I represent Mr. John Walden in this matter.

2.    Mr. Walden was arraigned on September 29, 2015 on nine different counts of Burglary in the Third Degree, in violation of Penal Law 140.20.  This affirmation is made in support of a motion requesting several different forms of relief.

*Facts*

3.    In the early morning hours of August 20, 2015, Mr. Walden was in inside of his home, which was located on 515 West 145th street in Harlem. Despite having done nothing to warrant police suspicion, police officers entered Mr. Walden's home without his permission and while he was asleep. He had not broken any laws, nor acted in any way that would have justified police suspicion. Nonetheless, officers approached him, questioned him, searched him, and then arrested him.

*Inspection of Grand Jury Minutes*

4.    Mr. Walden respectfully moves this Court for an inspection of the grand jury minutes pursuant to CPL § 210.30. To the extent that this Court is unwilling to grant

in full Mr. Walden's pending applications to dismiss all counts of the indictment based upon the Court's own inspection of the minutes, the defense requests that the Court release the minutes, in their entirety, to defense counsel, so that counsel may effectively analyze whether colorable dismissal issues exist and, to the extent that such issues do exist, effectively present written and oral argument in support of dismissal. In the alternative, defense counsel requests inspection of relevant portions, including all applicable legal instructions, absent a particularized showing by the prosecution of a reason to deny inspection. *See* U.S. Const. Amends. VI, XIV; N.Y. Const. Art. I, § 6.

    5.      To the extent that concerns for the privacy or safety of witnesses are presented, the defense is willing to accede to an inspection of the minutes by counsel alone, subject to any appropriate orders restricting disclosure of the minutes to the defendant personally.

    6.      In the alternative, and to the extent that this Court does not order full disclosure of the grand jury minutes, Mr. Walden requests an order directing that a sealed copy of the minutes, or any undisclosed portions thereof, be retained as a court exhibit for inclusion in the record on appeal from any prospective judgment of conviction. The defense is entitled as a matter of law to such an order, since it is necessary to fully effectuate a defendant's right to appeal, as guaranteed by State statutory law; the Due Process Clause of N.Y. Const., Art. I, § 6; and the Equal Protection Clauses of the State and Federal Constitutions.

### *Dismissal of Counts Not Supported by Legally Sufficient Evidence*

    7.      Mr. Walden moves, upon the Court's inspection of the grand jury minutes, as previously requested, for an order dismissing the indictment or, in the alternative,

dismissing or reducing counts therein, pursuant to CPL § 210.20(1)(b), on the grounds

that the evidence before the grand jury was not legally sufficient to establish the offenses

charged, or any lesser included offense.

8.      As to the charges of violating Penal Law § 140.20, it is Mr. Walden's

contention that the grand jury testimony presented in support of the indictment was

insufficient in that it did not adequately demonstrate that:

   a.   That on the dates specified for each count in the indictment, in the county
        of New York, Mr. Walden unlawfully entered and remained in the
        buildings specified in each count in the indictment,

   b.   That Mr. Walden did so knowingly and unlawfully;

   c.   And that Mr. Walden did so with the intent to commit a crime inside each
        building.

### *Integrity of the Grand Jury Proceeding*

9.      Mr. Walden moves, upon the Court's inspection of the grand jury minutes,

as previously requested, for an order dismissing the indictment, or in the alternative,

dismissing or reducing counts therein, pursuant to CPL § 210.20(1)(c), on the ground that

the grand jury proceeding was defective within the meaning of CPL § 210.35 because:

   a.   The grand jury was illegally constituted (CPL §210.35(1));

   b.   The proceeding was conducted before fewer than sixteen grand jurors
        (CPL §210.35(1));

   c.   Fewer than twelve grand jurors concurred in the finding of the indictment;
        (CPL §210.35(3)); and

   d.   The proceeding otherwise failed to conform to the requirements of CPL
        Article 190, other applicable State law, and the State and federal
        constitutions to such degree that the integrity thereof was impaired, and
        prejudice to defendant may have resulted (CPL §210.35(5)); defaults in
        the conformity of the proceedings include but are not limited to:

        i.   The violation by the prosecutor of the applicable constitutional,
             statutory, and common-law rules of evidence, including the

applicable rules against hearsay, *see* CPL § 190.30;

ii.  The presentation of deficient or erroneous instructions on the law and the weight of the evidence to the grand jury, including but not limited to incorporation by reference of instructions given to this grand jury regarding the same crime in the course of an earlier presentation. *People v. Brown*, 81 N.Y.2d 798 (1993); CPL § 190.25(6);

iii. Failure of the prosecution to present exculpatory evidence that the prosecution knew or should have known existed;

iv.  Presentation of improper and extraneous material to the grand jury;

v.   Utilization by the prosecution of the grand jury as a discovery device to prepare for trial.

### *Suppression of Statements*

10.    At arraignment, the prosecution served notice, pursuant to CPL § 710.30(3), of its intent to introduce a statement allegedly made by Mr. Walden. The statement was allegedly made on August 20, 2015, at 8:02am, at the Midtown South Precinct. The sum and substance of the statement is included in the VDF and relates to the circumstances surrounding his arrest.

11.    Mr. Walden hereby moves to suppress any and all statements that Mr. Walden allegedly made to any public servant, or servants, engaged in law enforcement. In the alternative, Mr. Walden moves for a hearing to determine whether such statements should be suppressed. Upon information and belief, such statements were involuntarily made and obtained from Mr. Walden in violation of his rights under the New York and federal Constitutions.

12.    Mr. Walden moves to suppress under CPL §§ 60.45, 710.30(2), and 710.40 *et seq.* and contends that it was illegally obtained on the following grounds:

a.  It is the tainted fruit of an unlawful arrest and, as such, must be suppressed pursuant to *People v. Dunaway*;

6

   b.   Mr. Walden was subjected to custodial interrogation without first being
        advised of his *Miranda* rights;

   c.   Mr. Walden did not knowingly and intelligently waive his right to remain
        silent;

   d.   Mr. Walden involuntarily made the statement

### *Motion to Compel the People to Provide Defense Counsel with Copies of the Search Warrant Application, the Search Warrant, and the Return on the Warrant*

13. The People have indicated to defense counsel that the search of Mr. Walden
was conducted pursuant to a search warrant. The search warrant has not been turned over
to defense counsel. The search warrant application (including any affidavits annexed to
the search warrant) and the return on the search warrant also have not been provided to
defense counsel.

14. Mr. Walden reserves his right to move to controvert the search warrant, and
the above-mentioned documents are required in order for Mr. Walden to make his
motion. Mr. Walden cannot make a motion to controvert the search warrant executed in
this case absent the requested information. Accordingly, Mr. Walden moves that the
Court compel the People to turn over to defense counsel copies of the search warrant, the
application for the search warrant, any annexed affidavits, and the return on the warrant.
Finally, the defendant requests that this Court grant the defense an opportunity to
controvert the search warrant upon receipt of the requested documents.

### *Discovery and Inspection*

15.    A Demand to Produce made pursuant to CPL § 240.20 is also attached and
incorporated in the foregoing motion. This Demand is incorporated herein so that it will

7

be before the Court for a ruling pursuant to CPL § 240.20(1)(a), in the event of the prosecution's refusal to turn over the requested information.

16.     Pursuant to CPL § 240.20(1)(f), Defendant seeks an Order allowing discovery of additional property that the prosecution intends to introduce at trial.

### Bill of Particulars

17.     A request for a Bill of Particulars made pursuant to CPL §200.95 is attached, and incorporated in the foregoing motion. This request is incorporated here so that it will be before the Court for a ruling pursuant to CPL § 200.95(5), in the event of the prosecution's refusal to turn over the requested information.

### Brady Material

18.     In *Brady v. Maryland*, 373 U.S. 83 (1963), the United States Supreme Court recognized the prosecution's continuing duty to disclose to criminal defendants any information that could prove favorable to them. This duty was extended not only to specifically exculpatory information, but to all information, including that which might prove useful in mitigation of sentence.

19.     Mr. Walden hereby requests such potentially favorable evidence or information includes such material that is within the possession, custody, or control of the prosecution and known by the prosecution to exist, or that by the exercise of due diligence on the part of the prosecution should become known to the prosecution. As this duty is a continuing one, the defense requests disclosure of any of the above-referenced material promptly after the prosecution becomes aware of it.

### Reservation of Rights

20.     Mr. Walden further demands that the prosecution take immediate steps to obtain and preserve all recorded statements of witnesses who will testify at any hearing ordered, including, but not limited to, tapes and spring records of 911 calls and police transmissions that are kept by the Communications Division of the New York City Police Department, and that the prosecution produce all such statements at any hearing that is ordered, either for review by defense counsel, pursuant to the *Rosario* line of cases, or for an *in camera* inspection by the court, pursuant to *People v. Poole*, 48 N.Y.2d 144 (1979).

21.     Mr. Walden respectfully reserves his right, pursuant to CPL §§ 255.20(2) and 225.20(3), to make further motions based upon information now unknown to the defense but revealed by the prosecution's response to his Request for a Bill of Particulars and Demand for Discovery, the Court's decision on the current motions, and any further developments in this case.

* * *

WHEREFORE, Mr. John Walden requests that the Court issue an order granting the relief sought herein.


Dated: October 30, 2015
        New York, New York


                                Respectfully submitted,



                                William Kendall
                                Attorney for John Walden
                                Neighborhood Defender Service of Harlem
                                317 Lenox Ave
                                New York, NY 10027
                                212.876.5500

9

To:     Shilpa Kalra, Esq.
        Assistant District Attorney
        New York County

        Clerk of the Supreme Court
        Part 31
        New York County

SUPREME COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK: PART 31

THE PEOPLE OF THE STATE OF NEW YORK

-against-

JOHN WALDEN,

Defendant.

**REQUEST FOR A BILL OF PARTICULARS**

Indictment No.: 03190-2015

As counsel to defendant John Walden, I request that you comply with your obligation, pursuant to CPL §§ 200.95 and 100.45, to provide Mr. Walden with specific items of factual information not recited in the accusatory instrument, including the substance of Mr. Walden's conduct and whether you allege that Mr. Walden acted as a principal, an accomplice, or both. This information is essential to a proper defense of the charges in the accusatory instrument, as those charges are both factually vague and conclusory in nature, and because no preliminary hearing was held.

It is my belief that such information is obtainable solely from the District Attorney of New York County. Therefore, a Request for a Bill of Particulars is made requesting the following:

1.  With respect to each and every count of the accusatory instrument, state:

    a.  Whether the prosecution intends to prove that the defendant acted as principal, or as accomplice, or as both.

    b.  If the prosecution intends to prove that the defendant acted as an accomplice, then set forth separately the conduct of the defendant that constitutes the basis of the defendant's accessorial liability, and of each other participant that constitutes the basis of that participant's accessorial liability.

2.  State the exact date and *time* of the alleged incident.

3.  With respect to the arrest of the defendant, state the following:

11

a.  The exact time and location at which the defendant was first observed by police officers on the date of the alleged offense;

b.  The exact time and location at which the defendant was first detained and/or taken into custody by police officers;

c.  The reason that the police detained the defendant and/or took him into custody;

d.  The exact time and location at which the defendant was formally placed under arrest; and

e.  Whether there was probable cause to arrest the defendant and the basis of any such probable cause, including, but not limited to, whether the arresting officer had first-hand knowledge of the commission of the alleged crime.

Request is further made that any refusal to supply any of the requested material be made in writing, setting forth the grounds for such refusal, and that a copy of such writing be served upon the undersigned and filed with the Court within 15 days of receipt by you of this Request for a Bill of Particulars. *See* CPL § 200.95(4).

Dated: October 30, 2015
New York, New York

Respectfully submitted,

William Kendall
Attorney for John Walden
Neighborhood Defender Service of Harlem
317 Lenox Ave
New York, NY 10027
212.876.5500

To:   Shilpa Kalra, Esq.
Assistant District Attorney
New York County

Clerk of the Supreme Court
Part 31
New York County

12

SUPREME COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK: PART 31

THE PEOPLE OF THE STATE OF NEW YORK

-against-

JOHN WALDEN,

Defendant.

**DEMAND TO PRODUCE**

Indictment No.: 03190-2015

## PART I

As counsel for the Defendant, I am writing pursuant to CPL § 240.20, to request

that you produce for inspection, photographing, copying, and/or testing, the following

items:

1. Any written, recorded, or oral statements of the defendant, or of any
   alleged co-defendant, made, other than in the course of the criminal
   transaction, to a public servant engaged in law enforcement activity or to a
   person then acting under such public servant's direction or in cooperation
   with him or her, regardless of whether the prosecution intends to offer
   such statement at trial and regardless of whether such statement was made
   under a promise of full or partial immunity.

2. If there are any statements such as that described in § I.1. above, please
   provide the following:

   a.   The exact time at which the statement was made;

   b.   The exact location at which the statement was made;

   c.   The conditions under which the statement was made;

   d.   The name(s), shield number(s), and command(s) of the person(s)
        to whom the statement was made; and

   e.   A complete and accurate transcription of the statement.

3. Any transcript of testimony relating to the criminal action or proceeding
   against the defendant, given by the defendant, or a co-defendant to be tried
   jointly, before any grand jury.

4. Any written report or document, or portion thereof, concerning a physical
   or mental examination, or scientific test or experiment, relating to the

criminal action or proceeding which was made by, or at the request or direction of, a public servant engaged in law enforcement activity, or which was made by a person whom the prosecution intends to call as a witness at trial, or which the prosecution intends to introduce at trial, including any and all reports of medical treatment received by the complaining witness(es).

5.      Any photograph or drawing relating to the criminal action or proceeding which was made or completed by a public servant engaged in law enforcement activity, or which was made by a person whom the prosecution intends to call as a witness at trial, or which the prosecution intends to introduce at trial.

6.      Any photograph, photocopy, or other reproduction made by or at the direction of a police officer, peace officer, or prosecutor of any property prior to its release pursuant to the provisions of P.L. § 450.10, irrespective of whether the people intend to introduce at trial the property or the photograph, photocopy, or other reproduction.

7.      Any other property obtained from the defendant, or a co-defendant to be tried jointly.

8.      Any audiotapes, videotapes, or other electronic recordings which the prosecutor intends to introduce at trial, irrespective of whether such recording was made during the course of the criminal transaction.

9.      The approximate date, time, place, and circumstances of each charged offense and of defendant's arrest, including, but not limited to, the information requested in the above Request for a Bill of Particulars.

10.      Anything required to be disclosed, prior to trial, to the defendant by the prosecution, pursuant to the constitution of this state or of the United States, pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972), all evidence or information in the prosecution's possession, custody, or control that may tend to exculpate the defendant or impeach any person whom the prosecution intends to call as a witness at any pre-trial hearing or trial (hereinafter "prospective prosecution witness"), including, but not limited to, the following:

     a.      All records and information revealing prior convictions, guilty verdicts, or juvenile adjudications, including, but not limited to, relevant "rap sheets," of any prospective prosecution witness;

     b.      Whether any prospective prosecution witness has been incarcerated in a federal, state, or local correctional facility, and, if so, the prison records of such witness;

14

c.  A complete statement of any and all criminal cases currently known by the prosecution to be pending against any prospective prosecution witness, regardless of whether such cases are the subject of promise, regard or inducement, including their NYSID number(s), pursuant to *People v. Torres*, 201 A.D.2d 294, 607 N.Y.S.2d 303 (1st Dep't 1994), and *People v. Santiago*, 138 A.D.2d 327, 526 N.Y.S.2d 456 (1st Dep't 1988);

d.  A complete statement of any and all regulatory, licensing or other governmental or quasi-governmental proceedings now pending, closed, discontinued, settled, or completed against any prospective prosecution witness;

e.  A complete statement of any and all criminal conduct of which the prosecution has knowledge that has been committed by any prospective prosecution witness concerning which there has been no conviction, regardless of whether these crimes are the subject of a promise, reward, or inducement, and regardless of whether these crimes are the subject of a pending criminal charge;

f.  Whether any prospective prosecution witness, or anyone assisting in the investigation leading up to the instant action, received any consideration or promises of consideration for his or her information, cooperation, or testimony, and if so, the substance of the consideration or promise, by whom made, and the time made;

g.  A complete statement of any and all threats, whether express or implied, direct or indirect, or other coercion directed against any prospective prosecution witness, including, but not limited to, criminal prosecutions, forfeiture actions, or investigations; the probationary, parole, deferred prosecution, or custodial status of any such witness; and any civil, tax court, court of claims, administrative, immigration, or other pending or potential legal disputes or transactions involving any such witness and the state or federal government or over which the state or federal government has real, apparent or perceived influence;

h.  A copy of any and all medical and psychiatric reports or information, or records of hospitalization, including any history of alcoholism or substance abuse, known to the prosecution or that can reasonably become known to the prosecution concerning any prospective prosecution witness that arguably pertain to the witness's credibility or ability to perceive, comprehend or recall events;

i.  Any written or oral statements made by any prospective prosecution witness that in any way contradict or are inconsistent

with other written or oral statements he or she has made, and any such statements made by any person, whether a prospective prosecution witness or not, that in any way contradict or are inconsistent with such statements made by a prospective witness;

j.    The same records and information specified in subparagraphs (i) through (ix) with respect to each non-witness declarant whose statements will be offered in evidence at any pretrial hearing or at trial; and

k.    Copies of any and all records of law enforcement or other governmental agencies reflecting intra-departmental disciplinary action taken against any law enforcement or agency official who will testify in this action, including all such records from any governmental agency for which the witness previously worked.

If you should refuse to comply with any portion of this demand, counsel requests that you comply with your obligation, pursuant to CPL § 240.35, by stating that refusal and your grounds therefore in writing, and serve a copy of that writing upon the undersigned and the Court within fifteen days of receipt by you of this Demand to Produce.


## PART II

Further, defense counsel for Mr. Walden requests the following information pursuant to CPL §§ 240.20, 240.40, 240.60, and 240.80. The aforementioned evidence is material to the preparation of Mr. Walden's defense, and these requests are reasonable in all respects:

1.    The name(s), address(es), telephone number(s), and birthdate(s) of any and all witnesses present at the time of the alleged offense, regardless of whether or not they will be called to testify.

2.    The name(s), shield number(s), and command(s) of any and all law-enforcement witnesses the District Attorney intends to call at a hearing or at trial.

3.   The name(s), address(es), telephone number(s), and birthdate(s) of all persons who at any time provided the police with any descriptions of the perpetrator of the alleged crime.

4.   The name(s), address(es), telephone number(s), and birthdate(s) of all persons who were not present at the time of the alleged offense but who provided any information to the police about some aspect of the offense.

5.   The complete text of any written, recorded, or oral statements made by any witnesses interviewed by a public servant engaged in law enforcement activity, or by a person acting under his or her direction, that pertain to the defendant, and/or any illegal acts he is alleged to have committed.

6.   Any reports, forms, memoranda, notes, and recordings that have been made about the defendant, at any time, pursuant to Police Department, Housing Police or Transit Police regulations, including, but not limited to, incident reports, complaint reports, complaint follow-up reports, arrest reports or records, memo book entries, probation records, and aided reports.

7.   The exact time(s) and date(s) when, and manner in which, and by whom, the police were apprised of the alleged crimes, including, but not limited to, any complaint made to the police, 911 call, walk-in, "Crime Stoppers" call, or tip, and including the name and address of any and all such persons giving such information.

8.   State whether Mr. Walden was advised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). If so, state the time and location where Mr. Walden was advised of his rights and the name(s) of the person(s) who so advised Mr. Walden.

9.   A complete copy of any search warrant used to search any apartment, house, or dwelling in this case, and a complete copy of the affidavit from the informant and/or from the police officer, which provided the basis for the search warrant to be issued, and a copy of the return of the warrant filed with the Court. In addition, a complete list of all contraband, fruits of, and instrumentalities of the crime, obtained from Mr. Walden is demanded.

10.   The exact dates and times that any such informant, if used, was allegedly in the apartment, house, or dwelling in question, the names of all persons present, and exactly what the informant allegedly observed. (Include all alleged criminal behavior that provided the basis for the search warrant to be issued).

11.   Describe with specificity the terms of any cooperation agreement between the District Attorney's office, the police department, the informant, and/or any other prosecution witness in this case.

Dated: October 30, 2015
       New York, New York

Respectfully submitted,

William Kendall
Attorney for John Walden
Neighborhood Defender Service of Harlem
317 Lenox Ave
New York, NY 10027
212.876.5500

To:    Shilpa Kalra, Esq.
       Assistant District Attorney
       New York County

       Clerk of the Supreme Court
       Part 31
       New York County

18




# OFFICE OF CHIEF MEDICAL EXAMINER
520 First Avenue, New York, New York 10016

**Timothy D. Kupferschmid, Director**
**DEPARTMENT OF FORENSIC BIOLOGY**
**Charles S. Hirsch Center for Forensic Sciences**
**421 East 26th Street, New York, New York 10016**
Telephone: 212.323.1200 Email: DNALab@ocme.nyc.gov
Official Website: http://www.nyc.gov/ocme

**DATE:** September 30, 2015

## LABORATORY REPORT

**LAB NO:** FB15-04186
**ENTITY: Principle Mcd Inc**

**REPORT ID:** CRT-0915-0694
**COMPLAINT NO:** 2015-013-06309

## RESULTS AND CONCLUSIONS

Presumptive testing for blood was positive on the following items:

- swab of "upper interior elevator door"
- swab of "middle interior elevator door"
- swab of "lower interior elevator door"

STR DNA typing using the AmpF*l*STR® Identifiler® PCR Amplification Kit was performed on the samples listed below. A DNA profile from a male, **Male Donor A**, was determined.

- swab of "upper interior elevator door" (15 locus profile)
- swab of "middle interior elevator door" (15 locus profile)
- swab of "lower interior elevator door" (15 locus profile)

**The DNA profile of Male Donor A is suitable for entry into the Local DNA Index System (LDIS), State DNA Index System (SDIS) and National DNA Index System (NDIS).**

Page 1 of 5

FB15-04186                                                    Principle Mcd Inc

**EVIDENCE RECEIVED**

| ITEM | VOUCHER | DATE RECEIVED | DESCRIPTION |
|------|---------|---------------|-------------|
| 1 | 1000680389 | 08/11/2015 | swab of "upper interior elevator door" |
| 2 | | | swab of "middle interior elevator door" |
| 3 | | | swab of "lower interior elevator door" |

**DISPOSITION**

The following items will be retained in the laboratory:

    DNA extracts from samples and controls tested

The remainder of the evidence will be returned to the OCME Evidence Unit.

**Analyst**                : Sanjay Raveendranath
                           (Criminalist, Level II)
**Administrative Review Date** : 09/30/2015
**Administrative Reviewer** : Joy Galanda

FB11-S0126

John Walden

## Conclusions for DNA Typing

**Mixture:** A DNA profile that has more than one donor.

**Major:** Alleles that are present in a higher proportion in a DNA mixture profile.

**Minor:** Alleles that are present in a lower proportion in a DNA mixture profile.

**Match:** The alleles detected in a questioned/evidence sample that are the same as the alleles detected in another sample.

**Is included as a possible contributor:** For the locations where comparisons could be made, all or most of the DNA alleles seen in an individual's DNA profile were also seen in the mixture. The allele(s) that were absent could be explained by any of several factors. Therefore, this person cannot be ruled out as a possible contributor to the mixture.

**Excluded as a contributor to the mixture:** For the locations where comparisons could be made, one or more of the DNA alleles seen in an individual's DNA profile were not seen in the mixture and this absence cannot be explained. Therefore, this person can be ruled out as a contributor.

**No conclusions can be drawn:** The results do not support a positive association or an exclusion. Therefore, it cannot be determined whether a person can be included as a possible contributor to the mixture.

**Not suitable for comparison:** The DNA results on the evidence are either too incomplete or too complex to be the basis for conclusions regarding the source of the DNA.

**Partial Match:** An association between two single-source (clean or fully deconvoluted) profiles, showing similarities but short of an exact match, that suggests that the source of a profile is potentially a relative of the source of the other, partially matching, profile. Partial matches are inadvertent, and may be found at the local, state, or national levels (through comparison at the bench, LINKAGE, or CODIS searches).

FB11-S0126                                                                    John Walden

**Likelihood ratios:**
For some mixtures wherein an individual contributor's DNA profile cannot be determined, a known person's DNA profile can still be compared to the mixture. The comparison DNA profile can be from a known person, or from a single source or deduced profile from within a case. For these comparisons, a statistical value known as a likelihood ratio (LR) may be calculated. The LR value provides a statistical measurement of the strength of support for one scenario over another, i.e., one scenario being that the known person contributed to the mixture versus the scenario that an unknown, unrelated person contributed instead.

**Limited, moderate, strong or very strong support:** These terms describe the strength or weakness of different ranges of a likelihood ratio (as shown in the table below).   Examples of factors that affect the LR value include the amount of DNA tested, the type of mixture (for example, the number of contributors), instances when one or more of the individual's DNA alleles are not seen in the mixture, the presence of rare alleles in the mixture, and the presence of extra DNA alleles in the mixture.

| Reported value | Qualitative interpretation |
|---|---|
| 1 | No conclusions |
| 1 to 10 | Limited support |
| 10 to 100 | Moderate support |
| 100 to 1000 | Strong support |
| Greater than 1000 | Very strong support |

Note, if the LR value is less than one, this means that the mixture is better explained if an unknown, unrelated person contributed to the mixture rather than the known person. This situation is reported as 1/LR and the qualitative terms from the table above are applied.

**CODIS**

The COmbined DNA Index System administered by the FBI.  CODIS links DNA evidence obtained from crime scenes, thereby identifying serial criminals.  CODIS also compares crime scene evidence to DNA profiles obtained from offenders, thereby providing investigators with the identity of the putative perpetrator.  In addition, CODIS contains profiles from missing persons, unidentified human remains and relatives of missing persons.

There are three levels of CODIS: the Local DNA Index System (LDIS), used by individual laboratories; the State DNA Index System (SDIS),used at the state level to serve as a state's DNA database containing DNA profiles from LDIS laboratories; and the National DNA Index System (NDIS), managed by the FBI as the nation's DNA database containing all DNA profiles uploaded by participating states.

FB11-S0126                                                                                     John Walden

# APPENDIX

<u>General</u>

**This report has an associated Forensic Biology case file.**

<u>Background to DNA Testing</u>

**DNA** (Deoxyribo-Nucleic Acid), the inherited genetic material found in cells, contains markers which can differ from person to person.  **DNA testing** can determine these genetic markers and compare biological samples from different individuals.

Alternative forms of DNA markers are called **alleles**.  Alleles are found at specific areas, or locations, of the DNA called **loci** (singular, **locus**).

**STR** (short tandem repeat) loci contain alleles with a variable number of short repeating segments. Each STR allele can be described using a number which represents its number of repeats.  A **DNA profile** is the series of numbers describing the DNA alleles found at an individual's STR DNA loci.

<u>DNA Testing</u>

**DNA testing** involves several steps, including DNA extraction, DNA quantitation, PCR/DNA amplification, and analysis of the resulting DNA alleles.

**DNA extraction** recovers DNA from biological samples such as blood, bone, hair, saliva, semen, and skin cells.

**Differential extraction** is designed to physically separate the DNA in epithelial cells from the DNA in sperm cells, in samples which potentially contain a mixture of sperm and other cell types.  As a result, separate "epithelial cell," "sperm cell," and "swab (or substrate) remains" DNA fractions are generated.  Incomplete separation can occur and fractions may contain both sperm DNA and epithelial cell DNA.

**DNA quantitation** measures the concentration of human and male DNA extracted from samples by using a technique called quantitative real-time polymerase chain reaction (qPCR).  If applicable, a male:female ratio of DNA is also calculated.  If a sufficient concentration of human, male DNA, and/or appropriate male:female ratio of DNA is detected, DNA amplification and analysis can be attempted.  If an insufficient concentration of DNA is detected, further testing may or may not be able to be performed.  Please contact the laboratory about the possibility of additional testing.

The **PCR** (polymerase chain reaction) technique produces large amounts of DNA from small starting amounts of DNA by repeated cycles of copying the DNA loci (**DNA amplification**); after amplification the alleles present in the sample are identified.

**STR DNA typing** for STRs uses the **Applied Biosystems AmpF/STR® Identifiler® PCR Amplification Kit** with 28 amplification cycles (**Identifiler® 28**).  Each STR locus tested in the Identifiler® Kit contains between 8 and 32 identifiable alleles.

Y-chromosome STRs (**Y-STR**) are male-specific STRs, not present in females, that are inherited from father to son, and should be identical for all male relatives of the paternal line.  For example, brothers who share the same father will have the same Y-STR type.  Y-STR DNA typing uses the **Applied Biosystems AmpF/STR Yfiler™ PCR Amplification** .

FB15-04186                                                        Principle Mcd Inc

STR DNA typing uses the **Applied Biosystems AmpF/STR® Identifiler® PCR Amplification Kit** with 28 amplification cycles (**Identifiler® 28**). Each STR locus tested in the Identifiler® Kit contains between 8 and 32 identifiable alleles. The **Applied Biosystems AmpF/STR Minifiler™ PCR Amplification Kit may also be used.** These kits also test the Amelogenin locus, which is used to determine the sex origin of a sample.

High Sensitivity STR DNA typing uses the **Applied Biosystems AmpF/STR® Identifiler® PCR Amplification Kit** with 31 amplification cycles (**Identifiler® 31**). Each STR locus tested in the Identifiler® Kit contains between 8 and 32 identifiable alleles. This kit also tests the Amelogenin locus, which is used to determine the sex origin of a sample.

Y-chromosome STRs (**Y-STR**) are male-specific STRs, not present in females, that are inherited from father to son, and should be identical for all male relatives of the paternal line. For example, brothers who share the same father will have the same Y-STR type. Y-STR DNA typing uses the **Applied Biosystems AmpF/STR® Yfiler™ PCR Amplification kit.**

### Statistics

The rarity of a DNA profile can be expressed as an **STR population frequency estimate** (i.e. how often one would expect to see the DNA profile). STR population frequency estimates are based on: (1) the OCME STR database, (2) the Population Data in the AmpF/STR® Identifiler™ PCR Amplification Kit User's Manual (2001) Population Data, Applied Biosystems, Foster City, California, (3) the US YSTR Database, National Center for Forensic Science, Orlando, FL, (4) the DNA View Program, Brenner, CH (1997) Symbolic Kinship program, Genetics 145:535-542, and (5) the National Research Council (1996) The Evaluation of Forensic DNA Evidence, Natl. Acad. Press, Washington DC.

**The statistical values** reported reflect the approximate frequency of occurrence of a DNA profile in a population of unrelated individuals. Therefore, these are not appropriate for relatives. A profile is considered unique if it is at least as rare as 1 in greater than 6.80 trillion unrelated people.

Profile probability using Y-STR typing is estimated by applying a 95% confidence upper bound to the haplotype frequency. This method is described by Clopper and Pearson (1934). (SWGDAM Interpretation Guidelines for Y-Chromosome STR Typing by Forensic DNA Laboratories, 2014: Section 10.2.3)

### Conclusions for DNA Typing

**Mixture** - A DNA profile that has more than one donor.

**Major** - Alleles that are present in a higher proportion in a DNA mixture profile.

**Minor** - Alleles that are present in a lower proportion in a DNA mixture profile.

**Match** - The alleles detected in a questioned/evidence sample that are the same as the alleles detected in another sample.

**Is included as a contributor:** For the locations where comparisons could be made, all or most of the DNA alleles seen in an individual's DNA profile were also seen in the mixture. The allele(s) that were absent could be explained by any of several factors. Therefore, this person cannot be ruled out as a possible contributor to the mixture.

**Excluded as a contributor:** For the locations where comparisons could be made, one or more of the DNA alleles seen in an individual's DNA profile were not seen in the mixture and this absence cannot be explained. Therefore, this person can be ruled out as a contributor.

**No conclusions can be drawn:** The results do not support a positive association or an exclusion. Therefore, it cannot be determined whether the person can be included as a possible contributor to the mixture.

**Could not be determined:** Mixtures where the profiles of the major and/or minor contributors <u>cannot</u> be determined.

**Were not determined:** Mixtures where the profiles of the major and/or minor contributors <u>can</u> be determined, but the deconvolution was not performed.

FB15-04186                                                                            Principle Mcd Inc

**Not suitable for comparison:** The DNA results on the evidence are either too incomplete or too complex to be the basis for conclusions regarding the source of the DNA.

**Partial Match:** An association between two single-source (clean or fully deconvoluted) profiles, showing similarities but short of an exact match, that suggests that the source of a profile is potentially a relative of the source of the other, partially matching, profile. Partial matches are inadvertent, and may be found at the local, state, or national levels (through comparison at the bench, LINKAGE, or CODIS searches).

**Likelihood ratios:** For some mixtures wherein an individual contributor's DNA profile cannot be determined, a known person's DNA profile can still be compared to the mixture. The comparison DNA profile can be from a known person, or from a single source or deduced profile from within a case. For these comparisons, a statistical value known as a likelihood ratio (LR) may be calculated. The LR value provides a statistical measurement of the strength of support for one scenario over another, i.e., one scenario being that the known person contributed to the mixture versus the scenario that an unknown, unrelated person contributed instead.

**Limited, moderate, strong or very strong support:** These terms describe the strength or weakness of different ranges of a likelihood ratio (as shown in the table below). Examples of factors that affect the LR value include the amount of DNA tested, the type of mixture (for example, the number of contributors), instances when one or more of the individual's DNA alleles are not seen in the mixture, the presence of rare alleles in the mixture, and the presence of extra DNA alleles in the mixture.

| Reported value | Qualitative interpretation |
|---|---|
| 1 | No conclusions |
| 1 to 10 | Limited support |
| 10 to 100 | Moderate support |
| 100 to 1000 | Strong support |
| Greater than 1000 | Very strong support |

Note, if the LR value is less than one, this means that the mixture is better explained if an unknown, unrelated person contributed to the mixture rather than the known person. This situation is reported as 1/LR and the qualitative terms from the table above are applied.

<u>**CODIS**</u>

The CObmined DNA Index System administered by the FBI. CODIS links DNA evidence obtained from crime scenes, thereby identifying serial criminals. CODIS also compares crime scene evidence to DNA profiles obtained from offenders, thereby providing investigators with the identity of the putative perpetrator. In addition, CODIS contains profiles from missing persons, unidentified human remains and relatives of missing persons.

There are three levels of CODIS: the Local DNA Index System (LDIS), used by individual laboratories; the State DNA Index System (SDIS), used at the state level to serve as a state's DNA database containing DNA profiles from LDIS laboratories; and the National DNA Index System (NDIS), managed by the FBI as the nation's DNA database containing all DNA profiles uploaded by participating states.

## orensic Biology - Schedule of Analysis

**CASE NUMBER:** FB11-S0126                                    **Date Report Generated:**   10/01/2015 11:37 AM

| Item(s) | Voucher | EU# | Analysis | Signed in By | Approved By | Approval Date | Comment(s) |
|---------|---------|-----|----------|--------------|-------------|---------------|------------|
|         |         |     |          |              |             |               |            |

| Case Report ID | Report Tech1 Reviewed By | Report Tech1 Reviewed On | Report Tech2 Reviewed By | Report Tech2 Reviewed On | Report Admin Reviewed By | Report Admin Reviewed On | Report Analyst Reviewed By | Report Analyst Reviewed On |
|----------------|--------------------------|--------------------------|--------------------------|--------------------------|--------------------------|--------------------------|----------------------------|----------------------------|
| CRT-0915-0698 | japerez | 09/24/2015 | N/A | N/A | julperez | 10/01/2015 | sraveendranath | 09/21/2015 |

| | |
|---|---|
| A | Check for amylase |
| B | Check for blood |
| C | Check for semen |
| D | Sexual assault kit: process kit |
| E | Cut/scrape/swab for epithelial cells |
| F | Extraction and Quantitation |
| G | DNA typing |
| H | Cut swab if blood is found on associated NYPD swab or actual item |
| J | Compare to submitted exemplars/database/reference case number FB15-04186 |
| L | LCN DNA Testing |
| M | MtDNA testing |
| N | Do not schedule for examination until supervisor establishes case status |
| O | No further DNA testing until necessary exemplar(s) is/are obtained |
| P | Process Exemplar |
| Q | SAK Blind Reanalysis |
| R | Write report |
| U | Examine outermost garments, submit a maximum of three KM+ stains for DNA testing |
| X | Process exemplar (if necessary) |
| Y | Do not examine |
| Z | Other |

FB15-04186

Principle Mcd Inc

# APPENDIX

<u>General</u>

**This report has an associated Forensic Biology case file.**

**If a sample in this case is suitable for comparison and/or a DNA Donor was determined (e.g. Male Donor A), comparison could be done upon submission of a sample from a suspect, victim, elimination sample and/or consensual partner as applicable.**

<u>Identification of Blood, Semen and Saliva:</u>

A **presumptive** test is a non-confirmatory test used for detecting the possible presence of biological fluids.

**Prostate Specific Antigen** (PSA) is a protein (also known as P30) and is found in semen. PSA concentration in semen is typically in levels far in excess of those found in other fluids.

**Spermatozoa** are the male reproductive cells that can be found in semen.

The detection of an elevated level of **amylase** indicates, but does not conclusively establish, the presence of saliva. Sources of amylase may include (but are not limited to) saliva, vaginal secretions, and bacteria.

<u>Background to DNA Testing</u>

**DNA** (Deoxyribo-Nucleic Acid), the inherited genetic material found in cells, contains markers which can differ from person to person. **DNA testing** can determine these genetic markers and compare biological samples from different individuals.

Alternative forms of DNA markers are called **alleles**. Alleles are found at specific areas, or locations, of the DNA called **loci** (singular, **locus**).

**STR** (short tandem repeat) loci contain alleles with a variable number of short repeating segments. Each STR allele can be described using a number which represents its number of repeats. A **DNA profile** is the series of numbers describing the DNA alleles found at an individual's STR DNA loci.

<u>DNA Testing</u>

**DNA testing** involves several steps, including DNA extraction, DNA quantitation, PCR/DNA amplification, and analysis of the resulting DNA alleles.

**DNA extraction** recovers DNA from biological samples such as blood, bone, hair, saliva, semen, and skin cells.

**Differential extraction** is designed to physically separate the DNA in epithelial cells from the DNA in sperm cells, in samples which potentially contain a mixture of sperm and other cell types. As a result, separate "epithelial cell," "sperm cell," and "swab (or substrate) remains" DNA fractions are generated. Incomplete separation can occur and fractions may contain both sperm DNA and epithelial cell DNA.

**DNA quantitation** measures the concentration of human and male DNA extracted from samples by using a technique called quantitative real-time polymerase chain reaction (qPCR). If applicable, a male:female ratio of DNA is also calculated. If a sufficient concentration of human DNA, male DNA, and/or appropriate male:female ratio of DNA is detected, DNA amplification and analysis can be attempted. If an insufficient concentration of DNA is detected, further testing may or may not be able to be performed. Please contact the laboratory about the possibility of additional testing.

The **PCR** (polymerase chain reaction) technique produces large amounts of DNA from small starting amounts of DNA by repeated cycles of copying the DNA loci (**DNA amplification**); after amplification the alleles present in the sample are identified.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 31

THE PEOPLE OF THE STATE OF NEW YORK

-against-

JOHN WALDEN,

Defendant.

AFFIRMATION
IN SUPPORT OF AN
ORDER OF
SEIZURE

Ind. No: 03190/2015

Shilpa Kalra, an attorney admitted to practice before the courts of this State, affirms under penalties of perjury:

1.  I am an Assistant District Attorney in the New York County District Attorney's Office and am assigned to the prosecution of the above-captioned case.

2.  The defendant is charged with the crimes of Burglary in the Third Degree, and related crime(s), and is now in custody of the Department of Correction.

3.  Based on the following facts, there is reasonable cause to believe that evidence of the above-stated crime, to wit, John Walden's saliva and buccal cells, can be found on the defendant's person:

a.  I am informed by Detective John Hidalgo, Shield 584, that he observed surveillance video from a commercial building dated, August 8th, 2015 at 138 West 25th Street, 5th Floor. I am further informed that the video shows that at about 12:25pm, the defendant, dressed in a white chef jacket, black pants, and a black backpack, enter the office on the 5th floor, and attempts to pry the office door open with a tool and, then uses his body to open the door. Security alarm goes off and shows the male leave about one minute later with a large black backpack. I am further informed that there was missing property, including 2 Dell laptops and 3 Macbook laptops. I am further informed that Detective Hidalgo responded to the scene and observed blood on elevator door, which the Evidence Collection Unit swabbed and vouchered. . He is informed by the Evidence collection unit that the above blood sample was submitted to the OCME for analysis.

4.    I am informed by the Chief Medical Examiner's Office, Forensic Biology Unit, that the blood was examined and that DNA was extracted from the blood sample.

5.    I am further informed that the DNA profile obtained from the blood sample described above was uploaded to CODIS, the New York State DNA databank, and that that DNA profile matched the DNA profile on record for John Walden.

6.   I am further informed that DNA may be obtained from a sample of the defendant's saliva, containing buccal cells (cheek epithelial cells), and that these cells may be obtained by swabbing the interior of the defendant's mouth cavity between the cheek and teeth, with cotton.

7.   The saliva and buccal cell samples requested will be taken by a member of the New York City Police Department or of the New York County District Attorney's Office, using safe, reliable and minimally intrusive medical procedures, i.e., by swabbing the interior of the defendant's mouth with cotton swabs.

8.   For the foregoing reasons, your affirmant respectfully requests the Court to issue an Order in the form annexed directing John Walden to permit the taking of saliva and buccal cell samples and directing that a New York City Police Officer or member of the District Attorney's Office take said evidentiary samples at 100 Centre Street or an office in the District Attorney's Office and then turn said samples over to the Office of the Chief Medical Examiner of the City of New York, for further DNA analysis.

WHEREFORE, it is respectfully requested that the Court issue an order authorizing a member of the New York City Police Department or an investigator employed by the New York City District Attorney's Office to seize the above-described property from defendant's person. It is also requested that the Court order that, if necessary, reasonable force may be used to effect the seizure.

Dated:     New York, New York
           January 26, 2016


_____
Shilpa Kalra
Assistant District Attorney

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

THE PEOPLE OF THE STATE OF NEW YORK

          -against-

John Walden,

                Defendant.

ORDER OF SEIZURE

Ind. No. 03775/2015

It appearing from the attached affirmation of Shilpa Kalra, an Assistant District Attorney for the County of New York, dated January 26, 2016, that defendant is charged with the crime of Burglary in the Third Degree and related crime(s), and is now in the custody of the Department of Correction; and that there is reasonable cause to believe that evidence of the above-stated crime can be found on defendant's person in a sample of John Walden's saliva and buccal cells for testing and comparison; that the methods used to take these samples will be safe and reliable and minimally intrusive; it is hereby

ORDERED, (i) that a member of the New York City Police Department or an investigator employed by the New York County District Attorney's Office is authorized to seize from defendant's person: samples of John Walden's saliva and buccal cells as needed; and (ii) that, if necessary, reasonable force may be used to effect the seizure.

Dated:      New York, New York
             January 26, 2016

_____
Justice of the Supreme Court

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 31

------------------------------------------------------X
                                 :

THE PEOPLE OF THE STATE OF NEW YORK,         **MOTION TO**
                                      **CONTROVERT SEARCH**
                                      **WARRANT**

                                 :

                    -against-             :   **IND. NO. 3190/15**

                                 :

JON WALDEN,

                   Defendant,           :

------------------------------------------------------X

Pursuant to C.P.L. Article 690, Defendant herein, by his attorney, Lawrence Schwartz,

moves to Controvert the Search Warrant issued in connection with the above-captioned

matter, to search 515 West 145th Street Room 3210 ('the subject premises'), and to

suppress all evidence seized as a result of the execution of said warrant. Said subject

premises were searched pursuant to what the People allege was a valid search warrant,

and clothing, a backpack, keys, US currency, cigars and personal papers were allegedly

recovered. This affirmation is made upon information and belief, the sources being a

review of the court file and official documents, and conversations with the defendant,

witnesses and prosecution officials.

1. A search warrant application must provide a judge with reasonable cause to believe

that evidence of illegal activity will be present at the specific time and place of the search.

People v. Pinchback, 82 N.Y.2nd 857 (1994). In addition, the application must specify that

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 31

------------------------------------------------------------X
                                 :

THE PEOPLE OF THE STATE OF NEW YORK,            NOTICE OF MOTION

                                 :           IND.  3190/15

                                 :

               -against-

                                 :

JOHN WALDEN,

              Defendant,            :

------------------------------------------------------------X

    PLEASE TAKE NOTICE upon that  Lawrence Schwartz, Esq., attorney for the above-captioned defendant, will move the court on  August 9, 2016   for the following:

    1.  To Controvert the Search Warrant Issued in Connection with This Matter, and Suppress all Evidence Recovered Pursuant Thereto, Pursuant to  C.P.L. Article 690

Any further and different relief which this court deems just and proper.

No previous application for the relief sought herein has been made to any court.

DATED: NEW YORK, NEW YORK          YOURS, ETC.
          AUGUST 8, 2016             LAWRENCE SCHWARTZ
                                 576 Fifth Avenue Suite 903
TO: CYRUS VANCE, JR.              New York, New York 10036
     DISTRICT ATTORNEY, NEW YORK COUNTY
     CLERK, SUPREME COURT, CRIMINAL TERM

the property sought constitutes evidence of a specific offense, People v. Robinson, 69

N.Y.2nd 541 (1988), and information from any alleged informant must provide probable

cause to believe that the contraband will be found within the subject's apartment. People

v. Hendricks, 25 N.Y.2nd 129 (1970). Although the defendant does not live within the

subject apartment, he was a frequent guest therein, and therefore has standing to contest

the search of the premises. Minnesota v. Olson, 495 US 91 (1990); People v. Ali, 71

N.Y.2nd 1010 (1990).

2.  The search warrant affidavit in this matter alleges that eight commercial premises were

burglarized. The deponent states that he is a New York City police officer, and that he

viewed surveillance tapes taken at the scenes of the burglaries, and recognized Defendant

on six of the surveillance tapes. It is also alleged that a single latent fingerprint made by

Defendant was found at a location where one of the burglaries occurred.   Deponent

states that  he recognized Defendant in the videos as the result of having participated in

the arrest of Defendant in June 2011, more than four years before the affidavit in support

of the search warrant in this case was made.  The Deponent police office also states that

he created Wanted Posters using still photographs from the various videos which he

viewed, and that "a bodega owner informed officers from the Warrant Squad that he has

seen the male and that the male is staying at a hotel located at 515 West 145th Street." No

explicit mention is made as to whether or not "the male" is a person involved in the

alleged burglaries, or whether "the male," is Defendant. (Search Warrant Affidavit, p.

page 3, paragraph I).   Finally, it is alleged that officers from the Warrant Squad

apprehended Defendant inside of Room 3210 of 515 West 145th Street.

3.  A Confidential Informant, the bodega owner referred to in the preceding paragraph,

allegedly provided information to police officers concerning Defendant's activities. The affidavit contains inadequate assertions regarding indicia of the reliability of the informant. There is no allegation that on prior occasions, the informant provided information to the deponent police officer. No recitation of how the informant came by the information is provided. An affidavit without such assertions of reliability as to an informant is legally insufficient. People v. Johnson, 66 N.Y.2nd 398 (1985). Defendant therefore contends that the affidavit filed in support of the warrant fails to contain indicia of reliability of the alleged confidential informants which would satisfy the Court of Appeals' standard enunciated in People v. Griminger, 71 N.Y.2nd 635 (1988), and is therefore legally insufficient. It is also submitted that the information from the alleged confidential informant did not provide probable cause to believe that the alleged contraband would be found within the subject premises. People v. Hendricks, 25 N.Y.2nd 129 (1970).

4.  Furthermore, it is submitted that the mere fact that the deponent police officer was involved in the arrest of Defendant four years previously, without more, is of very little value in assessing whether there was reasonable cause to issue the search warrant in this case. No information is given as to the duration of the deponent's exposure to Defendant four years previously, whether or not Defendant's appearance had changed over that time period, or exactly what the deponent saw on the videos recovered from the alleged crime scenes.    It is submitted that the deponent's assertion that he recognized Defendant from four years previously, and that there was a single latent print allegedly left by Defendant at one of the eight crime scenes, did not provide reasonable cause to believe that Defendant had committed the alleged offenses.

5. More importantly, however, it is submitted that there is an insufficient nexus alleged between the alleged unlawful activities alleged and the subject premises. A legally sufficient affirmation in support of an application for a search warrant must show reasonable cause to believe that evidence of illegality will be present at the time and place of the execution of the warrant. CPL 690.35 (3)(b); People v. Mendez, 199 A.D.2nd 182 (1st Dept. 1994).   No reasons are given to support a conclusion that there was reasonable cause to believe that proceeds of, or instrumentalities connected with the alleged crimes might be found at the subject premises other than that Defendant was arrested there, and that a confidential informant for whom no history of reliability or foundation for his belief is demonstrated alleged that Defendant lived somewhere inside the building, along with a brief, entirely conclusory allegation by the deponent that "I know from my experience that burglars commonly keep stolen property in their homes or where they reside." (search warrant affidavit, p. 4, paragraph l.). Taken as a whole, the warrant fails to establish reasonable cause that Defendant committed the alleged crimes, that he lived at the subject premises, or that he kept proceeds or instrumentalities of the crimes there. Under these circumstances, no warrant should issue. People v. Rispole, 34 A.D.2nd 664 (1st Dept. 1971).

4.   The warrant application gives as reasons for securing a warrant allowing night time entry, after nine o'clock in the evening pursuant to C.P.L. 690.45(6) nothing other than an assertion that the hotel manager was safeguarding the room. It is submitted that this assertion, without more, is insufficient to justify the issuance of a warrant authorizing night time entry. See People v. Clinton, 59 A.D.2nd 854 (First Dept. 1978). The warrant

was in fact executed during night time hours.

5.   The Defendant also contends that the warrant application lacks the required specificity as to the premises and persons to be searched.  The subject premises has several rooms, and no information is given as to where the sought after items were allegedly stored.  Defendant specifically contests the existence of the alleged informant, but requests that the court ascertain whether or not said person does exist, and conduct an in camera examination of the informant in this case, with an opportunity for the defendant to submit questions at such a hearing, pursuant  to People v. Darden, 74 N.Y.2nd 344 (1991).

Wherefore it is respectfully submitted that the court grant the relief requested.

The defendant reserves the right to make additional pretrial motions pursuant to C.P.L. 255.20(2)  and to amend or supplement this motion as made necessary or appropriate by future disclosure by the District Attorney.

DATED:   NEW YORK, NEW YORK
            AUGUST 8,  2016

LAWRENCE SCHWARTZ

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  CRIMINAL TERM – Part TAPB
-----------------------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK                    NOTICE OF MOTION

                              -against-                           IND.3190/2015

John Walden

-----------------------------------------------------------------Defendant
-----------------------------------------------------------------X

      PLEASE TAKE NOTICE, that upon the annexed affirmation of Susan Calvello an attorney duly admitted to practice law before the Courts of New York, and assigned counsel for the defendant, the undersigned will move the Supreme Court of the State of New York, County of New York, Criminal Term, TAP B 100 Centre Street, New York, New York, for an order granting the following:

1.       MOTION TO INSPECT AND DISMISS THE INDICTMENT

    a    Dismissal of Indictment for Factual and Legal Insufficiency

2     MOTION TO INSPECT AND REDUCE THE INDICTMENT

3.     MOTION PURSUANT TO C.P.L. §255.20(3) TO RESERVE DEFENDANT'S RIGHT TO MAKE FURTHER MOTIONS

Dated: New York, New York
August 17, 2017

           Yours, etc.

           Susan Calvello
           Attorney for Defendant , WALDEN
           30 Wall Street, 8th floor
           New York, New York 10005
           (212) 393- 9441

1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:  CRIMINAL TERM - PART TAP B
-------------------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK                    AFFIRMATION


                        -against-                      IND. No.: 3190/2015

John Walden


                                  Defendant
-------------------------------------------------------------X

      Susan Calvello, an attorney duly admitted to practice law before the Courts of

New York, attorney for the defendant, hereby affirms and states:

      1.     This affirmation is made on information and belief, the sources of which

are official court papers, conferences with the defendant and preliminary investigative

work conducted by defense counsel in connection with this case.

      2.     This affirmation is submitted in support of defendant's motion to: (a) have the

Court inspect the grand jury minutes and, upon inspection, dismiss the indictment; (b) in

addition , to inspect the grand jury minutes  on the grounds that the integrity of the grand

jury proceedings were impaired.

      3.     <u>MOTION TO INSPECT AND DISMISS</u>

      Defendant, John Walden,   moves for inspection of the grand jury minutes and

dismissal of the indictment, grounds:

      a     The evidence presented to the grand jury was not legally sufficient to
establish the offense charged pursuant to CPL §210.20 (1)(b) and
§210.30(2).

2

b        The indictment is defective within the meaning of CPL §210.25 pursuant to CPL §§210.20(1)(a) and 210.25.

c        Pursuant to CPL §§210.20(1)(c) and 210.35, the indictment is defective within the meaning of CPL §210.35, including but not limited to error in properly charging the grand jury, use of unlawfully obtained evidence before in the grand jury and error in the legal instructions to the grand jury.

The standard for a trial court to apply in evaluating the sufficiency of grand jury minutes is whether the evidence, if unexplained and not contradicted, would warrant a conviction by a petit jury.  *People v. Jennings*, 69 N.Y.2d 103, 512 N.Y.S.2d 652 (1986).

d..John Walden renews his motion to dismiss the counts of the indictment for insufficiency in particular with respect to each count regarding the element of an intent to commit a crime as that element relates to the crime of Burglary in the Third Degree.

The Court of Appeals has emphasized that the element of burglary of entering or remaining unlawfully in a building is separate and distinct from the element of acting with the contemporaneous "intent to commit a crime" in the building. *People v. Graves*, 76 N.Y.2d 16, 556 N.Y.S.2d 16, 555 N.E.2d 268 (1990). It is not the "intent to commit a crime" in the building which makes the entering or remaining unlawful. Rather, it is the lack of license or privilege to enter or remain in or upon premises that makes the entry or remaining unlawful. *Id.*
On the question of when the intent to commit a crime must be formulated, the Court of Appeals has held that "[i]n order to be guilty of burglary for unlawful remaining, a defendant must have entered legally, but remain for the purpose of committing a crime after authorization to be on the premises terminates. And in order to be guilty of burglary for unlawful entry, a defendant must have had the intent to commit a crime at the time of entry. In either event, contemporaneous intent is required." *People v. Gaines*, 74 N.Y.2d 358, 363, 547 N.Y.S.2d 620, 546 N.E.2d 913 (1989).
Only a general intent to commit a crime, not an intent to commit a particular crime, need be alleged and proved. *People v. Mackey*, 49 N.Y.2d 274, 425 N.Y.S.2d 288, 401 N.E.2d 398 (1980). It is not necessary that the intended crime be committed. *Id. See also, e.g., People v. Gilligan*, 42 N.Y.2d 969, 398 N.Y.S.2d 269, 367 N.E.2d 867 (1977); *People v. Castillo*, 47 N.Y.2d 270, 278, 417 N.Y.S.2d 915, 391 N.E.2d 997 (1979). However, if the People expressly predicate guilt upon an intent to commit a particular crime, then the People must prove that the defendant intended to commit that particular crime. *People v. Barnes*, 50 N.Y.2d 375, 429 N.Y.S.2d 178, 406 N.E.2d 1071 (1980); *People v. Shealy*, 51 N.Y.2d 933, 434 N.Y.S.2d 986, 415 N.E.2d 974 (1980).
A trespass with intent to violate an order of protection which prohibits entry into the building does not, however, constitute burglary; on the other hand, a trespass with intent to engage in conduct prohibited by the order of protection while in the building does constitute burglary. *People v. Lewis*, 5 N.Y.3d 546, 807 N.Y.S.2d 1, 840 N.E.2d 1014 (2005).
The intent must be to commit a crime in the building which the trespasser entered or remained in unlawfully. Thus, "if a person knowingly entered unlawfully building No. 1, with intent to commit a crime in building No. 2, he would not be guilty of burglary with respect to building No. 1, since there was no intent to commit a crime 'therein.' (*People v. Haupt*, 218 A.D. 251, 218 N.Y.S. 210 (1926))." Denzer and McQuillan, Practice Commentary to Penal Law § 140.20, McKinney's Penal Law (1967).
If a reasonable view of the evidence would support a finding that the defendant may have trespassed without an intent to commit a crime, then a degree of criminal trespass may be an appropriate lesser included offense of a burglary charge. *People v. Martin*, 59 N.Y.2d 704, 463

3

N.Y.S.2d 419, 450 N.E.2d 225 (1983). *Cf. People v. Blim,* 63 N.Y.2d 718, 480 N.Y.S.2d 192, 469 N.E.2d 513 (1984)

.4. The indictment contains   nine separate counts and each count is insufficient as it relates to the element of intent to commit a crime .

### 5.    MOTION TO INSPECT AND REDUCE

The defendant moves this court, pursuant to C.P.L. §210.30, for inspection of the grand jury minutes in order to adjudicate the motion to reduce the indictment indicated below.

The defendant moves this Court, pursuant to C.P.L. §210.20(1)(a), to reduce the indictment in the event the Court finds that the evidence before the grand jury was not legally sufficient to establish the commission by the defendant of the offense charged in any count contained in the indictment, but was legally sufficient to establish the commission of a lesser included offense.  In the event the Court so finds, the defendant moves this Court, pursuant to C.P.L. §210.20(1)(a), to order the count or counts of the indictment with respect to which the finding is made reduced to allege the most serious lesser included offense with respect to which the evidence before the grand jury was sufficient.  Furthermore, in the event that the most serious lesser included offense thus found is a petty offense, and where the Court does not find evidence of the commission of any crime in any other count of the indictment, the defendant moves this Court, pursuant to C.P.L. §210.20(1)(a), to order the indictment dismissed

6.. John Walden moves to dismiss the indictment  for insufficiency  as all nine

4

counts fail to make out the crimes of Burglary in the Third Degree.

Dated: New York, New York
       August 17, 2017

_____
Susan Calvello

No90f2015

CRIMINAL COURT OF THE STATE OF NEW YORK

COUNTY OF NEW YORK

IN THE MATTER OF AN APPLICATION FOR A

WARRANT TO SEARCH

515 WEST 145TH STREET, ROOM 3210, NEW YORK, NEW YORK

"THE TARGET LOCATION"

AFFIDAVIT IN SUPPORT OF
SEARCH WARRANT

Detective James Meehan, Shield 6445, of the Midtown South Squad of the New York City Police Department ("NYPD"), being duly sworn, deposes and says:

1. I am a Detective assigned to the Midtown South Squad and as such I am a public servant of the kind specified in CPL 690.05(1). I have been with the New York City Police Department for about 21 years and I have been involved in the execution of about one hundred search warrants

2. This affidavit is submitted in support of an application for a warrant to search 515 West 145th Street, Room 3210, New York, New York ("the target location"), where there is reasonable cause to believe that evidence of the commission of the crimes of Burglary in the Second Degree, under PL 140.25, may be found in the form of the following property:

a. White chef jacket

b. Black backpacks

c. Stolen property from the burglaries, including, but not limited to Apple laptops, Dell Laptops, Samsung laptops, digital cameras, US Treasury bonds, silver dollar coins, watches, Citibank checks in the name of "Pac Program," Yankee Tickets for an August 26, 2015 game, and Cuban cigars

d. Lock picks, screwdrivers, pry bars, or any other tools that can be used to break locks

3. As set forth below, there is reasonable cause to believe the above described property constitutes evidence, tends to demonstrate that an offense was committed and that a particular person participated in the commission of said offense. Deponent states that:

a. I am informed by Troy Bailey, of an address known to the District Attorney's Office, that he is the office manager for an advertising company located at 460 Park Avenue South, 5th floor, New York, NY. Mr. Bailey informed that on July 14, 2015, he noticed that approximately 7 Apple laptops were missing. I observed surveillance video from July 14, 2015 at 460 Park Avenue South, 5th floor that shows a black male, dressed in a white chef

Exhibit(D)

N 0901-2015

## SEARCH WARRANT

CRIMINAL COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

IN THE NAME OF THE PEOPLE OF THE STATE OF NEW YORK
TO ANY POLICE OFFICER OF THE CITY OF NEW YORK

      Proof by affidavit having been made this day before me by Detective James Meehan, Shield 6445, of the Midtown South Squad that there is reasonable cause to believe that certain property, to wit:

n. White chef jacket

o. Black backpacks

p. Stolen property from the burglaries, including, but not limited to Apple laptops, Dell Laptops, Samsung laptops, digital cameras, US Treasury bonds, silver dollar coins, watches, Citibank checks in the name of "Pac Program," Yankee Tickets for an August 26, 2015, and Cuban cigars

q. Lock picks, screwdrivers, pry bars, or any other tools that can be used to break locks

may be found in 515 West 145th Street, Room 3210, New York, New York ("the target location"); and that the above described property constitutes evidence, tends to demonstrate that an offense was committed and that a particular person participated in the commission of said offense.

      YOU ARE THEREFORE COMMANDED to search the target premises, for the above described property, and if you find such property or any part thereof to bring it before the Court without unnecessary delay.

      IT IS FURTHER ORDERED that the affidavit and any transcript of any accompanying sworn testimony in support of the application for this warrant is sealed, except that a copy of any such sworn testimony may be obtained by an assistant district attorney in the New York County District Attorney's Office and the affidavit and/or any such sworn testimony may be disclosed by an assistant district attorney in the New York County District Attorney's Office in the course of the lawful discharge of his or her duties pursuant to a criminal investigation and/or prosecution, or upon written order of the Court.

This warrant must be executed within 10 days of the date of issuance.

Laura A Ward

Judge of the Criminal Court

Dated:  New York, New York

HON. LAURA A. WARD

August 20, 2015

PT. 71   AUG 2 0 2015

CRIMINAL COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

IN THE MATTER OF AN APPLICATION FOR A

WARRANT TO SEARCH

515 WEST 145TH STREET, ROOM 3210, NEW YORK, NEW YORK

"THE TARGET LOCATION"

## SEARCH WARRANT

Cyrus R. Vance, Jr.
District Attorney
New York County
One Hogan Place
New York, New York 10013

York, NY that shows that at about 5:45pm, a black male, dressed in a white t-shirt, dark pants, and a black backpack, enter the office on the 4th floor, and enters 2 separate offices. The report states the video further shows the male leaving about 15 minutes later with a large black backpack. The report further states the black male who entered the office is not an employee of the company located 20 East 46th Street, 4th Floor. The report further states there was damage to both office doors and 1 Acer laptop, 1 Toshiba laptop, 1 Lenovo laptop, 1 ASUS laptop, and 1 digital camera was missing after the male entered the offices. I viewed stills from the surveillance video from this incident and recognized the male in the video as John Walden, NYSID 09987141Z, since I previously arrested him in June, 2011.

g.  I reviewed a NYPD Complaint report which stated that an employee from Stripes Group located at 402 West 13th Street, 4th Floor, New York, NY, a commercial office building, observed surveillance video from July 28th, 2015 at 402 West 13th Street, 4th Floor, New York, NY that shows at about 6pm, a black male, dressed in a white chef jacket, black pants, and a black backpack, enters the office on the 4th floor, and enters multiple offices. The report states the video further shows the male touch 2 pieces of paper in the office and leave about 15 minutes later with a large black backpack. The report further states the black male who entered the office is not an employee of Stripes Group. The report further states 1 Samsung laptop and 1 Lenovo Thinkpad was missing after the male entered the offices. The report further states that the paper the male touched was sent to the lab for fingerprint analysis. I viewed stills from the surveillance video and recognized the male in the video as John Walden, NYSID 09987141Z, since I previously arrested him in June, 2011. I reviewed an ECT report which shows that a latent print was recovered from the above paper and matched John Walden with NYSID 09987141Z.

h.  I reviewed a NYPD Complaint report which stated that an employee from Principle MCD Incorporated located at 138 West 25th Street, 5th Floor, New York, NY, a commercial office building, observed surveillance video from August 8th, 2015 at 138 West 25th Street, 5th Floor,  that shows that at about 12:25pm, a black male, dressed in a white chef jacket, black pants, and a black backpack, enter the office on the 5th floor, and attempts to pry the office door open with a tool and, then uses his body to open the door. The report states that the video has sound and when the male enters the office, the alarm goes off and shows the male leave about one minute later with a large black backpack. The report further states the black male who entered the office is not an employee of Principle MCD Incorporated. The report further states 2 Dell laptops and 3 Macbook laptops were missing after the male entered the office. I viewed stills from the surveillance video and recognized the male in the video as John Walden, NYSID 09987141Z, since I previously arrested him in June, 2011.

i.  I created multiple "WANTED" posters with stills from the surveillance videos and canvassed the area with them. A bodega owner informed officers from the Warrants Squad that he has seen the male and the male is staying at a hotel located at 515 WEST 145TH STREET.

j.  I am informed by an officer from the Warrants Squad that a hotel employee informed the officer John Walden is staying in 515 West 145th Street, Room 3210, New York, New York

2505 3

("the target location"). I am further informed that Warrants Squad apprehended the defendant at 515 West 145th Street, Room 3210, New York, New York ("the target location").

k.  The defendant was arrested for all of the above mentioned burglaries on August 20, 2015. In addition, an American Eagle Silver Dollar coin was recovered from his person. See Paragraph 3 (c).

l.  As an NYPD detective, I know from my experience that burglars commonly keep stolen property in their homes or where they reside.

m.  Although, my unit plans to execute this warrant before 9pm, in the event we are unable to, I am requesting night time entry as the Hotel manager is currently safeguarding the room and awaiting the execution of this search warrant.

WHEREFORE, deponent respectfully requests that the court issue a warrant and order of seizure in the form annexed authorizing a search to 515 West 145th Street, Room 3210, New York, New York ("the target location"), for the above described property; and directing that if such property is found, it be brought before the Court.

WHEREFORE, deponent respectfully requests that the court issue a warrant and order of seizure in the form annexed authorizing a search of the target premises, for the above described property, and directing that if such evidence is found, it be brought before the Court.

It is requested that this affidavit and any transcript of any accompanying sworn testimony in support of this application be sealed, except that permission be granted for an assistant district attorney in the New York County District Attorney's Office to obtain a copy of any such sworn testimony and that permission be granted for an assistant district attorney in the New York County District Attorney's office to disclose the affidavit and/or accompanying sworn testimony in the course of the lawful discharge of his or her duties pursuant to a criminal investigation and/or prosecution, or upon written order of the Court.

No previous application has been made in this matter to any other Judge, Justice, or Magistrate.

_____
Detective

_____
APPROVED:  Assistant District Attorney

Sworn to before me this
August 20, 2015

_____
Judge

**HON. LAURA A. WARD**

PT. 71  AUG 2 0 2015

PT. 71  AUG 2 0 2015

_____
Name of Court Reporter

2505 5

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 31

THE PEOPLE OF THE STATE OF NEW YORK

-against-

JOHN WALDEN,

Defendant.

PEOPLE'S
VOLUNTARY
DISCLOSURE FORM

Ind. No. 03190/2015

The People of the State of New York hereby voluntarily disclose to the defendant the following factual information pertaining to the above-captioned case:

A.      BILL OF PARTICULARS

1.      OCCURRENCE

Date:           July 7, 2015
App. Time:      6:30pm
Place:          119 West 57th Street, room 906

Date:           July 14, 2015
App. Time:      7:28AM
Place:          460 Park Avenue South , 5th floor

Date:           July 28, 2015
App. Time:      6:10PM
Place:          402 West 13th Street, 4th floor

Date:           August 8, 2015
App. Time:      12:25
Place:          138 West 25th Street, 5th floor

Date:           August 14, 2015
App. Time:      19:36
Place:          6 East 39th Street, 7th floor

Date:           August 14, 2015 - August 17, 2015
App. Time:      12:00
Place:          6 East 39th Street

Date:           August 17, 2015
App. Time:      7:45
Place:          20 East 26th Street, 4th floor

Date:           August 17, 2015
App. Time:      7:45
Place:          20 East 26th Street, 4th floor

Date:           August 18, 2015
App. Time:      7pm
Place:          560 Broadway

2.      ARREST

Date:           August 20, 2015
App. Time:      9AM
Place:          357 West 35th Street

B.   NOTICES

1.   STATEMENTS

☒ If checked, notice is hereby served, pursuant to CPL §710.30(1)(a), that the People intend to offer at trial evidence of a statement made by defendant to a public servant. *(Where a statement has been recorded on video, counsel should contact the assigned assistant district attorney to arrange a mutually convenient time for viewing the recording or should provide a blank DVD for copying.)*

Statement Number:                           1
Date:                                       August 20, 2015
Approximate Time:                           8:02AM
Location:                                   Midtown South Precinct
Individual Made To:                         Detective Stanley
Substance of Statement:                     I won't answer if those photos look like me.
They look like me, but I won't answer that. I had that silver dollar for a hot minute, for like a year. I was never a chef. I did work in the kitchen at a church, serving. It was in the Bronx. I didn't say it looked like me. My friend gave me the silver dollar. Somebody I worked with. She lives in California. I was there 7 months ago. I am not going to answer if I have a chef jacket. I have 3 backpacks. I dont have any with a white stripe on it. My blood shouldn't be at any of the burglaries. Did they take everything from my room? There shouldn't be a chef jacket in my room.

2.   IDENTIFICATION

☐ If checked, notice is hereby served, pursuant to CPL §710.30(1)(b), that the People intend to offer at trial testimony regarding an observation of defendant either at the time or place of the commission of the offense or upon some other occasion relevant to the indictment, to be given by a witness who has previously identified defendant.

C.   DISCOVERY

1.   ADDITIONAL STATEMENTS

☐ If checked, the People hereby disclose written, oral or recorded statements of a defendant or of a co-defendant to be jointly tried, made, other than in the course of the criminal transaction, to a public servant engaged in law enforcement activity or to a person then acting under his direction or in cooperation with him, and which statements are not given in section B(1) above. CPL §240.20(1)(a).

2.  GRAND JURY TESTIMONY

☐ If checked, defendant or a co-defendant to be tried jointly testified before the Grand Jury relating to this criminal action. CPL §240.20(1)(b). *Such testimony is available upon payment of a stenographic fee.*

3.  SCIENTIFIC AND MEDICAL REPORTS

☐ If checked, the People hereby disclose written reports or documents or portions thereof, concerning a physical or mental examination or scientific test or experiment, relating to this criminal action, which were made by, or at the request or direction of a public servant engaged in law enforcement, or by a person whom the People intend to call as a witness of a trial, or which the People intend to introduce at trial. CPL §240.20(1)(c).

4.  PHOTOGRAPHS AND DRAWINGS

☒ If checked, there exist photographs or drawings relating to this criminal action which were made or completed by a public servant engaged in law enforcement, or which were made by a person whom the People intend to call as a witness at trial, or which the People intend to introduce at trial. CPL §240.20(1)(d). *(Counsel should contact the assigned assistant district attorney to arrange a mutually convenient time to examine this material.)*

5.  INSPECTION OF PROPERTY

☒ If checked, there exist photographs, photocopies or other reproductions made by or at the direction of a police officer, peace officer or prosecutor of property prior to its release pursuant to the provisions of Penal Law Section 450.10, irrespective of whether the People intend to introduce at trial the property or the photograph, photocopy or other reproduction. CPL §240.20(1)(e). *(Counsel should contact the assigned assistant district attorney to arrange a mutually convenient time to examine this property.)*

6.  OTHER PROPERTY

☒ If checked, there exist other property obtained from the defendant, or a co-defendant to be tried jointly, CPL §240.20(1)(f), or from another source. *(Counsel should contact the assigned assistant district attorney to arrange a mutually convenient time to examine this property.)*

    a.  white chef jacket
    b.  silver dollar coin
    c.  black backpack with white stripe
    d.  Cuban cigars
    e.  watches
    f.  shoes

7.  TAPES AND ELECTRONIC RECORDINGS

☒ If checked, there exist tapes or other electronic recordings which the People intend to introduce at trial, irrespective of whether any such recording was made during the course

of the criminal transaction. CPL §240.20(1)(g). *(Counsel should contact the assigned assistant district attorney to arrange a mutually convenient time to listen to the tapes or provide a blank tape for copying.)*

8.    ## BRADY MATERIAL

☐ If checked, there is material appended which the People are required to turn over pursuant to the United States or the New York State Constitution. The People are aware of their continuing obligation to disclose material exculpatory information to defendant and intend to satisfy that obligation as required by law. CPL §240.20(1)(h).

9.    ## COMPUTER OFFENSES

☐ If checked, discovery is hereby served pursuant to CPL §240.20(1)(j) of the time, place and manner of notice given pursuant to Penal Law §156.00(6), which governs offenses for Unauthorized Use of a Computer (Penal Law §156.05) and Computer Trespass (Penal Law §156.10).

10.   ## VEHICLE AND TRAFFIC LAW OFFENSES

☐ If checked, the People hereby disclose written reports or documents or portions thereof, concerning a physical examination, a scientific test or experiment, including the most recent record of inspection, or calibration or repair of machines or instruments utilized to perform such scientific tests or experiments and the certification certificate, if any, held by the operator of the machine or instrument, which tests or examinations were made by or at the request or direction of a public servant engaged in law enforcement activity, or which was made by a person whom the People intend to call as a witness at trial, or which the People intend to introduce at trial. CPL §240.20(1)(k).

11.   ## POLICE OFFICERS INVOLVED

The following are some of the officers who were involved in the arrest or police investigation.

| Name | Shield | Command |
|------|--------|---------|
| Steven Stanley | 3554 | MTS |
| James Meehan | 6445 | MTS |

12.   ## SEARCH WARRANTS

☒ If checked, a search warrant was executed during the investigation of this case.

D.    ## DEMAND FOR NOTICE OF ALIBI

Pursuant to CPL §250.20, the People hereby demand that defendant supply the District Attorney with (a) the place or places where the defendant claims to have been at the time of the commission of the crime(s) and (b) the names, residential addresses, places of

employment and addresses thereof of every alibi witness upon whom defendant intends to rely to establish his presence elsewhere than at the scene of the crime at the time of its commission, and of every witness in support of such defense. Within a reasonable time after the receipt of the information specified above, the District Attorney will submit a list of any rebuttal witnesses, their addresses, and employers.

E.     **RECIPROCAL DISCOVERY**

Pursuant to CPL §240.30(1), the People hereby demand that defendant supply the District Attorney with (a) any written report or document, or portion thereof, concerning a physical or mental examination, or scientific test, experiment, or comparisons, made by or at the request or direction of the defendant, if the defendant intends to introduce such report or document at trial, or if defendant has filed a notice of intent to proffer psychiatric evidence and such report or document which relates thereto or if such report or document was made by a person other than defendant, whom defendant intends to call as a witness at trial; and (b) any photograph, drawing, tape, or other electronic recording which the defendant intends to introduce at trial.

<u>NOTE</u>: Any defense motion or request addressed to the above-captioned case should be directed to the attention of the assistant district attorney named below, who is assigned to this case.

Dated:     New York, New York
           October 5, 2015

                                        Shilpa Kalra
                                        Assistant District Attorney
                                        (212) 335-9095

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 31

| | |
|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK<br><br>-against-<br><br>JOHN WALDEN,<br><br>Defendant. | PEOPLE'S<br>VOLUNTARY<br>DISCLOSURE FORM<br><br>Ind. No. 03190/2015 |

The People of the State of New York hereby voluntarily disclose to the defendant the following factual information pertaining to the above-captioned case:

A.      <u>BILL OF PARTICULARS</u>

1.      <u>OCCURRENCE</u>

Date:           July 7, 2015
App. Time:      6:30pm
Place:          119 West 57th Street, room 906

Date:           July 14, 2015
App. Time:      7:28AM
Place:          460 Park Avenue South , 5th floor

Date:           July 28, 2015
App. Time:      6:10PM
Place:          402 West 13th Street, 4th floor

Date:           August 8, 2015
App. Time:      12:25
Place:          138 West 25th Street, 5th floor

Date:           August 14, 2015
App. Time:      19:36
Place:          6 East 39th Street, 7th floor

Date:           August 14, 2015 - August 17, 2015
App. Time:      12:00
Place:          6 East 39th Street

Date:           August 17, 2015
App. Time:      7:45
Place:          20 East 26th Street, 4th floor

Date:           August 17, 2015
App. Time:      7:45
Place:          20 East 26th Street, 4th floor

Date:           August 18, 2015
App. Time:      7pm
Place:          560 Broadway

2.      <u>ARREST</u>

Date:           August 20, 2015
App. Time:      9AM
Place:          357 West 35th Street

B.       NOTICES

1.       STATEMENTS

☒ If checked, notice is hereby served, pursuant to CPL §710.30(1)(a), that the People intend to offer at trial evidence of a statement made by defendant to a public servant. *(Where a statement has been recorded on video, counsel should contact the assigned assistant district attorney to arrange a mutually convenient time for viewing the recording or should provide a blank DVD for copying.)*

Statement Number:                        1
Date:                                    August 20, 2015
Approximate Time:                        8:02AM
Location:                                Midtown South Precinct
Individual Made To:                      Detective Stanley
Substance of Statement:                  I won't answer if those photos look like me.
They look like me, but I won't answer that. I had that silver dollar for a hot minute, for like a year. I was never a chef. I did work in the kitchen at a church, serving. It was in the Bronx. I didn't say it looked like me. My friend gave me the silver dollar. Somebody I worked with. She lives in California. I was there 7 months ago. I am not going to answer if I have a chef jacket. I have 3 backpacks. I don't have any with a white stripe on it. My blood shouldn't be at any of the burglaries. Did they take everything from my room? There shouldn't be a chef jacket in my room.

2.       IDENTIFICATION

☐ If checked, notice is hereby served, pursuant to CPL §710.30(1)(b), that the People intend to offer at trial testimony regarding an observation of defendant either at the time or place of the commission of the offense or upon some other occasion relevant to the indictment, to be given by a witness who has previously identified defendant.

C.       DISCOVERY

1.       ADDITIONAL STATEMENTS

☐ If checked, the People hereby disclose written, oral or recorded statements of a defendant or of a co-defendant to be jointly tried, made, other than in the course of the criminal transaction, to a public servant engaged in law enforcement activity or to a person then acting under his direction or in cooperation with him, and which statements are not given in section B(1) above. CPL §240.20(1)(a).

2.   **GRAND JURY TESTIMONY**

☐ If checked, defendant or a co-defendant to be tried jointly testified before the Grand Jury relating to this criminal action. CPL §240.20(1)(b). *Such testimony is available upon payment of a stenographic fee.*

3.   **SCIENTIFIC AND MEDICAL REPORTS**

☐ If checked, the People hereby disclose written reports or documents or portions thereof, concerning a physical or mental examination or scientific test or experiment, relating to this criminal action, which were made by, or at the request or direction of a public servant engaged in law enforcement, or by a person whom the People intend to call as a witness of a trial, or which the People intend to introduce at trial. CPL §240.20(1)(c).

4.   **PHOTOGRAPHS AND DRAWINGS**

☒ If checked, there exist photographs or drawings relating to this criminal action which were made or completed by a public servant engaged in law enforcement, or which were made by a person whom the People intend to call as a witness at trial, or which the People intend to introduce at trial. CPL §240.20(1)(d). *(Counsel should contact the assigned assistant district attorney to arrange a mutually convenient time to examine this material.)*

5.   **INSPECTION OF PROPERTY**

☒ If checked, there exist photographs, photocopies or other reproductions made by or at the direction of a police officer, peace officer or prosecutor of property prior to its release pursuant to the provisions of Penal Law Section 450.10, irrespective of whether the People intend to introduce at trial the property or the photograph, photocopy or other reproduction. CPL §240.20(1)(e). *(Counsel should contact the assigned assistant district attorney to arrange a mutually convenient time to examine this property.)*

6.   **OTHER PROPERTY**

☒ If checked, there exist other property obtained from the defendant, or a co-defendant to be tried jointly, CPL §240.20(1)(f), or from another source. *(Counsel should contact the assigned assistant district attorney to arrange a mutually convenient time to examine this property.)*

      a.   white chef jacket
      b.   silver dollar coin
      c.   black backpack with white stripe
      d.   Cuban cigars
      e.   watches
      f.   shoes

7.   **TAPES AND ELECTRONIC RECORDINGS**

☒ If checked, there exist tapes or other electronic recordings which the People intend to introduce at trial, irrespective of whether any such recording was made during the course

of the criminal transaction. CPL §240.20(1)(g). *(Counsel should contact the assigned assistant district attorney to arrange a mutually convenient time to listen to the tapes or provide a blank tape for copying.)*

8.   ## BRADY MATERIAL

☐ If checked, there is material appended which the People are required to turn over pursuant to the United States or the New York State Constitution. The People are aware of their continuing obligation to disclose material exculpatory information to defendant and intend to satisfy that obligation as required by law. CPL §240.20(1)(h).

9.   ## COMPUTER OFFENSES

☐ If checked, discovery is hereby served pursuant to CPL §240.20(1)(j) of the time, place and manner of notice given pursuant to Penal Law §156.00(6), which governs offenses for Unauthorized Use of a Computer (Penal Law §156.05) and Computer Trespass (Penal Law §156.10).

10.   ## VEHICLE AND TRAFFIC LAW OFFENSES

☐ If checked, the People hereby disclose written reports or documents or portions thereof, concerning a physical examination, a scientific test or experiment, including the most recent record of inspection, or calibration or repair of machines or instruments utilized to perform such scientific tests or experiments and the certification certificate, if any, held by the operator of the machine or instrument, which tests or examinations were made by or at the request or direction of a public servant engaged in law enforcement activity, or which was made by a person whom the People intend to call as a witness at trial, or which the People intend to introduce at trial. CPL §240.20(1)(k).

11.   ## POLICE OFFICERS INVOLVED

The following are some of the officers who were involved in the arrest or police investigation.

| Name | Shield | Command |
|------|--------|---------|
| Steven Stanley | 3554 | MTS |
| James Meehan | 6445 | MTS |

12.   ## SEARCH WARRANTS

☒ If checked, a search warrant was executed during the investigation of this case.

D.   ## DEMAND FOR NOTICE OF ALIBI

Pursuant to CPL §250.20, the People hereby demand that defendant supply the District Attorney with (a) the place or places where the defendant claims to have been at the time of the commission of the crime(s) and (b) the names, residential addresses, places of

employment and addresses thereof of every alibi witness upon whom defendant intends to rely to establish his presence elsewhere than at the scene of the crime at the time of its commission, and of every witness in support of such defense. Within a reasonable time after the receipt of the information specified above, the District Attorney will submit a list of any rebuttal witnesses, their addresses, and employers.

E.  **RECIPROCAL DISCOVERY**

Pursuant to CPL §240.30(1), the People hereby demand that defendant supply the District Attorney with (a) any written report or document, or portion thereof, concerning a physical or mental examination, or scientific test, experiment, or comparisons, made by or at the request or direction of the defendant, if the defendant intends to introduce such report or document at trial, or if defendant has filed a notice of intent to proffer psychiatric evidence and such report or document which relates thereto or if such report or document was made by a person other than defendant, whom defendant intends to call as a witness at trial; and (b) any photograph, drawing, tape, or other electronic recording which the defendant intends to introduce at trial.

**NOTE**: Any defense motion or request addressed to the above-captioned case should be directed to the attention of the assistant district attorney named below, who is assigned to this case.

Dated:   New York, New York
         October 5, 2015

Shilpa Kalra
Assistant District Attorney
(212) 335-9095

Page 1 of 3

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK
THE PEOPLE OF THE STATE OF NEW YORK

-against-

John Walden (M 49),

Defendant:

FELONY

ADA Shilpa Kalra
(212) 335-9095

Detective James Meehan, Shield 06445 of the Midtown South Precinct Detective

Squad, states as follows:

*The defendant is charged with:*

PL 140.20

Burglary in the Third Degree
(defendant #1: 7 counts)

At the times and places described below in the County and State of New York,
the defendant knowingly entered and remained unlawfully in a building with intent to
commit a crime therein.

*The factual basis for this charge is as follows:*

I am informed by an individual, of an address known to the District
Attorney's Office, that he is the office manager for an advertising company located at 460
Park Avenue South, 5th floor, New York, NY. I am further informed that on July 14, 2015,
he noticed that approximately 7 Apple laptops were missing. I observed surveillance video
from July 14, 2015 at 460 Park Avenue South, 5th floor that shows a male, dressed in a white
chief jacket, black pants, and a black backpack, enter the office on the 5th floor, and use a
tool to pry the office door open. The video further shows the male leave about 15 minutes
later with a full backpack. I recognized the male in the video as the defendant, John Walden
since I previously arrested him in June, 2011.

I am informed by a second individual, of an address known to the
District Attorney's Office, that he is the CEO for a Title Agency located at 6 East 39th
Street, 7th floor, New York, NY. I am further informed that on August 14, 2015, he
observed surveillance video from August 14, 2015 at 6 East 39th Street, 7th floor that shows
that at about 7:30pm a black male, dressed in a white chief jacket, black pants, and a black
backpack, enters the office on the 7th floor, pries the office door open, and enters the office.
The video further shows the male running out a few minutes later. I also watched the video
and recognized the male in the video as the defendant John Walden.

I am informed by a third individual, of an address known to the District

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

THE PEOPLE OF THE STATE OF NEW YORK

-against-

John Walden (M 49),

Defendant.

Page 2 of 5

FELONY

ADA Shilpa Kalra
(212) 335-9095

Attorney's Office, that he is a physician for the "PAC Program," located at 6 East 39th Street, 4th Floor, New York, NY. I am further informed me that on August 17, 2015 that the door was damaged, the safe had been moved, and property, including Cuban cigars, 20 American Eagle Silver Dollar coins, 7 watches, US currency, and 20 Citibank checks in the name of "Pac Program," and multiple US Treasury Bonds, was missing from the office. One American Eagle Silver Dollar was recovered from the defendant's person.

I am informed by Detective Kevin Buehler, SHield 4387, that he spoke to an employee from RPG Incorporated located at 119 West 57th Street, Room 906, New York, NY who observed surveillance video from July 7, 2015 at 119 West 57th Street, Room 906 that shows that at about 6:30pm, a male, dressed in a white chef jacket, black pants, and a black backpack, enter the office on the 9th floor, attempts to open several office doors, and enter some of the offices. I am further informed that the video further shows the male leaving about 15 minutes later with a large black backpack. I am further informed that male who entered the office is not an employee of RPG Incorporated and 1 Apple laptop was missing after the male entered the office. I viewed stills from the surveillance video from this incident, and recognized the male in the video as the defendant.

I am informed by Detective Buehler, that he spoke to an employee from a company located at 20 East 46th Street, 4th Floor, New York, NY, a commercial office building, who observed surveillance video from August 17th, 2015 at 20 East 46th Street, 4th Floor, New York, NY that shows that at about 5:45pm, a black male, dressed in a white t-shirt, dark pants, and a black backpack, enter the office on the 4th floor, and enters 2 separate offices. I am further informed that the video further shows the male leaving about 15 minutes later with a large black backpack. I am further informed that the male who entered the office is not an employee of the company located 20 East 46th Street, 4th Floor. I am further informed there was damage to both office doors and 1 Acer laptop, 1 Toshiba laptop, 1 Lenovo laptop, 1 ASUS laptop, and 1 digital camera was missing after the male entered the offices. I viewed stills from the surveillance video from this incident and recognized the male in the video as the defendant.

I am informed by Detective Elvis Monalvo, Shield 478, that an employee from Stripes Group located at 402 West 13th Street, 4th Floor, New York, NY, a commercial

Page 3 of 3

CRIMINAL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK

THE PEOPLE OF THE STATE OF NEW YORK

-against-

John Walden (M 49),

Defendant.

FELONY

ADA Shilpa Kalra
(212) 335-9095

I am informed by Detective John Hidalgo, Shield 584, that an employee from Steples Group and that I Samsung
the male who entered the office is not an employee of Steples Group and that I Samsung
laptop and 1 Lenovo Thinkpad was missing after the male entered the office. I viewed stills
from the surveillance video and recognized the male in the video as the defendant. I
reviewed an EGT report which shows that a latent print was recovered from the above paper
and matched the defendant.

office building, observed surveillance video from July 28th, 2015 at 402 West 13th Street, 4th
Floor, New York, NY that shows at about 6pm, a male, dressed in a white chef jacket, black
pants, and a black backpack, enters the office on the 4th floor, and enters multiple offices. I
am further informed that the video further shows the male touch 2 pieces of paper in the
office and leave about 15 minutes later with a large black backpack I a further informed that

Principle MCD Incorporated located at 138 West 25th Street, 5th Floor, New York, NY, a
commercial office building, observed surveillance video from August 8th, 2015 at 138 West
25th Street, 5th Floor, that shows that at about 12:25pm, a male, dressed in a white chef
jacket, black pants, and a black backpack, enter the office on the 5th floor, and attempts to
pry the office door open with a tool and, then uses his body to open the door, the alarm goes off
and shows the male leave about a minute later with a large black backpack. I am further
informed that the male who entered the office is not an employee of Principle MCD
Incorporated and 2 Dell laptops and 3 Macbook laptops were missing after the male entered
the office. I viewed stills from the surveillance video and recognized the male in the video as
the defendant.

False statements made in this written instrument are punishable as a class A
misdemeanor pursuant to section 210.45 of the Penal Law, and as other crimes.

Detective James Meehan

_____    _____
Date                Time

Assigned ADA: Shilpa Kalra, 36    Telephone: 212-335-9095

## ARRAIGNMENT INFORMATION SHEET

| Defendant | Age | Bail | Diversion | A Testified in GJ |
|---|---|---|---|---|
| JOHN WALDEN 6765NY93710 | 46 | $3500/Greene 10K/7500 | Eligible | Y |

| PLEA OFFER / RECOMMENDATION | | | Approved |
|---|---|---|---|
| TTC: 05 final-count: 240.20, a class D-Felony, with 6.5 to jail | | | |

| Occurrence Date | Approx. Time | Location | Pct |
|---|---|---|---|
| SEE ATTACHED | | | |

## People v. John Walden

### FACTS:

Incident 1: July 7, 2015 at 149 West 57th Street, Room 906. Video shows that at about 6:30pm, a male, dressed in a white chef jacket, black pants, and a black backpack, enter the office on the 9th floor, attempts to open several office doors, and enter some of the offices. Shows male leaving about 15 minutes later with a large black backpack. Property missing: 1 Apple laptop.

Incident 2: July 14, 2015 at 6 Park Avenue South, 5th floor. Video shows a male dressed in a white chef jacket, black backpack and a black shirt... the office on the 5th floor and... it took to open the office door open. The video further shows the male leave about 15 minutes later with a full backpack. 7 Apple laptops were missing.

Incident 3: June 24th, 2015 at 492 West 136 Street, 4th floor. Video shows a person open... a male, dressed in a white chef jacket, black pants, and a black backpack, enter and another of the 4th floor... the male entered in the... with a scrap... paper in the office and leave about 15 minutes later with a large black backpack. Missing Property: 1 Samsung laptop and 1 laptop. 1 latent print was recovered from the above paper and matched the defendant.

Incident 4: August 6th, 2015 at 135 West 29th Street, 5th Floor, video shows that at about 12:25pm, a male, dressed in a chef jacket, black leggings and a black backpack, enter the office on the 5th floor, and attempts to open the office door... and then pro... his body between the desk... their client and throw the male leave about... and leave... Missing Property: 2 Dell laptops and 1 Macbook laptop. Defendant himself and leave... Property: DNA from bloodprint (black to the left).

Incident 5: August 28, 2015 at 8 East 39th Street, 2nd floor. Video shows that at about 11:30, a black male, dressed in a white chef or... black pants, and a black backpack, enter another on the 7th floor, pro... office door open, and enter the office... another shows the male running onto 5 minutes later. No property missing.

Incident 6: August 12, 2015... the video therefore was damaged, the site had been moved, and property, including latent, print... the American Eagle Silver Dollar coins, 1 watch, US currency, and 20 software clocks in the name of... 145 entry... and and the 12 Freeport Bonds, was missing from the office. One American Eagle Silver Dollar coin was covered from the defendant's personal... he was arrested.

Incident 7 and Incident 8: August 17th, 2015 at 214 East 49th Street, 4th Floor. Video shows that at about 5:45pm, a... male, in a white chef or... black pants, and a black backpack, enter the... on the 4th floor, and enter... another office. Shows the male leaving about 5 minutes later with a backpack. Damage to both... Property Missing: 1 steel laptop, 1 Toshiba laptop, 1 Lenovo laptop, 1 ASUS laptop, and 1 digital camera.

Incident 9: August 19, 2015 at... Broadway. Video shows D enter building and office at West Group, which require special access to improper missing.

### SUMMARY OF DEFENDANT'S STATEMENTS:

That... [text largely illegible]... I told the... everything from my room... there should be a chef pocket in my room.

## OCCURRENCES

Date:        July 7, 2015
App. Time:   6:30pm
Place:       119 West 57th Street

Date:        July 14, 2015
App. Time:   7:28AM
Place:       460 Park Avenue South

Date:        July 28, 2015
App. Time:   6:10PM
Place:       402 West 13th Street

Date:        August 8, 2015
App. Time:   12:25
Place:       138 West 25th Street

Date:        August 14, 2015
App. Time:   19:36
Place:       6 East 39th Street

Date:        August 14, 2015 - August 17, 2015
App. Time:   12:00
Place:       6 East 39th Street

Date:        August 17, 2015
App. Time:   7:45
Place:       20 East 26th Street

Date:        August 17, 2015
App. Time:   7:45
Place:       20 East 26th Street

Date:        August 18, 2015
App. Time:   7pm
Place:       500 Broadway

## SUMMARY OF DEFENDANT'S CRIMINAL HISTORY:

The defendant is a discretionary persistent felony offender. 2 E for burglarie 1 M for a misprisionersioning from a burg.

## SPECIAL FACTORS AFFECTING PLEA OR BAIL:

Detrested on 3 count and suspected of several more.

## DIVERSION INFORMATION:

The defendant is potentially elgibile for diversion.
The People oppose pretrial diversion. Dedoes not have a drug use problem.

Indictment charges          190.25
Date filed                 9/30/15
Ref Number                 3 3

**EXHIBIT**

**(D)**

FORM 4141.1                                                              GNCP5J

```
            STATE OF NEW YORK DEPT OF CORRECTIONS AND COMMUNITY SUPERVISION
                        NOTICE OF DISAPPROVAL FOR TEMPORARY RELEASE


    TO:     SUPERINTENDENT

    FROM:   CENTRAL OFFICE TEMPORARY RELEASE

    RE:     WALDEN, JOHN                          18R0155

    DATE:   11/19/19        APPLICATION NO.  1900500


    THIS IS TO ADVISE YOU THAT THE APPLICATION FOR TEMPORARY RELEASE
    FOR THE ABOVE NAMED INDIVIDUAL HAS NOT BEEN APPROVED BY THE CENTRAL
    OFFICE FOR THE FOLLOWING REASONS:

        I/O NATURE          RECDIVST HST          COMUNTY RISK


    REVIEWER'S COMMENTS:
    INSTANT OFFENSE OF BURGLARY 1 (7CTS) AND BURLGAYR 3 (2CTS) INVOLVED
    INMATE UNLAWFULLY ENTERING LOCATIONS AND STEALING PROPERTY FROM WITHIN.
    CRIMINAL HISTORY INCLUDES A PRIOR NYS TERM FOR BURLGARY 3 AND BURGLARY 3
    (2CTS). INMATE IS A MULTI- STATE OFFENDER WITH CONVICTIONS IN THE STATE OF
    CALIFORNIA AND CONNECTICUT.  PROGRAMMING NEEDS AND CUSTODIAL ADJUSTMENT.
    INMATE'S INABILITY TO REFRAIN FROM ILLEGAL ACTIVITIES POSES INMATE A
    CONTINUED RISK TO PUBLIC SAFETY AND PUBLIC PROPERTY.


    THE INMATE MAY REAPPLY FOR WORK RELEASE ON 08/2021.


    INMATE MAY APPEAL THIS DECISION IN ACCORDANCE WITH SECTION 1900.6 OF THE
    TEMPORARY RELEASE RULES AND REGULATIONS.






    FACILITY DISTRIBUTION: INMATE
                           TRC CHAIRPERSON
                           GUIDANCE FILE
                           CENTRAL FILE
```

```
01/29/18              RECEPTION/CLASSIFICATION SYSTEM
11:14:28              LEGAL DATE COMPUTATION      BY: C610MJV
                                       COMP DATE/TIME: 01/23/2018   03:02P

        TYPE B01  BASIC INDETERMINATE

   DIN:  18R0155  NAME:  WALDEN, JOHN                 NYSID:  09987141Z
   DATE RECEIVED: 01/23/2018
   CURRENT LOCATION:  ULSTER REC    - 0A-01-03B


HEARING DATE                 2020 04    TIME ALLOWANCE COMM DATE    2023 04
HEARING TYPE                 MERT       TIME ALLOWANCE COMM TYPE    INIT
TENTATIVE RELEASE DATE                  POST-RELEASE SUPERVISION
GRADUATION DATE                         PRS MAXIMUM EXPIRATION DT


IND MINIMUM TERM          0006 00 00    IND MAXIMUM TERM         0012 00 00
DATE RECEIVED            +2018 01 23    DATE RECEIVED           +2018 01 23
JAIL TIME               -0002 05 07     JAIL TIME               -0002 05 07
                         ---- -- --                              ---- -- --
PAROLE ELIGIBILITY DATE =2021 08 15     MAXIMUM EXPIRATION DATE =2027 08 15
MERIT TIME POSSIBLE     -0001 00 00     GOOD TIME POSSIBLE      -0004 00 00
                         ---- -- --                              ---- -- --
MERIT ELIGIBILITY DATE  =2020 08 15     CONDITIONAL RELEASE DATE =2023 08 15




COMMENTS:













JAIL TIME(S) IN DAYS:
  JAIL TIME  =  887

DIST:  IRC (1), GUID & COUNS UNIT (1), INST PAROLE (1), INMATE (1)
```

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 31
---------------------------------------------

THE PEOPLE OF THE STATE OF NEW YORK | STATEMENT OF PREDICATE
FELONY CONVICTION

-against- | PURSUANT TO CRIMINAL
PROCEDURE LAW SECTION 400.21
AND PENAL LAW SECTION 70.06

JOHN WALDEN,

Defendant. | RELATING TO INDICTMENT
NO. 03190/2015

---------------------------------------------

The above-named defendant has previously been subjected to one or more predicate felony

convictions as defined in Penal Law §70.06(1)(b), to wit:

On April 2, 2012, in the Supreme Court of New York, in the County of New York, the

defendant was convicted of the felony of Burglary in the Third Degree, Penal Law §140.20. Sentence

upon that conviction was imposed on April 23, 2012.


Dated:  New York, New York
        October 5, 2015

Shilpa Kalra
Assistant District Attorney

# UNIFORM SENTENCE & COMMITMENT

**STATE OF NEW YORK**

UCS-854(12/2014)

**SUPREME** COURT, COUNTY OF **NEW YORK**

**PRESENT: HON. ARLENE D. GOLDBERG**

| | |
|---|---|
| Court Part: | 56 |
| Court Reporter: | L. Mango |
| Superior Ct. Case # : | 3910-2015 (Page 2 of 2) |

The People of the State of New York
-vs-
**John Walden**
Defendant

| Accessory Instrument Charge(s): | Law/Section & Subdivision: |
|---|---|
| 1 Burglary 3rd. | PL 140.20 (Nine Counts) |
| 2 | |
| 3 | |
| 4 | |

| Male | 11 / 26 / 65 | 0 9 9 8 7 1 4 1 Z | |
|---|---|---|---|
| SEX | D.O.B. | NYSID NUMBER | CRIMINAL JUSTICE TRACKING NUMBER |

Date(s) of Offense:  07 / 07 / 2015
To  08 / 18 / 2015

**THE ABOVE NAMED DEFENDANT HAVING BEEN CONVICTED BY [☒ PLEA OR ☐ VERDICT], THE MOST SERIOUS OFFENSE BEING A [☒ FELONY OR ☐ MISDEMEANOR OR ☐ VIOLATION], IS HEREBY SENTENCED TO:**

| Crime | Count No. | Law § and Subdivision | SMF, Hate or Terror | Minimum Term | Maximum Term | ☐ Definite (select: D, M or Y) ☐ Determinate (in years)** | Post-Release Supervision |
|---|---|---|---|---|---|---|---|
| 1 Burglary 3rd. | 6 | PL 140.20 | | 3 years | 6 years | | years |
| 2 Burglary 3rd. | 7 | PL 140.20 | | 3 years | 6 years | | years |
| 3 Burglary 3rd. | 8 | PL 140.20 | | 3 years | 6 years | | years |
| 4 Burglary 3rd. | 9 | PL 140.20 | | 3 years | 6 years | | years |
| 5 | | | | | | | years |

**\*\*NOTE: For each DETERMINATE SENTENCE imposed, a corresponding period of POST-RELEASE SUPERVISION MUST be indicated [PL § 70.45].**

☒ Counts 2, 3, 5, 6, 7, 8, 9  shall run CONCURRENTLY with each other   ☒ Count(s) 1  shall run CONSECUTIVELY to count(s) 4

☐ Sentence imposed herein shall run CONCURRENTLY with _____ and/or CONSECUTIVELY to _____

☐ Sentence imposed herein shall include a CONSECUTIVE _____ term of [☐ PROBATION OR ☐ CONDITIONAL DISCHARGE], with an Ignition Interlock Device condition, that shall commence upon the defendant's release from imprisonment [PL§60.21].

☐ Conviction includes:   **WEAPON TYPE:** _____

☐ Charged as a JUVENILE OFFENDER - age at time crime committed: _____ years   and/or **DRUG TYPE:** _____

☐ Adjudicated a YOUTHFUL OFFENDER [CPL §720.20]

☐ Execute as a sentence of PAROLE SUPERVISION [CPL § 410.91]

☐ Re-sentence as a PROBATION VIOLATOR [CPL § 410.70]

☐ Court certified the Defendant a SEX OFFENDER [Cor. L § 168-d]

☐ CASAT ordered [PL § 60.04(6)]

☐ SHOCK INCARCERATION ordered [PL § 60.04(7)]

As a: ☒ Second   ☐ Second Violent   ☐ Second Drug   ☐ Second Drug w/prior VFO   ☐ Predicate Sex Offender   ☐ Predicate Sex Offender w/prior VFO   ☐ Second Child Sexual Assault   ☐ Persistent   ☐ Persistent Violent   **FELONY OFFENDER**

| Paid | Not Paid | Deferred - court must file written order [CPL § 420.40(5)] | | Paid | Not Paid | Deferred - court must file written order [CPL § 420.40(5)] | |
|---|---|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | Mandatory Surcharge $ _____ | ☐ | ☐ | ☐ | Crime Victim Assistance Fee $ _____ |
| ☐ | ☐ | ☐ | Fine $ _____ | ☐ | ☐ | ☐ | Restitution $ _____ |
| ☐ | ☐ | ☐ | DNA Fee $ _____ | ☐ | ☐ | ☐ | Sex Offender Registration Fee $ _____ |
| ☐ | ☐ | ☐ | DWI/Other: $ _____ | ☐ | ☐ | ☐ | Supplemental Sex Off. Victim Fee $ _____ |

**THE SAID DEFENDANT BE AND HEREBY IS COMMITTED TO THE CUSTODY OF THE:**

☒ NYS Department of Correctional Services (NYSDOCS) until released in accordance with the law, and being a person sixteen (16) years or older not presently in the custody of NYSDOCS [the COUNTY SHERIFF OR ☒ NEW YORK CITY DEPARTMENT OF CORRECTION] is directed to deliver the defendant to the custody of NYSDOCS as provided in 7 NYCRR Part 103.

☐ NYS Department of Correctional Services (NYSDOCS) until released in accordance with the law, and being a person sixteen (16) years or older and is presently in the custody of NYSDOCS, defendant shall remain in the custody of NYSDOCS.

☐ NYS Office of Children and Family Services in accordance with the law being a person less than sixteen (16) years of age at the time the crime was committed.

☐ _____ . County Jail/Correctional Facility

**TO BE HELD UNTIL THE JUDGMENT OF THIS COURT IS SATISFIED.**

**REMARKS**  Fees and Surcharges are listed on page 1.

| Commitment, Order of Protection & Pre-Sentence Report received by Correctional Authorities as indicated |
|---|
| Official Name |
| Shield No. |

| | |
|---|---|
| Pre-Sentence Investigation Report Attached: ☒ YES ☐ NO | ☐ Amended Commitment: |
| Order of Protection Issued: ☐ YES ☒ NO | Original Sentence Date ___ / ___ / ___ |
| Order of Protection Attached: ☐ YES ☒ NO | |

| 12 / 01 / 2017 | Milton Adair Tingling | by Daniel B. McVey | Senior Court Clerk |
|---|---|---|---|
| Date | Clerk of the Court | Signature | Title |

**UNIFORM SENTENCE & COMMITMENT**

UCS-854(12/2014)

STATE OF NEW YORK

**SUPREME** COURT, COUNTY OF **NEW YORK**

PRESENT: HON. ARLENE D. GOLDBERG

Court Part: 56

Court Reporter: L. Mango

Superior Ct. Case # : 3910-2015 (Page 1 of 2)

The People of the State of New York
-vs-
John Walden
Defendant

| Accessory Instrument Charges: | Law/Section & Subdivision: |
|---|---|
| 1 Burglary 3rd. | PL 140.20 (Nine Counts) |
| 2. | |
| 3. | |
| 4. | |

| Male | 11 / 26 / 65 | 0 9 9 8 7 1 4 1 Z | |
|---|---|---|---|
| SEX | D.O.B. | NYSID NUMBER | CRIMINAL JUSTICE TRACKING NUMBER |

Date(s) of Offense: 07 / 07 / 2015
To 08 / 18 / 2015

THE ABOVE NAMED DEFENDANT HAVING BEEN CONVICTED BY [☒ PLEA  OR ☐ VERDICT], THE MOST SERIOUS OFFENSE BEING A [☒ FELONY  OR ☐ MISDEMEANOR  OR ☐ VIOLATION], IS HEREBY SENTENCED TO:

| Crime | Count No. | Law § and Subdivision | SMF, Hate or Terror | Minimum Term | | Maximum Term | | ☐ Definite (select: D, M or Y) ☐ Determinate (in years)** | Post-Release Supervision |
|---|---|---|---|---|---|---|---|---|---|
| 1 Burglary 3rd. | 1 | PL 140.20 | | 3 | years | 6 | years | | years |
| 2 Burglary 3rd. | 2 | PL 140.20 | | 3 | years | 6 | years | | years |
| 3 Burglary 3rd. | 3 | PL 140.20 | | 3 | years | 6 | years | | years |
| 4 Burglary 3rd. | 4 | PL 140.20 | | 3 | years | 6 | years | | years |
| 5 Burglary 3rd. | 5 | PL 140.20 | | 3 | years | 6 | years | | years |

**NOTE: For each DETERMINATE SENTENCE imposed, a corresponding period of POST-RELEASE SUPERVISION MUST be indicated [PL § 70.45].

☒ Counts 2, 3, 5, 6, 7, 8, 9 shall run CONCURRENTLY with each other ☒ Count(s) 1 shall run CONSECUTIVELY to count(s) 4

☐ Sentence imposed herein shall run CONCURRENTLY with ___ and/or CONSECUTIVELY to ___

☐ Sentence imposed herein shall include a CONSECUTIVE ___ term of [ ☐ PROBATION  OR ☐ CONDITIONAL DISCHARGE], with an Ignition Interlock Device condition, that shall commence upon the defendant's release from imprisonment [PL § 60.21].

☐ Conviction includes: ___ WEAPON TYPE: ___

☐ Charged as a JUVENILE OFFENDER - age at time crime committed: ___ years ___ and/or DRUG TYPE: ___

☐ Adjudicated a YOUTHFUL OFFENDER [CPL §720.20]

☐ Execute as a sentence of PAROLE SUPERVISION [CPL § 410.91]

☐ Re-sentence as a PROBATION VIOLATOR [CPL § 410.70]

☐ Court certified the Defendant a SEX OFFENDER [Cor. L. § 168-d]

☐ CASAT ordered [PL § 60.04(6)]

☐ SHOCK INCARCERATION ordered [PL § 60.04(7)]

As a: ☒ Second  ☐ Second Violent  ☐ Second Drug  ☐ Second Drug w/prior VFO  ☐ Predicate Sex Offender  ☐ Predicate Sex Offender w/prior VFO  ☐ Second Child Sexual Assault  ☐ Persistent  ☐ Persistent Violent  FELONY OFFENDER

| Paid | Not Paid | Deferred - court must file written order [CPL § 420.40(5)] | | Paid | Not Paid | Deferred - court must file written order [CPL § 420.40(5)] | |
|---|---|---|---|---|---|---|---|
| ☐ | ☒ | ☐ | Mandatory Surcharge $ 300 | ☐ | ☒ | ☐ | Crime Victim Assistance Fee $ 25 |
| ☐ | ☒ | ☐ | Fine $ | ☐ | ☐ | ☐ | Restitution $ |
| ☐ | ☒ | ☐ | DNA Fee $ 50 | ☐ | ☐ | ☐ | Sex Offender Registration Fee $ |
| ☐ | ☐ | ☐ | DWI/Other $ | ☐ | ☐ | ☐ | Supplemental Sex Off. Victim Fee $ |

THE SAID DEFENDANT BE AND HEREBY IS COMMITTED TO THE CUSTODY OF THE:

☒ NYS Department of Correctional Services (NYSDOCS) until released in accordance with the law, and being a person sixteen (16) years or older not presently in the custody of NYSDOCS [the COUNTY SHERIFF OR ☒ NEW YORK CITY DEPARTMENT OF CORRECTION] is directed to deliver the defendant to the custody of NYSDOCS as provided in 7 NYCRR Part 103.

☐ NYS Department of Correctional Services (NYSDOCS) until released in accordance with the law, and being a person sixteen (16) years or older and is presently in the custody of NYSDOCS; defendant shall remain in the custody of NYSDOCS.

☐ NYS Office of Children and Family Services in accordance with the law being a person less than sixteen (16) years of age at the time the crime was committed.

☐ ___ County Jail/Correctional Facility

TO BE HELD UNTIL THE JUDGMENT OF THIS COURT IS SATISFIED.

REMARKS Counts 1 and 4 are to run CONSECUTIVE to each other but, Concurrent with counts 2, 3, 5, 6, 7, 8, 9

| Commitment, Order of Protection & Pre-Sentence Report received by Correctional Authority is indicated |
|---|
| Official Name |
| Shield No. |

Pre-Sentence Investigation Report Attached: ☒ YES ☐ NO   ☐ Amended Commitment:

Order of Protection Issued: ☐ YES ☒ NO   Original Sentence Date ___

Order of Protection Attached: ☐ YES ☒ NO

| 12 / 01 / 2017 | Milton Adair Tingling | by Daniel B. McVey | Senior Court Clerk |
|---|---|---|---|
| Date | Clerk of the Court | Signature | Title |

# UNIFORM SENTENCE & COMMITMENT

UCS-854(12/2014)

**STATE OF NEW YORK**

SUPREME COURT, COUNTY OF NEW YORK

PRESENT: HON. ARLENE D. GOLDBERG

Court Part: 56
Court Reporter: L. Mango
Superior Ct. Case #: 3910-2015 (Page 1 of 2)

| The People of the State of New York | Accusatory Instrument Charge(s): | Law/Section & Subdivision |
|---|---|---|
| -vs- | Burglary 3rd. | PL 140.20 (Nine Counts) |
| John Walden | | |
| Defendant | | |

Male 11 / 26 / 65   0 9 8 7 1 4 1 Z

| SEX | D.O.B. | NYSID NUMBER | CRIMINAL JUSTICE TRACKING NUMBER |

Date(s) of Offense: 07 / 07 / 2015   To 08 / 18 / 2015

THE ABOVE NAMED DEFENDANT HAVING BEEN CONVICTED BY [X] PLEA *OR* [ ] VERDICT, THE MOST SERIOUS OFFENSE BEING A
[X] FELONY *OR* [ ] MISDEMEANOR *OR* [ ] VIOLATION, IS HEREBY SENTENCED TO:

| Crime | Count No | Law § and Subdivision | SMF, Hate or Terror | Minimum Term | Maximum Term | [ ] Definite (select D,M or Y) [ ] Determinate (in years)** | Post-Release Supervision |
|---|---|---|---|---|---|---|---|
| 1 Burglary 3rd. | 1 | PL 140.20 | | 3 years | 6 years | | years |
| 2 Burglary 3rd. | 2 | PL 140.20 | | 3 years | 6 years | | years |
| 3 Burglary 3rd. | 3 | PL 140.20 | | 3 years | 6 years | | years |
| 4 Burglary 3rd. | 4 | PL 140.20 | | 3 years | 6 years | | years |
| 5 Burglary 3rd. | 5 | PL 140.20 | | 3 years | 6 years | | years |

**NOTE: For each DETERMINATE SENTENCE imposed, a corresponding period of POST-RELEASE SUPERVISION MUST be indicated [PL §70.45].

[X] Counts 2, 3, 5, 6, 7, 8, 9 shall run CONCURRENTLY with each other   [X] Count(s) 1 shall run CONSECUTIVELY to count(s) 4

[ ] Sentence imposed herein shall run CONCURRENTLY with _____ and/or CONSECUTIVELY to _____

[ ] Sentence imposed herein shall include a CONSECUTIVE term of [ ] PROBATION *OR* [ ] CONDITIONAL DISCHARGE, with an Ignition Interlock Device condition, that shall commence upon the defendant's release from imprisonment [PL §60.21].

[ ] Conviction includes: WEAPON TYPE: _____ and/or DRUG TYPE: _____

[ ] Charged as a JUVENILE OFFENDER - age at time crime committed: _____ years

[ ] Adjudicated a YOUTHFUL OFFENDER [CPL §720.20]

[ ] Execute as a sentence of PAROLE SUPERVISION [CPL § 410.91]

[ ] Re-sentence as a PROBATION VIOLATOR [CPL §410.70]

[ ] Court certified the Defendant a SEX OFFENDER [Cor. L. § 168-d]

[ ] CASAT ordered [PL § 60.04(6)]

[ ] SHOCK INCARCERATION ordered [PL § 60.0.(7)]

As a: [X] Second [ ] Second Violent [ ] Second Drug [ ] Second Drug w/prior VFO [ ] Predicate Sex Offender [ ] Predicate Sex Offender w/prior VFO [ ] Second Child Sexual Assault [ ] Persistent [ ] Persistent FELONY [ ] Persistent Violent OFFENDER

| Paid | Not Paid | Deferred - court must file written order [CPL § 420.40(5)] | | $ | Paid | Not Paid | Deferred - court must file written order [CPL § 420.40(5)] | | $ |
|---|---|---|---|---|---|---|---|---|---|
| [ ] | [X] | [ ] | Mandatory Surcharge | $ 300 | [ ] | [X] | [ ] | Crime Victim Assistance Fee | $ 25 |
| [ ] | [ ] | [ ] | Fine | $ _____ | [ ] | [ ] | [ ] | Restitution | $ _____ |
| [ ] | [X] | [ ] | DNA Fee | $ 50 | [ ] | [ ] | [ ] | Sex Offender Registration Fee | $ _____ |
| [ ] | [ ] | [ ] | DWI/Other: _____ | | [ ] | [ ] | [ ] | Supplemental Sex Off. Victim Fee | $ _____ |

THE SAID DEFENDANT BE AND HEREBY IS COMMITTED TO THE CUSTODY OF THE:

[X] NYS Department of Correctional Services (NYSDOCS) until released in accordance with the law, and being a person sixteen (16) years or older not presently in the custody of NYSDOCS [ ] the COUNTY SHERIFF *OR* [ ] NEW YORK CITY DEPARTMENT OF CORRECTION] is directed to deliver the defendant to the custody of NYSDOCS as provided in 7 NYCRR Part 103.

[ ] NYS Department of Correctional Services (NYSDOCS) until released in accordance with the law, and being a person sixteen (16) years or older and is presently in the custody of NYSDOCS, defendant shall remain in the custody of NYSDOCS

[ ] NYS Office of Children and Family Services in accordance with the law being a person less than sixteen (16) years of age at the time the crime was committed.

_____ County Jail/Correctional Facility

TO BE HELD UNTIL THE JUDGMENT OF THIS COURT IS SATISFIED.

REMARKS: Counts 1 and 4 are to run CONSECUTIVE to each other but, Concurrent with counts 2, 3, 5, 6, 7,8,9.

[ ] Commitment, Order of Protection & Pre-Sentence Report received by Authorized Authority as indicated.
_____ Official Name
_____ Shield No.

Pre-Sentence Investigation Report Attached [X] YES [ ] NO   [ ] Amended Commitment:
Order of Protection Issued: [ ] YES [X] NO   Original Sentence Date _____ / _____ / _____
Order of Protection Attached: [ ] YES [X] NO

12 / 01 / 2017   Milton Adair Tingling   by Daniel B. McVey   Senior Court Clerk
Date   Clerk of the Court   Signature   Title

# UNIFORM SENTENCE & COMMITMENT

CS-854(12/2014)

STATE OF NEW YORK

SUPREME COURT, COUNTY OF NEW YORK

PRESENT: HON. ARLENE D. GOLDBERG

Court Part: 56
Court Reporter: L. Mango
Superior Ct. Case #: 3910-2015 (Page 2 of 2)

The People of the State of New York
-vs-
John Walden
Defendant

Accusatory Instrument Charge(s):        Law/Section & Subdivision:
1 Burglary 3rd.                          PL 140.20 (Nine Counts)
2 _____               _____
3 _____               _____
4 _____               _____

Date(s) of Offense:  07 / 07 / 2015
To  08 / 18 / 2015

| Male | 11 / 26 / 65 | 0 9 9 8 7 1 4 1 Z |
|------|------|------|
| SEX | D.O.B. | NYSID NUMBER | CRIMINAL JUSTICE TRACKING NUMBER |

THE ABOVE NAMED DEFENDANT HAVING BEEN CONVICTED BY [☒ PLEA OR ☐ VERDICT], THE MOST SERIOUS OFFENSE BEING A [☒ FELONY OR ☐ MISDEMEANOR OR ☐ VIOLATION], IS HEREBY SENTENCED TO:

| Crime | Count No. | Law § and Subdivision | SMF, Hate or Terror | Minimum Term | Maximum Term | ☐ Definite (select: D, M or Y) ☐ Determinate (in years) | Post-Release Supervision |
|-------|-----------|----------------------|---------------------|--------------|--------------|--------|--------|
| 1 Burglary 3rd. | 6 | PL 140.20 | | 3 years | 6 years | | years |
| 2 Burglary 3rd. | 7 | PL 140.20 | | 3 years | 6 years | | years |
| 3 Burglary 3rd. | 8 | PL 140.20 | | 3 years | 6 years | | years |
| 4 Burglary 3rd. | 9 | PL 140.20 | | 3 years | 6 years | | years |
| 5 | | | | years | | | years |

**NOTE: For each DETERMINATE SENTENCE imposed, a corresponding period of POST-RELEASE SUPERVISION MUST be indicated [PL § 70.45].

☒ Counts 2, 3, 5, 6, 7, 8, 9 shall run CONCURRENTLY with each other  ☒ Count(s) 1 shall run CONSECUTIVELY to count(s) 4

☐ Sentence imposed herein shall run  CONCURRENTLY with _____ and/or CONSECUTIVELY to _____

☐ Sentence imposed herein shall include a CONSECUTIVE _____ term of [☐ PROBATION OR ☐ CONDITIONAL DISCHARGE], with an Ignition Interlock Device condition, that shall commence upon the defendant's release from imprisonment [PL§60.21].

☐ Conviction includes:        WEAPON TYPE: _____
☐ Charged as a JUVENILE OFFENDER - age at time crime committed: _____ years        and/or DRUG TYPE: _____
☐ Adjudicated a YOUTHFUL OFFENDER [CPL §720.20]
☐ Execute as a sentence of PAROLE SUPERVISION [CPL § 410.91]        ☐ Court certified the Defendant a SEX OFFENDER [Cor. L § 168-d]
☐ Re-sentence as a PROBATION VIOLATOR [CPL § 410.70]        ☐ CASAT ordered [PL § 60.04(6)]
                                                                        ☐ SHOCK INCARCERATION  ordered [PL § 60.04(7)]

As, a: ☒ Second ☐ Second Violent ☐ Second ☐ Second Drug w/prior VFO ☐ Predicate Sex Offender ☐ Predicate Sex Offender w/prior VFO ☐ Second Child Sexual Assault ☐ Persistent ☐ Persistent Violent   FELONY OFFENDER

| Paid | Not Paid | Deferred - court must file written order [CPL § 420.40(5)] | | Paid | Not Paid | Deferred - court must file written order [CPL § 420.40(5)] | |
|------|----------|------|------|------|------|------|------|
| ☐ | ☐ | ☐ | Mandatory Surcharge $ _____ | ☐ | ☐ | ☐ | Crime Victim Assistance Fee $ _____ |
| ☐ | ☐ | ☐ | Fine $ _____ | ☐ | ☐ | ☐ | Restitution $ _____ |
| ☐ | ☐ | ☐ | DNA Fee $ _____ | ☐ | ☐ | ☐ | Sex Offender Registration Fee $ _____ |
| ☐ | ☐ | ☐ | DWI/Other: $ _____ | ☐ | ☐ | ☐ | Supplemental Sex Off. Victim Fee $ _____ |

THE SAID DEFENDANT BE AND HEREBY IS COMMITTED TO THE CUSTODY OF THE:

☒ NYS Department of Correctional Services (NYSDOCS) until released in accordance with the law, and being a person sixteen (16) years or older not presently in the custody of NYSDOCS [☐ the COUNTY SHERIFF OR ☐ NEW YORK CITY DEPARTMENT OF CORRECTION] is directed to deliver the defendant to the custody of NYSDOCS as provided in 7 NYCRR Part 103.

☐ NYS Department of Correctional Services (NYSDOCS) until released in accordance with the law, and being a person sixteen (16) years or older and is presently in the custody of NYSDOCS, defendant shall remain in the custody of NYSDOCS.

☐ NYS Office of Children and Family Services in accordance with the law being a person less than sixteen (16) years of age at the time the crime was committed.

☐ _____, County Jail/Correctional Facility

TO BE HELD UNTIL THE JUDGMENT OF THIS COURT IS SATISFIED.

REMARKS  Fees and Surcharges are listed on page 1.

Commitment, Order of Protection & Pre-Sentence Report received by Correctional Authority as indicated

_____
Official Name

_____
Shield No.

| Pre-Sentence Investigation Report Attached: ☒ YES ☐ NO | ☐ Amended Commitment: | |
|------|------|------|
| Order of Protection Issued: | ☐ YES ☒ NO | Original Sentence Date: ___ / ___ / ___ |
| Order of Protection Attached: | ☐ YES ☒ NO | |

| 12 / 01 / 2017 | Milton Adair Tingling | by Daniel B. McVey | Senior Court Clerk |
|------|------|------|------|
| Date | Clerk of the Court | Signature | Title |

Proceedings                                    8

1    we're supposed to start the hearings.

2          THE DEFENDANT:  Can I get a little bit more

3    time?  This is my life.  I'm not trying to be rude,

4    ma'am.  This is my life.  I've never been in this

5    position.  I'm not trying to run any game on you or

6    anything.  That's all I'm asking.

7          THE COURT:  This offer of six to 12 has been

8    in existence since you left Judge Konviser, which

9    was May 23rd.  It's now October 4th.  It's been

10   adjourned for hearing and trial several times.

11         THE DEFENDANT:  I didn't have all of my

12   paperwork.  I had ineffective of counsel three

13   times.  I'm looking at an indictment that's not even

14   telling me what I did at a crime scene.

15         THE COURT:  The indictment tells you what

16   you're entitled to know, what the allegations are.

17         THE DEFENDANT:  What are we litigating from?

18         THE COURT:  Bring the tape this afternoon so

19   he can see the surveillance.

20         MS. KALRA:  Yes, Judge.

21         THE COURT:  He says he saw two of them.  Now

22   which didn't he see?  Which two did you see?

23         THE DEFENDANT:  I don't even remember.  This

24   was a while back.  This as a long time ago.  I'm

25   asking you just so I could get the rest of my

*Barbara Geremia - Senior Court Reporter*

Proceedings

1           paperwork.
2           THE COURT: We'll look at your video.  We'll
3      do that this afternoon.  I'll see you at 2:15.
4                *     *     *  -  *     *     *     *     *
5           THE COURT: Recall of the trial matter, People
6      versus John Walden.  Same appearances.  The
7      defendant is present with his counsel.  The two ADAs
8      are present.  We have the video set up to show the
9      surveillance video.
10          MS. KALRA:  Just so you know, I'm going to
11     play the relevant portions and not the entire thing,
12     where there's nothing happening.
13          MS. CALVELLO:  Judge, if I may, obviously, Mr.
14     Walden heard The Court would not give him five to
15     10, so he is now considering six to 12.  He just
16     wants to see the video so it's not a --
17          THE COURT:  Show the video.
18          MS. KALRA:  The first video, Judge, I'm
19     showing is from --
20          THE COURT:  It's on a big screen.  You could
21     see the screen.  Mr. Walden, you could see the
22     screen, correct?
23          MS. CALVELLO:  Yes.
24          THE DEFENDANT:  I see it.
25          MS. KALRA:  The first video we're playing is

Proceedings

1   That is the People's position.

2           THE COURT:  Six to 12 for nine burglaries is

3   extremely generous.

4           THE DEFENDANT:  Your Honor --

5           THE COURT:  And I've read the report by the

6   social worker.  I've looked at his background.

7           THE DEFENDANT:  No, no, it's not about the

8   background.  I have -- the one reason why I'm asking

9   for this time off is, I have a complaint with six

10  burglaries on it.  I have an indictment with nine

11  burglaries on it.  I have a Bill of Particulars with

12  basically nothing on it but some things that you

13  pulled out of my house with some statements.  The

14  indictment is defective.  I'm being charged with the

15  same crimes like two times and three times.

16          THE COURT:  No, you're not.  I reviewed the

17  indictment.  Sir, I'm not adjourning the case.

18          THE DEFENDANT:  I'm sorry, can I -- okay, can

19  I just have time to look at my paperwork like I

20  asked you for?  That's all I'm asking.

21          THE COURT:  I'll see you again after lunch,

22  then that's it.

23          THE DEFENDANT:  I'm asking if I could get

24  until Monday.

25          THE COURT:  Monday is a holiday and Tuesday

**Barbara Geremia - Senior Court Reporter**

*Barbara Geremia - Senior Court Reporter*

1     to as much as three-and-a-half to seven
2     indeterminate term of imprisonment.
3          Those sentences could run consecutively with
4     each other.  However, there's a provision in the
5     law, the maximum exceeds 20 years, when it has to be
6     deemed 20 years, and the minimum could not exceed
7     one half of maximum.
8          So if you're convicted of all counts after
9     trial, you face 10 to 20 years.  With that
10    provision, if I gave you more, by law it would have
11    to be reduced to 10 to 20.  You don't want the six
12    to 12 that's fine.  I just want you to know that you
13    understand what you face if you were convicted of
14    all counts after trial.
15         THE DEFENDANT:  I'm indicted on one count,
16    right?
17         THE COURT:  You're indicted on nine separate
18    counts of burglary in the Third Degree.
19         THE DEFENDANT:  Can I have time to think about
20    this?
21         MS. KALRA:  Judge, the offer has been six to
22    12.  This case has been open since 2015.  The
23    defendant has had more than enough time to think
24    about it.  I think if there's going to be a plea, it
25    should be today, and it should expire today as well.



John Waldon-Bing-1820153-
Celesius correctional Facility
Lawnes Basin Roads subdunion 14411

United States District Court
Southern District
of New York
500 Pearl Street
New York, N.Y. 10007
= pro-se, office =

Legal Mail

PRO SE OFFICE
RECEIVED
DEC 12 2019

Legal Mail

USMD3
SDNY